1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**SEATTLE DIVISION**

RAILCAR MANAGEMENT, LLC,

        Plaintiff,

   v.

CEDAR AI, INC., MARIO PONTICELLO, DARIL VILHENA, and JOHN DOES 1 through 10, inclusive,

        Defendants.

Case No. 2:21-cv-00437-TSZ

**AMENDED COMPLAINT**

**JURY DEMAND**

    Plaintiff Railcar Management, LLC ("RMI") alleges and complains against Defendants Cedar AI, Inc. ("Cedar"), Mario Ponticello, Daril Vilhena, and John Does 1 through 10 (collectively, "individual Defendants" and together with Cedar, "Defendants"), on knowledge as to itself and its actions, and information and belief as to all other matters, as follows:

**NATURE OF THE ACTION**

    1.    The preliminary information that RMI obtained in this lawsuit confirms that Cedar and the individual Defendants have been engaging in unlawful, unfair, and unscrupulous business practices attempting to poach RMI's customers for its RailConnect Transportation Management System ("TMS"), in violation of both federal and state laws.

AMENDED COMPLAINT - 1

2.    RMI's TMS is a core operational system for railroads that helps railroads maximize performance by automating day-to-day operations. Rail operators use RMI's TMS to manage their rail and intermodal operations, signal and communication assets, railcar repair billing and inventory, and multi-modal visibility, planning, and execution for industrial shippers and logistics service providers.

3.    Cedar also offers rail companies a transportation management system. Cedar claims that its system is the first to leverage artificial intelligence to present users with suggestions for handling traffic and customer billing. Since its inception, Cedar has hired several former employees of RMI's parent company, Wabtec Corporation ("Wabtec").

4.    In March 2020, Wabtec sent a letter to Cedar's co-chief executive officers ("co-CEOs"), Pontiello and Vilhena, asking that Cedar stop its aggressive tactics to recruit Wabtec employees and stating that it "has strong concerns about the potential misuse of Wabtec confidential and proprietary data." Ponticello responded to Wabtec's letter in April 2020. He described Cedar's recruitment practices as lawful and affirmed that "we do not have access to any of your confidential and proprietary data."

5.    RMI initiated this lawsuit after it detected highly unusual activity on TMS—i.e., more frequent logins to the platform and an abnormal spike in the frequency and volume of data downloaded from certain customers' accounts. Its investigation of that activity identified Amazon Web Services ("AWS")-owned IP addresses for the devices connected to the suspicious logins and downloads. With the Court's permission, RMI subpoenaed AWS to identify the owners of these IP addresses.

6.    Information produced by AWS in response to the subpoena, attached as **Exhibit A**, revealed that Cedar owns the IP addresses in question, that the account for those IP addresses is registered to Vilhena, and that Ponticello is the billing contact for the account.

7.    The information from AWS conclusively proves that Cedar both accessed TMS without RMI's authorization and downloaded RMI's confidential data, likely over many months

AMENDED COMPLAINT - 2

before RMI detected the activity. On information and belief, Cedar used the confidential data it downloaded from TMS to gain a competitive advantage when performing demonstrations for RMI's customers. In other words, Cedar used the proprietary data that it stole from RMI to then compete with RMI. On information and belief, Ponticello and Vilhena were personally involved in, directed, or approved of this unlawful activity.

8.     Cedar and the individual Defendants' actions violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. and the Stored Communications Act, 18 U.S.C. § 2701 *et seq*., 18 U.S.C. § 1836 *et seq*., both of which in addition to providing the civil causes of action stated below, impose criminal liability on intruders like Cedar. RMI also brings claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., and the laws of Washington for misappropriation of trade secrets, unfair competition, tortious interference, and unjust enrichment.

9.     RMI seeks compensatory damages for the multimillion-dollar losses it has sustained due to Defendants' unlawful and improper conduct; punitive damages; preliminary and permanent relief barring Cedar from, among other things, accessing TMS and soliciting RMI's customers using stolen data; reasonable attorneys' fees and costs; and pre-and post-judgment interest.

## JURISDICTION AND VENUE

10.     This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises from Defendants' violation of the federal statutes identified in this Amended Complaint.

11.     This action also arises under the laws of Washington. This Court has jurisdiction over those claims under 28 U.S.C. § 1367 because Defendants' conduct giving rise to the state law claims are the same as or related to the activities giving rise to the claims arising under federal law such that they form part of the same case or controversy.

12.     Venue for RMI's claims is proper in this district under 28 U.S.C. § 1391(b) because Cedar's principal place of business is in Seattle, Washington, located in this district. The individual Defendants also reside in Seattle, Washington. In addition, events giving rise to this action occurred in Bothell, Washington, located within this district. For example, one of the Defendants

AMENDED COMPLAINT - 3

logged into TMS from Bothell, Washington, and improperly downloaded RMI's data.

## PARTIES

13.   RMI is a subsidiary of Wabtec, a leading global provider of equipment, systems, digital solutions, and other freight and transit rail services. RMI delivers software and related solutions to optimize its customers' railway operating and maintenance activities. RMI is and was at all times relevant to this action a limited liability company incorporated under the laws of Georgia with its principal place of business in Atlanta, Georgia.

14.   Cedar, which offers service and technology to the rail industry, is incorporated under the laws of Delaware and has a principal place of business in Seattle, Washington.

15.   Mario Ponticello is Cedar's co-CEO and chief financial officer. Ponticello resides in Seattle, Washington.

16.   Daril Vilhena is Cedar's co-CEO. Vilhena resides in Seattle, Washington.

17.   John Does 1 through 10 are the fictitious names of the individuals involved in, along with or at the direction of Cedar, Ponticello, or Vilhena, the unlawful conduct described here. RMI sues John Does 1 through 10 until we determine their true names through discovery.

## BACKGROUND

### *RMI's TMS*

18.   As a core operating and communications system, TMS automates and tracks the entry of rail car movements and switching operations for RMI's rail customers and provides them high visibility over all rail assets.

19.   TMS contains data relating to, among other things, customers' rail cars, including content and location, routing and railroad information, and the origins and destination of rail cars, and proprietary data derived from the raw data RMI collects (collectively, the "Data"). The Data is stored in on-premises systems located in Atlanta, Georgia.

20.   RMI's rail customers access TMS via a website interface hosted by AWS, a well-known provider of on-demand cloud computing platforms and application programming interfaces

AMENDED COMPLAINT - 4

to individuals, companies, and governments.

21.    RMI assigns each of its rail customers unique login credentials to access TMS, and only RMI can authorize someone to use the credentials to enter the system. Indeed, RMI and its customers expressly agree in written contracts that customers will keep their login credentials strictly confidential.

22.    Furthermore, TMS conspicuously and explicitly warns those logging into the system that they must have RMI's permission to use it:

> You have accessed the RMI computer system. Access or use of this system is strictly limited to persons having express authorization from RMI. Unauthorized access or use of this system is unlawful and strictly prohibited.

*The Suspicious Activity*

23.    While RMI's rail customers routinely download Data in TMS, on or about November 1, 2020, RMI identified an unusual spike in the frequency and volume of downloads.

24.    After conducting a preliminary investigation, RMI observed that the unusual activity was triggered by devices oddly requesting simultaneous file downloads from multiple customer accounts, each with unique customer login credentials.

25.    Several of RMI's rail customers said they had not logged onto TMS and downloaded Data. Accordingly, RMI launched an internal investigation to verify that the downloads it observed were indeed illegitimate and to determine whether an unauthorized person accessed TMS.

*Forensic Investigation*

26.    On or about November 6, 2020, RMI retained an outside vendor to conduct a forensic investigation to further assess the suspicious activity on TMS. As part of the investigation, the vendor analyzed RMI's logs and forensic images and deployed endpoint software to capture IP addresses and other pertinent information.

27.    RMI discovered through this investigation that there were logins to TMS from more than 200 IP addresses owned by AWS from November 1, 2020, to November 3, 2020.

AMENDED COMPLAINT - 5

28.    RMI also discovered that another series of unexplained logins to TMS and Data downloads occurred from other AWS-owned IP addresses and at least 23 IP addresses owned by conventional Internet service providers well before it detected the unusual activity in November 2020. IP addresses that logged into TMS from locations in Washington were responsible for much of the suspicious activity.

*AWS Subpoena and Confidential Information on Cedar's Website*

29.    RMI moved for expedited discovery at the same time it filed the original complaint. After the Court granted that motion, RMI served AWS with a subpoena requesting information to identify the individuals responsible for the suspicious logins and downloads. In particular, RMI asked that AWS identify the persons associated with the 20 unique IP addresses that were most active during the peak of the suspicious activity and Data downloads.

30.    AWS responded to the subpoena on June 10, 2021, providing the account registration information associated with the 20 IP addresses RMI identified.

31.    AWS's response confirms, as RMI had suspected, that Cedar owns the IP addresses that accessed TMS and downloaded Data during the suspicious activity RMI detected. The response also indicated that the related account is registered to Vilhena, and Ponticello is listed as the billing contact for the account. *See* **Ex. A**.

32.    While waiting for information from AWS, RMI obtained additional proof that Cedar accessed TMS without permission. In May of this year, Cedar posted a graphic to its website that depicted a TMS database. As shown below, the "User" Cedar identified on the picture is "RMIJET," which is an authentic and unique TMS user identification for one of RMI's current employees. The only way Cedar would have this confidential information is if it accessed TMS.

CALFO EAKES LLP
Attorneys at Law
1301 2nd Avenue Suite 2800
Seattle, Washington 98101
(206) 407-2200

*Defendants Were On Notice They Had No Authority to Access TMS*

33.   As noted above, on March 31, 2020, RMI sent a letter to Ponticello and Vilhena, putting them personally, along with Cedar, on notice of RMI's "strong concerns about the potential misuse of Wabtec confidential and proprietary data." Ponticello denied any wrongdoing by Cedar. In an April 14, 2020 letter, he stated that, "to our knowledge," Cedar did not have "access to any of [RMI's] confidential and proprietary data."

34.   Despite Ponticello's claim, on information and belief, Defendants had been accessing TMS to download Data at or about the time Ponticello told RMI that Cedar did not have access to RMI's proprietary data. Ponticello's statement is contradicted by the information AWS provided showing that it assigned Cedar the IP addresses for the devices used to access TMS and download Data during the unusual activity RMI detected. *See* **Ex. A**.

*Defendants' Improper Use of RMI's Data to Compete with RMI*

35.   Cedar and the individual Defendants used the Data they stole via their unauthorized access to TMS to unfairly compete with and disparage RMI. One example of Data in TMS that provide Defendants a significant competitive advantage is the "car hire" data that RMI creates

AMENDED COMPLAINT - 7

from several raw data sources. Car hire is the rental amount that railroads pay to equipment owners. This is valuable trade secret Data that Cedar could have used to help rail operators drive efficiencies by prioritizing the return of higher-priced equipment over lower-cost items and to gain other competitive advantages.

36.    Cedar's main marketing tool to solicit RMI's customers is a software demonstration that compares its transportation management system to TMS. On information and belief, while attempting to compete with RMI, Cedar relied on Data it took from RMI, such as the car hire data, to give it a major competitive advantage in the demonstrations.

37.    RMI has lost at least 15 TMS customer accounts because of Cedar's unlawful and dishonest conduct, resulting in multimillion-dollar losses to RMI.

**FIRST CAUSE OF ACTION**
**Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)**

38.    RMI re-alleges and incorporates by reference paragraphs 1 through 37 above.

39.    TMS is a "protected computer" within the meaning of 18 U.S.C. § 1030(e) as RMI and its customers use the system in affecting domestic or foreign commerce or communication.

40.    On information and belief, Cedar, at the direction of Ponticello and Vilhena, and in violation of 18 U.S.C. § 1030(a), intentionally accessed TMS without authorization. As described above, on or around November 2020, RMI discovered highly unusual activity on TMS. RMI promptly launched an investigation into the activity and identified the IP addresses connected to the unusual activity. RMI learned that AWS owned those IP addresses, so RMI sought and received expedited discovery from AWS to obtain information about the persons assigned the IP addresses in question.

41.    AWS's subpoena response conclusively demonstrated that the IP addresses for the devices used to access TMS without authorization were assigned to Cedar, registered to Vilhena, and billed to Ponticello. Also, Defendants accessed TMS without permission because it posted a graphic to its website containing a confidential TMS user identification ("RMIJET") that it could

AMENDED COMPLAINT - 8

have only obtained from the system.

42.   Moreover, Defendants' actions were intentional. Indeed, Cedar knew it was barred from accessing the Data without RMI's permission because RMI raised concerns to Ponticello and Vilhena about Cedar's "potential misuse of [RMI's] confidential and proprietary data" and demanded that Cedar immediately destroy "any such data" in its possession. Also, Defendants ignored the conspicuous notice on TMS that advises those entering the system that "[a]ccess or use of this system is strictly limited to persons having express authorization from RMI."

43.   Defendants' actions caused RMI damage during a one-year period aggregating at least $5,000.00. Indeed, in the wake of Defendants' unauthorized access to TMS, RMI has suffered multimillion-dollar business losses.

## SECOND CAUSE OF ACTION
### Violation of Stored Communications Act (18 U.S.C. § 2701)

44.   RMI re-alleges and incorporates by reference paragraphs 1 through 43 above.

45.   TMS is an "electronic communication service" within the meaning of 18 U.S.C. § 2701(a) because, among other reasons, it provides users the ability to send or receive Data in interstate commerce.

46.   As explained above, *supra* at 40, Cedar, acting, on information and belief, at the direction of Ponticello and Vilhena, and in violation of 18 U.S.C. § 2701, knowingly or intentionally accessed TMS without authorization.

47.   RMI's forensic examination after it detected the suspicious activity in November 2020 revealed that Defendants used their unauthorized access to TMS to obtain Data while it was contained in electronic storage in TMS.

48.   As described above, *supra* at 41, RMI traced the unauthorized access to Defendants. Cedar's website further shows that Defendants accessed TMS without authorization as it displays a graphic containing confidential information.

49.   RMI has suffered actual harm due to Defendants' unlawful and dishonest conduct,

AMENDED COMPLAINT - 9

including multimillion dollars in lost business.

### THIRD CAUSE OF ACTION
### Trade Secret Misappropriation Under Defend Trade Secrets Act (18 U.S.C. § 1836)

50.   RMI re-alleges and incorporates by reference paragraphs 1 through 49 above.

51.   RMI has developed and owns confidential, proprietary, and trade secret information contained in TMS, including financial, business, scientific, technical, economic, or engineering information such as the Data, and the login credentials that provide access to the Data. This information relates to products or services used in, or intended for use in interstate commerce, as RMI's rail customers across the country use TMS.

52.   The confidential, proprietary, and trade secret information in TMS is valuable as it is unknown to others. RMI has implemented access restrictions to protect the information, including requiring users to register on TMS, providing unique login credentials for each customer, and notifying anyone entering TMS that "[a]ccess or use of this system is strictly limited to persons having express authorization from RMI." RMI has expended significant resources and effort to develop TMS, the confidential, proprietary, and trade secret information contained in the system, and the access control systems that protect TMS from unauthorized intrusion.

53.   The confidential, proprietary, and trade secret information included in TMS derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from disclosing or using the information. The information at hand has tremendous value to Defendants in their effort to solicit RMI's customers and develop a client base.

54.   All of RMI's rail customers that use TMS are contractually obligated to maintain the secrecy of their TMS login credentials and other confidential and trade secret information that is contained in or provides access to the system. Also, RMI's employees are required to keep the company's proprietary and trade secret information confidential.

55.   In violation of RMI's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836

AMENDED COMPLAINT - 10

et seq., Cedar, acting, on information and belief, at the direction of Ponticello and Vilhena, misappropriated the confidential, proprietary, and trade secret information contained in TMS as described above.

56.     Defendants misappropriated the confidential, proprietary, and trade secret information contained in TMS knowing or having reason to know that it was acquired by improper means. Also, when they obtained and used the information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use. That Defendants continued to misappropriate the information after Ponticello claimed Cedar did not have "access to any of [RMI's] confidential and proprietary data" shows that Defendants' acts are willful and rise to the level of maliciousness appropriate for exemplary and punitive damages, including attorney's fees.

57.     As a result of Defendants' misappropriation of the confidential, proprietary, and trade secret information included in TMS, RMI has suffered actual damages in an amount to be proven at trial. At a minimum, Defendants have gained an improper competitive advantage over RMI because they have accessed and used RMI's proprietary information to solicit RMI's customers, all without having invested the time, funds, and resources to develop the information.

58.     Defendants' ongoing and continuing use of RMI's trade secrets and proprietary and confidential information has caused, and will cause, RMI repeated and irreparable injury. RMI's remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened. RMI is also entitled to damages for unjust enrichment resulting from Defendants' misappropriation of the trade secrets that are not addressed in computing damages for actual loss. Defendants have unjustly enriched themselves from RMI's information because they have not invested anything in acquiring or curating the information.

AMENDED COMPLAINT - 11

**FOURTH CAUSE OF ACTION**
**Trade Secret Misappropriation under Wash. Rev. Stat. § 19.108.010**

59.   RMI re-alleges and incorporates by reference paragraphs 1 through 58 above.

60.   As explained above, *supra* at 52-53, RMI has developed and owns confidential, proprietary, and trade secret information, including the Data, and the login credentials that provide access to the Data.

61.   As explained above, *supra* at 54, RMI has taken reasonable measures to keep such information secret. Also, RMI's trade secret information derives independent economic value by not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from disclosing or using the information.

62.   In violation of Plaintiff's rights under the Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010 et seq., Cedar, acting, on information and belief, at the direction of Ponticello and Vilhena, misappropriated the confidential, proprietary, and trade secret information described above. *Supra* 55-56.

63.   Defendants' unlawful conduct involved the misappropriation of RMIs trade secret information knowing or having reason to know that it was acquired by improper means. Furthermore, at the time they obtained and used RMI's trade secret information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use.

64.   Defendants' conduct was intentional, knowing, willful, malicious, fraudulent, and oppressive. As a direct and proximate result of their conduct, RMI has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the confidentiality of its proprietary and trade secret information, for which there is no adequate remedy at law.

65.   RMI has suffered substantial damages as a direct and proximate result of Defendants'

AMENDED COMPLAINT - 12

conduct in an amount to be proven at trial. Defendants have also been unjustly enriched by their misappropriation of RMI's trade secrets in an amount to be proven at trial.

## FIFTH CAUSE OF ACTION
### Unfair Competition under Wash. Rev. Stat. § 19.86.020

66.     RMI re-alleges and incorporates by reference paragraphs 1 through 65 above.

67.     Defendants' unlawful acts constitute unfair competition under Wash. Rev. Stat. § 19.86.020 because Cedar, acting at the direction of Ponticello and Vilhena, engaged in unfair methods of competition and deceptive acts in the conduct of trade or commerce.

68.     Defendants' unfair methods of competition include, but are not limited to, accessing TMS without RMI's consent; improperly downloading confidential Data; and improperly using the Data to compete against and disparage RMI. On information and belief, Cedar also used the Data it stole from TMS to perform demonstrations for RMI's customers.

69.     The public is interested in the subject matter of this dispute because, among other reasons, Defendants committed the acts alleged here in the course of their business in Washington.

70.     RMI was injured in its business or property by Defendants' violation of Wash. Rev. Stat. § 19.86.020, including suffering multimillion-dollar losses in business.

## SIXTH CAUSE OF ACTION
### Tortious Interference with Business Relationships

71.     RMI re-alleges and incorporates by reference paragraphs 1 through 70 above.

72.     RMI had a legitimate business relationship with its customers and reasonable business expectations derived from those relationships.

73.     On information and belief, Defendants knew about RMI's business relationships because, among other things, Cedar hired former Wabtec employees familiar with RMI's customer base for TMS.

74.     On information and belief, Cedar, acting at the direction of Ponticello and Vilhena, intentionally interfered with numerous RMI business relationships for an improper purpose or

CALFO EAKES LLP
Attorneys at Law
1301 2nd Avenue Suite 2800
Seattle, Washington 98101
(206) 407-2200

using improper means, thereby causing termination of those relationships.

75.     As described above, Defendants improperly used the Data to compete against and disparage RMI. Again, on information and belief, Cedar used the downloaded Data that it stole from TMS to perform demonstrations in an attempt to solicit RMI's customers.

76.     Defendants' wrongful conduct has significantly harmed RMI. To date, RMI has lost at least 15 customer accounts, representing multimillion-dollar losses in business.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**

77.     RMI re-alleges and incorporates by reference paragraphs 1 through 76 above.

78.     As described above, Cedar, acting, on information and belief, at the direction of Ponticello and Vilhena, accessed TMS without RMI's authorization and improperly downloaded confidential and proprietary Data. Defendants are using that improperly obtained Data to compete against and disparage RMI. Defendants have received a benefit from that wrongful conduct at RMI's expense. For example, to date, Defendants have been successful in luring away some of RMI's customers. Under the circumstances, and based on the unauthorized, unlawful, and improper nature of Defendants' conduct, it is unjust for Defendants to retain the benefit of business it has misappropriated from RMI without payment to RMI.

79.     There is no justification for Defendants' enrichment at the expense of RMI's substantial losses.

**PRAYER FOR RELIEF**

WHEREFORE, RMI prays for:

80.     Compensatory damages for losses sustained due to Defendants' improper conduct;

81.     Exemplary and punitive damages per 18 U.S.C. §§ 1836(b)(3)(C), 2707(c), or any other cause of action stated here that permits the recovery of such damages.

82.     Preliminary and permanent relief enjoining Defendants from accessing, using, disclosing, or benefitting directly or indirectly from TMS and the Data and from soliciting,

AMENDED COMPLAINT - 14

attempting to solicit, or doing business with any of RMI's rail customers;

83.     An order that directs Defendants to (a) return to all RMI confidential information in its possession, (b) disclose all persons or entities to which it disclosed confidential information and who disclosed it, and (c) destroy all Data and other information obtained from TMS;

84.     A judgment that Defendants violated the Computer Fraud and Abuse Act and Stored Communications Act, and that it unfairly competed with RMI, tortiously interfered with RMI's business relationships, and was unjustly enriched at RMI's expense;

85.     Reasonable attorneys' fees and costs under 18 U.S.C. §§ 1836(b)(3)(D), 2707(b)(3), or any other cause of action stated here that permits the recovery of these expenses.

86.     Pre- and post-judgment interest; and

87.     Such other and further relief as the Court deems just and proper.

## JURY DEMAND

88.     RMI demands a jury trial in this action.

///

///

///

///

///

///

///

///

///

///

///

///

AMENDED COMPLAINT - 15

CALFO EAKES LLP
Attorneys at Law
1301 2nd Avenue Suite 2800
Seattle, Washington 98101
(206) 407-2200

Dated this 28th day of July 2021

Respectfully submitted,

By: /s/*Emily Dodds Powell*
_____

Charles E. Harris, II (*pro hac vice*)
Richard M. Assmus (*pro hac vice*)
Kristin W. Silverman (WSBA No. 49420)
Emily A. Nash (*pro hac vice*)
MAYER BROWN LLP
71 South Wacker Drive
Chicago, Illinois 60606-4637
charris@mayerbrown.com
rassmus@mayerrown.com
ksilverman@mayerbrown.com
enash@mayerbrown.com
(312) 782 0600

Emily Dodds Powell (WSBA No. 49351)
CALFO EAKES LLP
1301 2nd Ave #2800
Seattle, Washington 98101-3808
emilyp@calfoeakes.com
(206) 407 2200

*Attorneys for Plaintiff*
*Railcar Management, LLC*

AMENDED COMPLAINT - 16