THE HONORABLE THOMAS S. ZILLY

**UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

| | |
|---|---|
| RAILCAR MANAGEMENT, LLC,<br><br>    Plaintiff,<br><br>    v.<br><br>CEDAR AI, INC., MARIO PONTICELLO, DARIL VILHENA, and JOHN DOES 1 through 10, inclusive,<br><br>    Defendant.<br><br>CEDAR AI, INC.,<br><br>        Counterclaim Plaintiff,<br><br>    vs.<br><br>RAILCAR MANAGEMENT, LLC, GE TRANSPORTATION, WABTEC CORPORATION,<br><br>        Counterclaim and Third-Party Defendants. | NO. 2:21-cv-0437-TSZ<br><br>**PLAINTIFF/COUNTER-DEFENDANT AND THIRD-PARTY DEFENDANT'S ANSWER AND AFFIRMATIVE DEFENSES TO DEFENDANT/COUNTER-PLAINTIFF'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT** |

**PLAINTIFF AND COUNTERCLAIM DEFENDANT RAILCAR MANAGEMENT, LLC
AND THIRD-PARTY DEFENDANT WABTEC CORPORATION'S
ANSWER AND AFFIRMATIVE DEFENSES**

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1
2
3
4
5

Plaintiff and Counterclaim Defendant Railcar Management, LLC ("RMI") and Third-Party Defendant Wabtec Corporation ("Wabtec")[1] (together, the "RMI Parties"), by and through their attorneys, hereby submit their Answer and Affirmative Defenses in response to Defendant/Counter-Plaintiff, Cedar, Inc.'s ("Cedar") Counterclaim and Third-Party Complaint ("Counterclaim") in this matter as follows.

6

*Preliminary Statement*

7
8
9
10
11
12
13
14
15

For convenience, the RMI Parties have organized their Answers to Cedar's allegations by employing the headings and subheadings used within the Counterclaim. In doing so, the RMI Parties do not admit that the headings or subheadings are accurate or appropriate for any purpose in this matter and, to the extent that any heading can be read to contain factual allegations, the RMI Parties deny each and every one of them unless they have expressly indicated otherwise. In addition, Cedar's Counterclaim contains 41 footnotes recited herein as footnotes 2 through 42. If the contents of those footnotes are not addressed in the text of the response to the Counterclaim paragraph to which the footnote relates or to the extent that the content of any footnote can be read to contain factual allegations, the RMI Parties deny each and every one of them.

16
17
18
19
20

Also, Cedar cites declarations throughout the Counterclaim presumably as evidence to support its allegations. The declarations speak for themselves as to their contents, and the RMI Parties deny any allegations that purport to rely on the declarations if those allegations incorrectly or incompletely characterize the declarations' contents. The RMI Parties need not respond to the statements in the declarations and thus deny them.

21
22
23
24
25

---

[1] Cedar sued GE Transportation, which it defines only as a "division of Wabtec," Counterclaim ¶ 3, and as such, "GE Transportation" falls within the definition of Wabtec as defined in the Counterclaim and in this answer. Cedar has not provided any other definition for a corporate existence of "GE Transportation" other than as a division of Wabtec and as such, no other answer is required (or even possible).

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 2
Case No. 2:21-cv-0437-TSZ

1

## I. PARTIES

2      1.      Cedar is a technology startup company dedicated to providing the rail industry with

3  state-of-the-art yard operating, planning, and management software. Cedar is incorporated under

4  the laws of Delaware and has its principal place of business in Seattle, Washington.

5      **ANSWER:**    The RMI Parties admit that Cedar is incorporated under the laws of

6  Delaware and has its principal place of business in Seattle, Washington. The RMI Parties lack

7  sufficient knowledge or information to form a belief as to the truth of the remaining allegations in

8  paragraph 1 and thus deny them.

9      2.      On information and belief, RMI is a limited liability company formed under the

10  laws of the state of Georgia. Its principal place of business is located in Atlanta, Georgia. RMI was

11  a subsidiary of GE from January 2012 to February 2019, and became a subsidiary of Wabtec after

12  GE merged with Wabtec in February 2019.

13     **ANSWER:**    The RMI Parties admit that RMI is a limited liability company formed under

14  the laws of the state of Georgia with its principal place of business in Atlanta, Georgia. The RMI

15  Parties deny any remaining allegations in paragraph 2.

16     3.      On information and belief, GE, formerly known as GE Rail, is headquartered in

17  Pittsburgh, Pennsylvania. It was owned by General Electric until it was sold to Wabtec in February

18  2019 and is now a division of Wabtec.

19     **ANSWER:**    The RMI Parties admit that GE Transportation was an operating division of

20  General Electric Company ("General Electric") before February 2019, after which General

21  Electric indirectly sold a portion of the division's assets to Wabtec. The RMI Parties deny any

22  remaining allegations in paragraph 3.

23     4.      Wabtec is a global provider of equipment, components, software, services, and

24  systems for the transportation industry. Wabtec is incorporated under the laws of Delaware and

25

26

1   has a principal place of business in Pittsburgh, Pennsylvania. Wabtec acquired RMI via its merger
2   with GE in February 2019.

3       **ANSWER:**     The RMI Parties admit that Wabtec is, among other things, a global provider
4   of equipment, components, software, services, and systems for the transportation industry. Wabtec
5   is incorporated under the laws of Delaware and its principal place of business in Pittsburgh,
6   Pennsylvania. The RMI Parties deny any remaining allegations in paragraph 4.

7       5.      RMI as defined herein includes GE and Wabtec during the relevant time periods of
8   ownership by those respective entities.

9       **ANSWER:**     The RMI Parties deny that RMI can be defined to include Wabtec or GE
10  Transportation.

11      6.      On information and belief, Wabtec operates as RMI's and GE's alter ego and there
12  is such a unity of ownership and interest between RMI, GE, and Wabtec that the separateness of
13  these corporate entities, if any, has ceased to exist. For example, there is unity of ownership
14  because Wabtec owns both RMI and GE. Neither GE nor RMI appear to have separate employees
15  and, on information and belief, RMI's main asset, RailConnect, has been transferred to Wabtec.
16  RMI, GE, and Wabtec have disregarded any distinction between the corporate entities by allowing
17  Wabtec to act on RMI's and GE's behalf throughout the relevant time frame during the respective
18  periods of ownership, including in business interactions with Cedar.

19      **ANSWER:**     The RMI Parties deny the allegations in paragraph 6.

20              **II.      JURISDICTION AND VENUE**

21      7.      Counterclaim and Third-Party Defendants RMI, GE, and Wabtec are within the
22  jurisdiction of this Court. Cedar's counter- and third-party- claims arise under Section 2 of the
23  Sherman Act (15 U.S.C. § 2), Section 4 of the Clayton Act (15 U.S.C. § 15(a)), and Section 16 of
24  the Clayton Act (15 U.S.C. § 26). Cedar seeks damages for its injuries resulting from RMI, GE,
25  and Wabtec's tortious and anti-competitive conduct. Cedar also seeks an injunction to prohibit

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 4
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX. (206) 407-2278

1  RMI, GE, and Wabtec from continuing their unlawful conduct. This Court has subject matter

2  jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (in that there is diversity

3  of citizenship between the parties and the amount placed in controversy by each of the claims for

4  relief herein exceeds $75,000, exclusive of interests, costs and attorneys' fees), 28 U.S.C. §

5  1337(a) (antitrust), and 15 U.S.C. § 15 (antitrust). This Court also has jurisdiction over Cedar's

6  state law claims pursuant to 28 U.S.C. § 1367 because such state law claims are related to, and

7  form part of, the same case or controversy.

8  **ANSWER:**  Paragraph 7 states legal conclusions to which no answer is required. To the

9  extent that an answer may be required, the RMI Parties admit that Cedar purports to bring this

10  action pursuant to Section 2 of the Sherman Act, 15 U.S.C. § 2, and Sections 4 and 16 of the

11  Clayton Act, 15 U.S.C. §§ 15 and 26. The allegations in this paragraph purport to characterize 15

12  U.S.C. §§ 2, 15, and 26, as well as 28 U.S.C. §§ 1331, 1332, 1337, and 1367, and those statutes

13  speak for themselves as to their contents. The RMI Parties deny they have engaged in any

14  "tortious," "anti-competitive," or "unlawful" conduct. The RMI Parties further deny that Cedar or

15  any other individual or entity have suffered any injury as a result of any action or conduct of the

16  RMI Parties and deny that Cedar is entitled to the relief it seeks. The RMI Parties deny any

17  remaining allegations in paragraph 7.

18  8.  Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial

19  portion of the acts alleged herein took place in this district and RMI, GE, and Wabtec carry out

20  interstate trade and commerce in this district. Venue also is appropriate in this district under

21  Section 12 of the Clayton Act, 15 U.S.C. § 22 (nationwide venue for antitrust matters). Further,

22  venue is proper in this district because RMI sued Cedar in this judicial district on the basis of

23  RMI's Transportation Management System ("TMS"), which is the subject of Cedar's

24  Counterclaim and Third-Party Complaint.

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 5
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  **ANSWER:**    Paragraph 8 states legal conclusions to which no answer is required. To the

2  extent that an answer may be required, the RMI Parties deny the allegations in paragraph 8.

3  ### III.    NATURE OF THE ACTION

4  9.    Cedar was founded in 2017 to develop Optiswitch, an innovative yard optimization

5  tool for shortline railroads that leverages artificial intelligence.

6  **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

7  as to the truth of the allegation in paragraph 9 and thus deny it.

8  10.    Optiswitch relies on inventory data from Transportation Management Systems

9  ("TMSs") in order to operate. A TMS is a railcar inventory management system used by railroads

10  to automate their daily operations.

11  **ANSWER:**    The RMI parties admit that a TMS is a railcar inventory management

12  system used by railroads. The RMI Parties lack sufficient knowledge or information to form a

13  belief as to the truth of the remaining allegations in paragraph 10 and thus deny them.

14  11.    Shortline railroads are Class II and Class III railroads with reporting marks, as

15  defined by the Surface Transportation Board of the United States ("STB"). Shortline railroads are

16  distinct from Class I railroads, such as BNSF Railway Company and Norfolk Southern, as well as

17  from third-party switchers, which move railcars within a rail yard, but not longer distances.

18  **ANSWER:**    The RMI Parties admit that STB categorizes rail carriers as Class II or Class

19  III based on the carrier's annual operating revenues. The RMI Parties deny any remaining

20  allegations in paragraph 11.

21  12.    RMI is the dominant TMS provider for shortline railroads in the United States.

22  However, over the course of approximately the last 15 years, RMI has allowed its TMS product,

23  RailConnect, and its customer service to languish.

24

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 6
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1     **ANSWER:**    The RMI Parties state that certain allegations in paragraph 12 are vague and

2    ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

3    Parties deny any remaining allegations in paragraph 12.

4     13.    Rather than innovate or improve its services, RMI has engaged in a campaign of

5    anticompetitive conduct in order to maintain its dominant position and stifle competition from the

6    only two major vendors who have attempted to compete with it. In 2016, RMI acquired its only

7    meaningful existing competitor, ShipXpress, and shortly thereafter terminated ShipXpress' TMS

8    product, Command. When Cedar launched a competing, innovative, cost-effective TMS product

9    in 2020, RMI initiated an aggressive campaign to lock up shortline railroad customers in new

10    multi-year contracts, thereby foreclosing them from switching to Cedar's new product. RMI

11    purposefully timed its actions to sabotage Cedar's launch of its competing product and to put Cedar

12    out of business. RMI has also tried on numerous occasions to acquire Cedar, just as it did

13    ShipXpress. RMI has now filed a baseless lawsuit against Cedar with the intent of interfering with

14    Cedar's business and eliminating RMI's only real competitor in the Shortline Railroad TMS

15    Market (as defined in paragraphs 80-83 below).

16     **ANSWER:**    The RMI Parties admit that General Electric indirectly acquired ShipXpress

17    in 2016. The RMI Parties deny any remaining allegations in paragraph 13.

18     14.    Cedar's Counterclaim and Third-Party Complaint arises from RMI, GE, and

19    Wabtec's pattern of unfair, unlawful, and anticompetitive actions against its competitors in the

20    Shortline Railroad TMS Market, including but not limited to Cedar. Upon information and belief,

21    and as described below, RMI, GE, and Wabtec's intentional conduct has severely harmed

22    competition, and will continue to cause injury to current and potential future competitors and

23    customers by substantially foreclosing competition in the Shortline Railroad TMS Market.

24     **ANSWER:**    The RMI Parties deny the allegations in paragraph 14.

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 7
Case No. 2:21-cv-0437-TSZ

## IV.    FACTUAL ALLEGATIONS

**A.**    TMS Products Are the Backbone of a Shortline Railroad's Business and RMI Is the Dominant TMS Provider for Shortline Railroads Despite Antiquated Technology, Poor Customer Service, and High Prices

15.    A TMS is a railcar inventory management system used by railroads to automate their daily operations. A TMS tracks rail car events, movements, and rail tracks; calculates revenue owed to the railroad; handles invoicing; and provides business intelligence. Shortline railroads send and receive all of their electronic data interchange ("EDI") messages to and from other railroads via their TMS. Without the ability to send and receive EDI, a shortline railroad has no way of knowing which trains are coming and going from its rail yards or what to do with the railcars once they arrive. Thus, a shortline railroad is unable to function without a TMS.[2]

**ANSWER:**    The RMI Parties admit that, generally, a TMS automates and tracks railcar movements and switching operations, provides visibility to rail assets, and empowers workers to better plan work flow, generate work orders, measure performance, and improve customer service. The RMI Parties also admit that some shortline railroads use a TMS to send and receive electronic data. The RMI Parties deny any remaining allegations in paragraph 15.

16.    RMI is the dominant TMS provider for shortline railroads in the United States. RMI introduced the first major shortline TMS, RailConnect, in 1992.

**ANSWER:**    The RMI Parties admit that RMI began developing RailConnect TMS ("RailConnect") in or around 1992. The RMI Parties state that certain allegations in paragraph 16 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 16.

17.    On information and belief, RMI has over an 80% share of the market for TMS products for shortline railroads in the United States (the "Shortline Railroad TMS Market"). In March 2018, Jen Schopfer, Vice President of GE's Transport Logistics division (RMI's parent

---

[2] See **Exhibit 1** (McCrory Declaration) ¶ 30; **Exhibit 2** (Mahlandt Declaration) ¶ 3.

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

company until February 2019), described RMI's customer base as "virtually all" shortline railroads in the United States.[3]

**ANSWER:** The RMI Parties state that certain allegations in paragraph 17 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The allegations in paragraph 17 purport to characterize certain statements by Jen Schopfer, Vice President of GE's Transport Logistics division, which speak for themselves as to their contents, and the RMI Parties deny those allegations to the extent they incorrectly or incompletely characterize such statements.

18.    RMI's current parent company, Wabtec, is a global corporation with over 100 subsidiaries, 27,000 employees in 50 countries, net sales of $8.2 billion in 2019, and a market capitalization value of over $16 billion.[4]

**ANSWER:** Paragraph 18 purports to characterize Wabtec's February 19, 2021 Annual Report, which speaks for itself as to its contents, and the RMI Parties deny the allegations in paragraph 18 to the extent they incorrectly or incompletely characterize the contents of that report.

19.    RailConnect was originally developed in 1992 using a "green screen" interface, which relies on manually entered commands, similar to MS-DOS. Over the years, RMI attempted to graft more user-friendly interfaces onto RailConnect's 1992-vintage software without success.

**ANSWER:** The RMI Parties deny the allegations in Paragraph 19.

20.    RailConnect has become an outdated product, as RMI has failed to update its software to meet customer demands. RMI's customers have also complained that its customer service has deteriorated over time[5].

---

[3] Daniel Niepow, *Short Lines Band Together to Leverage Big Data,* PROGRESSIVE RAILROADING (March 15, 2018), https://www.progressiverailroading.com/internet-digital/article/Short-lines-band-together-to-leverage-Big-Data--54114.
[4] *See* Wabtec Corporation, Annual Report (Form 10-K) (Feb. 19, 2021), https://ir.wabteccorp.com/static-files/45820bca-d006-48f0-b02f-6112e1ba8932.
[5] *See* **Exhibit 1** (McCrory Declaration) ¶ 28; **Exhibit 3** (Evans Declaration) ¶¶ 5-7.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 9
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 20 are vague and

2  ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

3  Parties deny any remaining allegations in paragraph 20.

4    21.    Customers have long wanted an alternative to RailConnect because it is outdated,

5  difficult to use, and overpriced. In 2015, GE created a Customer Advisory Board in response to

6  complaints from shortline railroad customers who were dissatisfied with RailConnect.[6] However,

7  RMI has not delivered requested changes or updates to RailConnect under either GE or Wabtec

8  ownership.

9    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 21 are vague and

10  ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

11  Parties deny any remaining allegations in paragraph 21.

12    22.    Shortline railroads measure efficiency by analyzing metrics like railcar dwell time,

13  or the amount of time a railcar sits in the yard, and the overall number of railcars the yards are able

14  to process. The more railcars that move through, the more revenue the yard makes.[7] Shortline

15  railroads cannot maintain, much less improve, efficiency without innovative TMS technology and

16  competent customer service.

17    **ANSWER:**    The RMI Parties admit that some shortline railroads can improve efficiency

18  by using a TMS. The RMI Parties state that the other allegations in paragraph 22 are vague and

19  ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

20  Parties deny any remaining allegations in paragraph 22.

21

22

23

24

---

25  [6] **Exhibit 3** (Evans Declaration) ¶¶ 5-6.

26  [7] **Exhibit 1** (McCrory Declaration) ¶ 33.

**B.**     RMI Acquired and Eliminated its Only Meaningful Competitor in the Shortline Railroad TMS Market

23.     Before Cedar existed, RMI's only meaningful competitor was ShipXpress, which gained a foothold in the Shortline Railroad TMS Market in the 2010s by offering a less expensive alternative TMS product called Command.[8] Between 2010 and 2016, ShipXpress gained approximately 100 shortline railroad customers for Command. On information and belief, Command cost roughly half as much as RMI's RailConnect TMS product.

**ANSWER:**     The RMI Parties state that certain allegations in paragraph 23 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 23.

24.     Rather than compete with ShipXpress, RMI decided to squelch the competition by acquiring ShipXpress in 2016. After the acquisition, on information and belief, RMI raised the price of Command, and allowed the product and customer service to deteriorate.

**ANSWER:**     The RMI Parties admit that General Electric indirectly acquired ShipXpress in 2016. The RMI Parties deny any remaining allegations in paragraph 24.

25.     After Wabtec acquired RMI, it announced in late 2019 or early 2020 that it would discontinue Command and told Command customers their only option was to switch to RMI's RailConnect.[9]

**ANSWER:**     The RMI Parties admit that RMI became an indirect subsidiary of Wabtec in 2019, and RMI informed customers that it intended to sunset the Command product. The RMI Parties deny any remaining allegations in paragraph 25.

**C.**     Cedar's Founders Designed Optiswitch to Integrate with TMS Software

26.     Mario Ponticello and Daril Vilhena founded Cedar in 2017 to build Optiswitch, a yard optimization tool for shortline railroads. Optiswitch utilizes artificial intelligence to analyze

---

[8] **Exhibit 3** (Evans Declaration) ¶ 8.
[9] **Exhibit 2** (Mahlandt Declaration) ¶ 8.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 11
Case No. 2:21-cv-0437-TSZ

1    the inventory in a rail yard and tell operators how to move railcars efficiently, a process that has

2    historically been handled manually with pen and paper. Optiswitch is not a TMS, but instead an

3    innovative complement to a TMS that can automate inventory and rail yard management.

4    **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

5    as to the truth of the allegations in paragraph 26 that relate to Optiswitch, Cedar, or other

6    individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any

7    remaining allegations in paragraph 26.

8    27.    Optiswitch requires up-to-the-minute inventory data to function. Optiswitch needs

9    to know which cars are on which track, what commodities the cars contain, and where the cars are

10    going to create an efficient switching plan for the yard. Rail yards receive inventory data from EDI

11    messages sent by other railroads. EDI messages use standardized fields and codes to maintain data

12    uniformity throughout the railroad industry. Once received via EDI, inventory data is stored in the

13    railroad's TMS.

14    **ANSWER:**    The RMI Parties admit that rail yards can receive inventory data from EDI

15    messages sent by railroads and others, and that such data can be stored in a TMS. The RMI Parties

16    lack sufficient knowledge or information to form a belief as to the truth of the allegations in

17    paragraph 27 that relate to Optiswitch, Cedar or other individuals or entities other than the RMI

18    Parties, and thus deny them.

19    28.    Optiswitch uses inventory data that has been exported from a TMS into a static

20    source, such as a comma-separated values (CSV) file. Data exported from a TMS into CSV format

21    is known as a "snapshot" file. However, exported inventory data becomes obsolete the moment a

22    single rail car moves, so snapshot files have to be produced at regular intervals (e.g., every five

23    minutes) to keep up with current inventory.

24    **ANSWER:**    The RMI Parties admit that an online snapshot may contain data exported

25    from a TMS in CSV format. The RMI Parties lack sufficient knowledge or information to form a

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 12
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

belief as to the truth of the allegations in paragraph 28 that relate to Optiswitch, Cedar, or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 28.

29.     At a minimum, Optiswitch requires the following fields to work: station, track, sequence (order of car on the track), car initial and number, car length, gross weight, load status, STCC (commodity code), and block (block name from the car's trip plan).[10] These are standard fields used by all railroads in the United States and recognized by every TMS, and are intended to maintain consistency among the shortline railroads. Optiswitch also allows for additional optional fields that Class I railroads generally have, such as car priority or track distance matrices.

**ANSWER:**     The RMI Parties admit that station, track, sequence, car initial and number, car length, gross weight, load status, and STCC are generally standard fields. The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 29 that relate to Optiswitch, Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 29.

**D.**     Cedar Marketed Optiswitch with RMI's Permission and Participation

30.     Cedar was eager, and needed, to work cooperatively with RMI due to RMI's dominant share of the Shortline Railroad TMS Market. In April 2018, Cedar approached RMI about integrating Optiswitch with its TMS product, RailConnect.

**ANSWER:** The RMI Parties admit that Cedar approached RMI about Optiswitch. The RMI Parties deny any remaining allegations in paragraph 30.

31.     Beginning in May 2018, RMI provided access to snapshot data feeds for 15 of Cedar's potential customers. RMI provided Cedar with unique login credentials to access snapshot data feeds for 15 railroads interested in using Optiswitch in concert with RMI's TMS, RailConnect. The login credentials provided Cedar access to an external FTP server where RailConnect

---

[10] *See* **Exhibit 4** (Optiswitch Minimum Interface Specification).

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 13
Case No. 2:21-cv-0437-TSZ

1  automatically uploaded and stored the snapshot data files. The login credentials did not provide

2  Cedar access to RMI's internal servers or the RailConnect TMS program. Cedar created a program

3  that downloaded each railroad's snapshot data files from the external FTP server at regular

4  intervals and imported the data into Optiswitch.

5       **ANSWER:**    The RMI Parties deny the allegations in paragraph 31.

6       32.    On May 4, 2018, Steve Murray, Cedar's Executive Vice President, sought "express

7  approval" for an Optiswitch pilot project for RMI customer, Longview Junction Switch Railroad

8  (LVSW), in an email to RMI Customer Success Manager, Larry Cantu:

> [W]e would develop a prototype of [Optiswitch] for LVSW to evaluate. This process requires an interface from RailConnect of current inventory information. We have proposed using the snapshot file via ftp, as that's a common interface that other GE Customers [sic] use to feed data to external systems. I have added a line in the MOU to make sure we're very clear that we will treat RailConnect information, all business processes, and the LVSW data as confidential.[11]

14  Mr. Cantu responded "[a]s far as we are concerned we do not see any conflict with the

15  proposal."[12]

16       **ANSWER:**    The RMI Parties deny the allegations of paragraph 32 to the extent they

17  mischaracterize email exchange Cedar attached as Exhibit 5 to the Counterclaim, including but

18  not limited to the misquoting of Mr. Cantu, who actually stated that "we do not see any conflict

19  with the proposal ***being proposed***" (emphasis added). The RMI Parties lack sufficient knowledge

20  or information to form a belief as to the truth of the allegations in paragraph 32 relating to Cedar

21  or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties

22  deny any remaining allegations in paragraph 32.

---

[11] *See* **Exhibit 5** (May 4, 2018 email RE: Cedar AI MOU with LVSW).
[12] *See* **Exhibit 5** (May 4, 2018 email RE: Cedar AI MOU with LVSW).

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 14
Case No. 2:21-cv-0437-TSZ

33.     Following this exchange, Mr. Murray corresponded with Andrew Parker, Senior Director of Technical Product Management at RMI, about the EDI fields needed for the snapshot file.[13] In a subsequent email including the customer, LVSW, Mr. Murray explained: "What we're talking about below with Andrew is simply a data feed, basically a switch list; I don't need or want access to TMS for that."[14]

**ANSWER:**     The allegations in paragraph 33 purport to characterize the email exchange that Cedar attached as Exhibit 6 to the Counterclaim, which speaks for itself as to its contents. The RMI Parties deny such characterization to the extent it incorrectly or incompletely characterizes the contents therein. The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 33 that relate to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 33.

34.     Cedar continued to market Optiswitch to customers throughout 2018 and 2019. Each time Cedar began working with a new railroad, RMI provided FTP login credentials either directly to Cedar or through the customer so that Cedar could access a snapshot data feed for that customer. RMI did so on each occasion without raising any concerns with Cedar.

**ANSWER:**     The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 34 that relate to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 34.

35.     For example, between December 2018 and November 2018, RMI provided Cedar with unique login credentials to access snapshot data feeds for at least the following: Grafton and

---

[13] *See* **Exhibit 6** at 4 (May 27, 2018 email RE: GE-RMI Generated Data – LVSW).
[14] *See* **Exhibit 6** at 1 (May 27, 2018 email RE: GE-RMI Generated Data – LVSW).

Upton ("GU") and Port Harbor Railroad ("PHRR");[15] Gardendale Railroad ("GRD");[16] Cedar Rapids & Iowa City Railroad ("CIC");[17] Central Maine and Quebec Railway ("CMQ");[18] Port Terminal Railroad Association ("PTRA");[19] Texas North Western Railway ("TXNW");[20] and Portland Terminal Railroad Company ("PTRC").[21]

**ANSWER:**    The allegations in paragraph 35 purport to characterize emails that Cedar attached as Exhibits 7 through 15 to the Counterclaim. Those documents speak for themselves as to their contents, and the RMI Parties deny such characterizations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 35.

36.    Once activated, the snapshot data feeds were updated and downloaded by Cedar from the FTP server automatically, without requiring manual entry of login credentials each time.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 36 that relate to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties admit that Cedar accessed and downloaded RMI's proprietary data without authorization. The RMI Parties deny any remaining allegations in paragraph 36.

37.    As Cedar continued to optimize the Optiswitch product and work with its customers, it became clear that the snapshot data feeds were insufficient for high-volume rail yards because the data became stale almost immediately because it was not a real-time data feed.

---

[15] *See* **Exhibit 7** (Dec. 7, 2018 email FTP for Online Snapshot); see also **Exhibit 8** (Dec. 10, 2018 email Re: FTP for Online Snapshot); and **Exhibit 9** (Dec. 10, 2018 email FTP for GU and PHRR).
[16] *See* **Exhibit 10** (Dec. 19, 2018 email RE: GRD Snapshot Feed).
[17] *See* **Exhibit 11** (Jan. 16, 2019 email RE: AEI FTP for CIC).
[18] *See* **Exhibit 12** (Jan. 16, 2019 email RE: CMQ); *see also* **Exhibit 13** (Jan. 29, 2019 email RE: Access).
[19] *See* **Exhibit 14** (Feb. 13, 2019 email RE: FTP for Snapshot for PTRA).
[20] *See* Evans Decl. Ex. C (Apr. 11, 2019 email RE: FTP).
[21] *See* **Exhibit 15** (Oct. 10, 2019 email RE: PTRC access).

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 16
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

Customers wanted the TMS data to be sent to Optiswitch continuously, and wanted Optiswitch to be able to send data regarding inventory back to the TMS in real time.[22] Cedar and its customers realized that an application programming interface ("API") between RailConnect and Optiswitch, which could exchange real-time data automatically, was necessary for Optiswitch to work as designed and as customers sought and needed.

**ANSWER:** The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 37 relating to Optiswitch, Cedar, or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 37.

38. On information and belief, RMI customers are prohibited from or otherwise unable to provide their TMS data to Cedar directly.

**ANSWER:** The RMI Parties admit the allegations in paragraph 38.

**E.** RMI Abruptly Terminated Cedar's Access to the Snapshot Feeds

39. Although RMI authorized Cedar's access to the snapshot data feeds it used with its Optiswitch customers, Cedar was aware that RMI could unilaterally terminate the data feeds at any time. RMI's sudden termination of Command demonstrated its willingness to abruptly terminate for its own benefit services customers need and rely on, which heightened concerns about the possibility of similar abrupt action affecting the data feeds needed for Optiswitch.

**ANSWER:** The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 39 relating to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 39.

---

[22] **Exhibit 1** (McCrory Declaration) ¶ 9.

40.    The instability and uncertainty of this situation prevented Cedar from entering into Optiswitch contracts with potential customers that used the RailConnect TMS, which represented over 80% of Cedar's target customer base.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 40 relating to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties further state that certain allegations in paragraph 41 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 40.

41.    On August 6-7, 2019, Brandon Parker, Andrew Parker, Jeremiah Dirnberger, and Nichole Peterson of RMI met with representatives from Cedar and mutual customer Portland Terminal Railroad Association ("PTRA") to discuss linking Optiswitch and RailConnect through an API. David McCrory of PTRA explained what functionality he wanted to incorporate into Optiswitch and RailConnect and the parties discussed the feasibility of implementing his requested changes and replacing the snapshot data feeds with a continuous data exchange.[23] PTRA offered to pay for this improved data exchange.[24]

**ANSWER:**    The RMI Parties admit that Andrew Parker, Jeremiah Dirnberger, and Nichole Peterson met with representatives of Cedar and PTRA about Optiswitch. The RMI Parties further state that certain allegations in paragraph 41 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 41.

42.    Following the meeting, Cedar, PTRA, and RMI communicated about the API project for one to two months. In late September 2019, RMI abruptly stopped responding to

---

[23] **Exhibit 1** (McCrory Declaration) ¶¶ 13-16.
[24] **Exhibit 1** (McCrory Declaration) ¶ 17.

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  requests for updates. After one additional follow-up with PTRA on December 6, RMI stopped

2  communicating with Cedar and PTRA entirely and the project stalled.[25]

3    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 42 are vague

4  and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

5  Parties deny any remaining allegations in paragraph 42.

6    43.    Without an API, Optiswitch could not work as designed and the RailConnect

7  customers who were using the product could not use it as intended.

8    **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

9  as to the truth of the allegations in paragraph 43 relating to Optiswitch, Cedar, or other individuals

10  or entities other than the RMI Parties, and thus deny them.

11    **F.**    Cedar Developed its Own TMS After Negotiations with RMI Failed

12    44.    By early 2020, Cedar realized that without a reasonable guarantee of continued data

13  sharing with RMI and an API that would enable real-time data feeds for customers' own TMS

14  data, it could not move forward with Optiswitch unless it developed its own TMS. As a result,

15  Cedar began developing a new TMS platform, called Automated Rail Management System

16  ("ARMS").

17    **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

18  as to the truth of the allegations in paragraph 44, which relate to Optiswitch, ARMS, Cedar, or

19  other individuals or entities other than the RMI Parties, and thus deny them.

20    45.    In January 2020, Cedar won a competitive bid to build a modern TMS for Terminal

21  Railroad of St. Louis ("TRRA"). TRRA was a RMI customer until 2015, when it switched to

22  ShipXpress' Command product. When RMI informed TRRA it was terminating Command, TRRA

23  chose to explore alternative TMS vendors.[26]

24

25  [25] **Exhibit 1** (McCrory Declaration) ¶¶ 18-22.

26  [26] **Exhibit 2** (Mahlandt Declaration) ¶¶ 4-5, 7-8.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 19
Case No. 2:21-cv-0437-TSZ

1    **ANSWER:**    The RMI Parties admit that TRRA was an RMI customer on RailConnect

2    before and after switching to ShipXpress' Command product. The RMI Parties lack sufficient

3    knowledge or information to form a belief as to the truth of the allegations in paragraph 45 that

4    relate to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The

5    RMI Parties deny any remaining allegations in paragraph 45.

6    46.    Cedar's software engineers possess decades of experience from Amazon, Google,

7    Microsoft, Uber, and Docker. Furthermore, many of Cedar's employees have deep experience in

8    the rail industry, having worked at both railroads and other rail technology companies. Cedar's

9    combined expertise in software development and the rail industry— coupled with its existing brand

10    and customer relationships within the Shortline Railroad TMS Market from its Optiswitch

11    product—gave Cedar a novel perspective on data management and problem solving that allowed

12    it to create its modern TMS, ARMS, in record time.

13    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 46 are vague and

14    ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

15    Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations

16    in paragraph 46 relating to Cedar or other individuals or entities other than the RMI Parties, and

17    thus deny them. The RMI Parties deny any remaining allegations in paragraph 46.

18    47.    ARMS is a full-featured inventory and revenue TMS platform for railroads that

19    serves as a single source of truth for a railroad's inventory, and supports electronic data interchange

20    across connecting railroads. ARMS offers a simplified, user-friendly system. Railroad employees

21    can become proficient in using ARMS in approximately 30 to 60 minutes,[27] whereas railroad

22    employees took weeks to become proficient in using RMI's product, RailConnect.

23    **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

24    as to the truth of the allegations in paragraph 47 relating to ARMS or other individuals or entities

25    ───────────────────

26    [27] **Exhibit 2** (Mahlandt Declaration) ¶ 16.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 20
Case No. 2:21-cv-0437-TSZ

other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 47.

48.     On information and belief, ARMS is also approximately 10-15% less expensive than RailConnect, making it an appealing and competitively-priced alternative to RailConnect.

**ANSWER:**     The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 48 relating to ARMS or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 48.

49.     Even before commercially launching ARMS, Cedar sold TMS services to five additional railroads, including three with RMI accounts: Burlington Junction Railway, City of Rochelle Railroad, Farmrail Corporation, Grainbelt Corporation, and North Shore Railroad Company. None had previously tried Optiswitch or had a snapshot data feed from RMI that Cedar could access.

**ANSWER:**     The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 49 relating to ARMS, Optiswitch, Cedar, or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 49.

50.     ARMS was a success. Cedar migrated its first customers onto ARMS in June 2020.

**ANSWER:**     The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 50, which relate to ARMS and Cedar, and thus deny them.

**G.**     RMI Abruptly Terminated Cedar's Access to the Snapshot Feeds

51.     While RMI halted development of an API between Optiswitch and RailConnect in late 2019, from late 2019 until November 2020, RMI did not terminate Cedar's access to the snapshot feeds and never told Cedar it was no longer authorized to access the feeds. The data feeds

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 21
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

continued to update automatically, despite the fact that the RMI customers who had tried Optiswitch were no longer using the product and no one was utilizing the data feeds.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 51 that Cedar "continued to update" snapshot feeds "automatically," and thus deny them. The RMI Parties deny any remaining allegations in paragraph 51.

52.    On information and belief, on November 4, 2020, RMI unilaterally reset the FTP login credentials for the railroads that had been using Optiswitch, without prior notice.

**ANSWER:**    The RMI Parties admit that RMI reset login credentials for railroads after a major security incident that Cedar caused. The RMI Parties further state they provided notice to affected customers. The RMI Parties deny any remaining allegations in paragraph 52.

**H.**    RMI Used Coercive Means To Keep Dissatisfied Customers Locked-in to RailConnect

53.    Cedar's development of ARMS in early 2020 coincided with RMI's sun-setting of the ShipXpress TMS, Command, and efforts to force Command customers onto the RMI TMS, RailConnect. Upon learning about Cedar's new TMS, ARMS, several Command customers, including TRRA, wanted to switch to ARMS.[28]

**ANSWER:**    The RMI Parties admit that RMI informed customers that it would be sunsetting the Command product. The RMI Parties deny that that RMI made any "efforts to force Command customers into the RMI TMS, RailConnect." The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 53 relating to ARMS, Cedar, or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 53.

---

[28] **Exhibit 2** (Mahlandt Declaration) ¶¶ 8, 11.

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

54.     When RMI learned that some ShipXpress customers planned to let their contracts expire and then switch to ARMS, it sent notice of termination letters to those customers, notifying them that if they did not sign a new multi-year contract for RailConnect, their TMS services would be terminated in 60 days. RMI sent such a notice of termination letter to TNW Corporation ("TNW") on January 13, 2021, stating that TNW's TMS services would be terminated in 60 days unless it executed an amendment to extend its contract's original four-year term.[29] On information and belief, RMI sent similar letters to other Command customers.

**ANSWER:**    The allegations in paragraph 54 purport to characterize a January 13, 2021, letter from Wabtec to TNW, which speaks for itself as to its contents. The RMI Parties deny those allegations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 54.

55.     It typically takes about six months to build out a TMS for each new customer and for the customer to transition to the new system. Because it was impossible for Command customers to switch to ARMS within 60 days (as RMI knew) and they could not suffer a shutdown of their TMS, these railroads had no choice but to contract with RMI or cease operations.

**ANSWER:**    RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 55 relating to ARMS or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 55.

56.     In early- to mid-2021, RMI sent similar notice of termination letters to RailConnect customers whose contracts were about to become "evergreen," meaning that when the initial contract term expired, it would become month-to-month. Like with the Command customers, these letters threatened to cut off the RMI customers' TMS services if they did not sign a new multi-

---

[29] *See* **Exhibit 3** (Evans Declaration) ¶ 14, Evans Decl. Ex. A (Jan. 13, 2021 Non-renewal letter from Wabtec to TNW).

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 23
Case No. 2:21-cv-0437-TSZ

year contract for RailConnect. RMI sent PTRA such a letter in or around March 2021, threatening to terminate PTRA's access to RailConnect unless PTRA executed a new three-year contract.[30]

**ANSWER:**    The RMI Parties admit that a letter was sent to PTRA before its contract term ended seeking to extend the contract term. The RMI Parties deny any remaining allegations in paragraph 56.

57.    RMI knows that railroads must have a TMS in order to conduct business and that it typically takes more than 60 days for a railroad to switch TMS products.[31] It leveraged that knowledge by threatening to discontinue service unless customers committed to a new multi-year contract for RailConnect. It purposefully timed its notice of termination letters to reach customers before Cedar had time to move additional customers onto ARMS, thereby seeking to lock-in customers to RailConnect and put Cedar out of business.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 57.

58.    It is not feasible for shortline railroads to use more than one TMS product at one time. On information and belief, most shortline railroads could not afford the cost of running two TMS products simultaneously and would not choose to operate duplicative operating systems, as it would create a risk of inconsistencies and incur substantial cost and inefficiencies. Thus, by forcing shortline railroads into signing multi-year contracts, RMI is foreclosing those customers from its competitors, including Cedar. In other words, RMI's contracts with its RailConnect customers are, at least, de facto exclusive agreements that effectively foreclose competition from competing TMS providers for at least of those agreements.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 58 that relate to individuals or entities other than the

---

[30] **Exhibit 1** (McCrory Declaration) ¶¶ 29-31.
[31] **Exhibit 3** (Evans Declaration) ¶ 15; Exhibit 1 (McCrory Declaration) ¶ 30.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 24
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 58.

59. On information and belief, RMI also deters railroads from seeking an alternative TMS service provider by charging onerous early termination fees for cancelling a contract with RMI. Exorbitant early termination fees deter railroads that otherwise might seek TMS services from another vendor.

**ANSWER:** The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 59 that relate to individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 59.

60. RMI has also sought to deter railroads from switching TMS service providers by restricting customers' access to their historical data after leaving RMI.[32] Railroads must have access to historical data in order to conduct their business. For example, railroads rely on historical data to create reports regarding business trends, growth, and revenue; and railroads often search historical data at the request of shippers who, for example, need to know the location or status of a particular railcar on a certain date. Railroads cannot risk a lack of access to their historical data.[33]

**ANSWER:** The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 60 that relate to individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 60.

61. When TNW notified RMI that it would not renew its RailConnect contract, TNW requested a copy of its historical data or, alternatively, offered to pay RMI to keep TNW's old data online. RMI refused, making TNW's transition from RailConnect to ARMS particularly painful.[34]

---

[32] *See* **Exhibit 3** (Evans Declaration) ¶¶ 19-20.
[33] **Exhibit 3** (Evans Declaration) ¶¶ 21-24.
[34] **Exhibit 3** (Evans Declaration) ¶¶ 19-20, 22-24.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 25
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    Similarly, when TRRA decided to switch to ARMS, RMI made its transition unnecessarily

2    difficult by sending TRRA's historical data to Cedar in a disorganized format.[35] On information

3    and belief, RMI has deterred other railroads considering switching TMS providers from leaving

4    RMI by threatening to withhold their historical data or charge an exorbitant price for access to it.

5        **ANSWER:**    The RMI Parties admit that TNW requested historical data, which RMI

6    provided to TNW. The RMI Parties deny any remaining allegations in paragraph 61.

7        62.    Shortline railroad customers have told Cedar that they want to switch to ARMS,

8    but cannot because of RMI's conduct.

9        **ANSWER:**    The RMI Parties state that the allegation in paragraph 62 is vague and

10    ambiguous such they cannot respond to the allegation and they thus deny it.

11    **I.**    Wabtec Attempted to Acquire Cedar

12        63.    Since late 2019, Wabtec has made several overtures to acquire Cedar.

13        **ANSWER:**    The RMI Parties deny the allegations in paragraph 63.

14        64.    During discussions with Wabtec in 2019 that were purportedly related to integrating

15    Optiswitch and RailConnect, it became clear that Wabtec was not willing to enter into a data-

16    sharing arrangement with Cedar, but was instead focused on acquiring Cedar.

17        **ANSWER:**    The RMI Parties deny the allegations in paragraph 64.

18        65.    After Cedar won the bid with TRRA in January 2020 and began developing ARMS,

19    Wabtec reached out (after falling silent in late 2019) to propose further discussions between the

20    parties. On May 13, 2020, Brandon Parker, Senior Director of Product Management at Wabtec,

21    emailed Steve Murray of Cedar on behalf of Wabtec Vice President Scott Holland to schedule "an

22    informative discussion with yourself and the Cedar AI team . . . to gain [an] informative

23

24

25
    ─────────────────────────
26    [35] **Exhibit 2** (Mahlandt Declaration) ¶ 15.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 26
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

understanding of Cedar AI's product offering/strategy, to allow a better understanding of potential alignments."[36]

**ANSWER:**    The allegations in paragraph 65 purport to characterize the May 13, 2020, email attached as Exhibit 16 to the Counterclaim, which speaks for itself as to its contents. The RMI Parties deny these allegations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 65.

66.    Wabtec requested that the parties sign a mutual non-disclosure agreement in advance of the meeting, which Cedar agreed to.[37]

**ANSWER:**    The allegations in paragraph 65 purport to characterize the May 15, 2020, email attached as Exhibit 16 to the Counterclaim, which speaks for itself as to its contents. The RMI Parties deny these allegations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 66.

67.    On May 21, 2020, the Cedar team met with Mr. Holland who told Cedar to "stay in [its] lane" and focus on rail yard optimization (i.e., Optiswitch), rather than railcar management (i.e., ARMS). Daril Vilhena, Cedar's co-CEO, pointed out that Cedar had no choice but to create its own TMS because RMI refused to sell access to the inventory data that Optiswitch relies on. Wabtec again expressed interest in acquiring Cedar, but Cedar indicated it was not interested and the meeting ended with no planned follow-up.

**ANSWER:**    The RMI Parties admit that Mr. Holland and Cedar had a call that the parties mutually agreed to, that RMI refused to provide access to snapshot feeds, and that there was no planned follow-up. The RMI Parties deny any remaining allegations in paragraph 67.

---

[36] *See* **Exhibit 16** (May 13, 2020 email from Brandon Parker RE: Wabtec/Cedar AI Meeting).
[37] *See* **Exhibit 16** (May 15, 2020 email from Steve Murray to Brandon Parker RE: Wabtec/Cedar AI Meeting).

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

68.    On October 16, 2020, Mr. Holland contacted Mario Ponticello, Cedar's co-CEO and CFO, to "hear how things are going and chat a bit about what we are doing on this end."[38] Mr. Ponticello had a phone call with Mr. Holland shortly thereafter, in which Mr. Holland again raised the possibility of acquisition and Mr. Ponticello again declined.

**ANSWER:**    The allegations in paragraph 68 purport to characterize an October 16, 2020, email attached as Exhibit 17 to the Counterclaim, which speaks for itself as to its contents. The RMI Parties deny these allegations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 68.

69.    These discussions all preceded RMI's November 4, 2020 cut-off of Cedar's access to the snapshot data feeds.

**ANSWER:**    The RMI Parties state that the allegation in paragraph 69 is so vague and ambiguous as such that they cannot respond to the allegations and they thus deny it.

70.    On March 5, 2021, nearly five months after RMI unilaterally cut off the data feeds, Mr. Holland contacted Mr. Ponticello once again to propose purchasing Cedar, and Cedar once again declined.[39]

**ANSWER:**    The allegations in paragraph 70 purport to characterize a March 5, 2021, email attached as Exhibit 18 to the Counterclaim, which speaks for itself as to its contents. The RMI Parties deny those allegations to the extent they incorrectly or incompletely characterize the contents therein. The RMI Parties deny any remaining allegations in paragraph 70.

71.    Cedar has refused all of Wabtec's offers for various reasons, including concern that RMI would terminate ARMS as it did with ShipXpress's TMS product, Command, after acquiring it. Cedar has developed an innovative, cost-effective TMS product for shortline railroads that already has growing demand and that is positioned to pose substantial competition to RMI in the

---

[38] *See* **Exhibit 17** (Oct. 16, 2020 email from Scott Holland to Mario Ponticello RE: Time to Catch Up).

[39] *See* **Exhibit 18** (Mar. 5, 2021 email from Scott Holland to Mario Ponticello RE: Quick Call?).

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    Shortline Railroad TMS Market, which RMI continues to dominate. Cedar is unwilling to allow
2    RMI to again shut down competition as it did with Command.

3    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 71 are vague
4    and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI
5    Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations
6    in paragraph 71 relating to ARMS, Cedar, or other individuals or entities other than the RMI
7    Parties, and thus denies them. The RMI Parties deny any remaining allegations in paragraph 71.

8    **J.**    RMI's Lawsuit Against Cedar is Part of its Scheme to Stifle Competition

9    72.    RMI commenced this lawsuit against Cedar on April 1, 2021, alleging that Cedar
10    improperly accessed and used RMI's confidential data in an attempt to gain an unfair competitive
11    advantage. RMI initiated the lawsuit less than a month after Cedar declined Wabtec's most recent
12    acquisition offer. On information and belief, RMI filed the lawsuit because Cedar refused
13    Wabtec's repeated acquisition overtures. The lawsuit is part of a scheme by RMI to foreclose
14    competition from Cedar and a means to intimidate, harass, and coerce Cedar into selling itself to
15    Wabtec or to drive Cedar out of business with burdensome legal fees, thereby eliminating RMI's
16    only real competitor in the Shortline Railroad TMS Market.

17    **ANSWER:**    The RMI Parties admit they commenced this lawsuit against Cedar on April
18    1, 2021, and denies the allegations of paragraph 72 to the extent it mischaracterizes the complaint.
19    The RMI Parties deny any remaining allegations in paragraph 72.

20    73.    On information and belief, RMI realized that Cedar was a viable competitor in the
21    Shortline Railroad TMS Market after Cedar launched ARMS in June 2020. Until that point,
22    without its own TMS, Cedar was at the mercy of RMI and, thus, subject to its control under the
23    threat of RMI terminating the snapshot data feeds.

24

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 29
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 73 are vague and

2    ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

3    Parties deny any remaining allegations in paragraph 73.

4    74.    On information and belief, after RMI learned of Cedar's successful implementation

5    of ARMS, it decided to cry foul over Cedar's supposed reliance on the snapshot data feeds.

6    However, the snapshot data feeds were unnecessary for the development of ARMS.

7    **ANSWER:**    The RMI Parties deny the allegations in paragraph 74.

8    75.    RMI authorized Cedar to access the snapshot data feeds, but filed this lawsuit

9    anyway.

10    **ANSWER:**    The RMI Parties deny the allegations in paragraph 75.

11    76.    RMI asserted numerous allegations that are contradicted by facts known to RMI

12    and Wabtec, such as: (1) Optiswitch is not a TMS; (2) GE, Wabtec, and RMI employees granted

13    Cedar access to multiple railroads' TMS snapshot data via an external FTP server; (3) the snapshot

14    data feeds were active from various dates in 2018 and 2019 until November 2020, when RMI

15    claims it "discovered" the feeds and shut them down; (4) Cedar was not accessing these railroads'

16    actual TMS systems in RailConnect because the snapshot data was uploaded to a completely

17    separate external FTP server; (5) it would be impossible to reverse-engineer a database program

18    as complex as a TMS from the inventory data contained in a snapshot file; and (6) the snapshot

19    files Cedar had access to did not contain "car hire data."

20    **ANSWER:**    The RMI Parties deny the allegations in paragraph 76.

21    77.    On April 1, 2021, RMI filed its motion for expedited discovery (Dkt. 2) and the

22    original complaint (Dkt. 1). RMI told the Court that it had allegedly noticed "unusual activity on

23    [TMS]...namely more frequent logins and an abnormal spike in the frequency and volume of data

24    being downloaded." (Dkt. 2 at 1:25-2:1.) RMI also represented to the Court that the only way it

25    could identify the Doe defendants was to issue a subpoena to Amazon Web Services. *Id.* at 2:18-

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 30
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

20. In fact, RMI knew that the snapshot data feeds had been set up for Cedar's Optiswitch users and that the feeds automatically updated at frequent intervals to keep the inventory data as accurate as possible, which would account for a large volume of simultaneous downloads occurring on 15 different railroad logins.

**ANSWER:**    The RMI Parties admit that RMI filed its motion for expedited discovery and the original complaint on April 1, 2021. The RMI Parties also admit that RMI told the Court that it had noticed unusual activity on TMS, namely more frequent logins and an abnormal spike in the frequency and volume of data being downloaded. The RMI Parties further admit that RMI represented to the Court it could definitely identify the Doe defendants via a subpoena to Amazon Web Services. The RMI Parties deny any remaining allegations in paragraph 77.

78.    RMI filed the complaint against nascent competitor Cedar even though RMI knew that many of the factual allegations against Cedar were untrue.

**ANSWER:**    The RMI Parties admit that RMI filed a complaint against Cedar. The RMI Parties deny any remaining allegations in paragraph 78.

79.    RMI's lawsuit against Cedar is objectively baseless and intended to interfere with Cedar's business.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 79.

**K.**    The Relevant Antitrust Market and RMI's Market Power

80.    There is a relevant antitrust market for TMS products for shortline railroads ("Shortline Railroad TMS Market"). TMS products for shortline railroads provide unique, specialized functionality and tools required by shortline railroads with distinct and complex needs including, but not limited to, handling railcars at the last-mile portion of a rail network, interchanging data with Class I railroads, car ordering, car history, waybilling support, load/release/rebill processing, track control, complete inventory management, customer management, complex revenue management, and business intelligence. Because of these specific

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 31
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX. (206) 407-2278

features, there is no other product that is a reasonably interchangeable substitute for TMS products for shortline railroads.

**ANSWER:**    Paragraph 80 states legal conclusions to which no answer is required. To the extent a response is required, the RMI Parties admit that RailConnect provides unique, specialized functionality required by some shortline railroads. The RMI Parties further state that certain allegations in paragraph 80 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 80.

81.    The Shortline Railroad TMS Market is distinct from the TMS market for Class I railroads, such as BNSF Railway Company and Norfolk Southern. Class I railroads design and maintain their own bespoke TMS products, while shortline railroads typically use outside vendors to supply a TMS. In addition, there are a small number of shortline railroads that are provided free access to a Class I TMS product and, thus, are not included in the relevant Shortline Railroad TMS Market.

**ANSWER:**    Paragraph 81 states legal conclusions to which no answer is required. To the extent a response is required, the RMI Parties admit that some shortline railroads use outside vendors to supply a TMS and others are provided free access to a Class I TMS product. The RMI Parties further state that certain allegations in paragraph 81 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 81.

82.    Shortline railroads are also distinct from third-party switchers. Third-party switchers move railcars within a rail yard, but are not intended for moving trains over a longer distance, and are not legally considered Class II or Class III railroads by the STB. Accordingly, third-party switchers have much less complex needs than shortline railroads, which have to be able to interconnect with numerous Class I and other shortline railroads. This requires a much broader

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 32
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  set of EDI data and complex industry messaging with Railinc, a subsidiary of the Association of

2  American Railroads ("AAR"). Thus, a TMS designed for use by a third-party switcher would be

3  insufficient to meet the needs of a shortline railroad, and companies that provide TMS products

4  designed for use by third-party switchers do not compete in the for Shortline Railroad TMS

5  Market.

6     **ANSWER:**    Paragraph 82 states legal conclusions to which no answer is required. To

7  the extent a respond is required, the RMI Parties admit that shortline railroads and third-party

8  switchers sometimes have different levels of complexity. The RMI Parties further state that certain

9  allegations in paragraph 82 are vague and ambiguous such that they cannot respond to them and

10 the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 82.

11    83.    The relevant geographic market is the United States. Domestic shortline railroads

12 source TMS products exclusively within the United States. There are no international companies

13 that offer TMS products designed for shortline railroads operating within the United States.

14 Shortline railroads can and do source TMS products from suppliers located anywhere within in the

15 United States because TMS products are software solutions that can be created, customized, and

16 used remotely from any location within the United States.

17    **ANSWER:**    Paragraph 83 states legal conclusions to which no answer is required. To

18 the extent a respond is required, the RMI Parties admit that domestic shortline railroads source

19 TMS products within the United States. The RMI Parties lack sufficient knowledge or information

20 to form a belief as to the truth of the allegations in paragraph 83 relating to every TMS product

21 international companies offer, and thus deny them. The RMI Parties deny any remaining

22 allegations in paragraph 83.

23    84.    The Shortline Railroad TMS Market is highly concentrated and comprised of a

24 small number of market participants. RMI has long held and continues to hold a dominant and

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 33
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

controlling position in the Shortline Railroad TMS Market. On information and belief, RMI has controlled over 80% share of the Shortline Railroad TMS Market for at least 10 years.

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 84 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 84.

85.    Today, Cedar is RMI's only major competitor in this market with an estimated market share of approximately 4%. RMI acquired its only other major competitor in the Shortline Railroad TMS Market, ShipXpress, and terminated its TMS product, Command, in 2020. There are a small number of fringe suppliers in the Shortline Railroad TMS Market, but these providers are not considered viable competitors by shortline railroads.

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 85 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties admit that General Electric indirectly acquired ShipXpress. The RMI Parties deny any remaining allegations in paragraph 85.

86.    Since RailConnect's launch in the early 1990s, RMI's market position has been protected by high barriers to entry and expansion. Developing a full-fledged TMS is an enormous undertaking because it is the core processing center for a railroad's entire business operations. Thus, it requires specialized expertise and an investment of capital and time to create and maintain a TMS product that can only be marketed to a limited audience. Cedar has spent millions of dollars on developing ARMS.

**ANSWER:**    Paragraph 86 states legal conclusions to which no answer is required. To the extent a response is required, the RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 86 relating to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties further state that certain

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 34
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1   allegations in paragraph 86 are vague and ambiguous such that they cannot respond to them and

2   the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 86.

3       87.     Joey Evans of TNW explored the possibility of creating a TMS for TNW's shortline

4   railroad, TXNW, in 2019 and determined that it was not feasible because it would take too long

5   and cost millions of dollars.[40]

6       **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

7   as to the truth of the allegations in paragraph 87, which relate to individuals or entities other than

8   the RMI Parties, and thus deny them.

9       88.     Cedar represents a competitive threat to RMI because it was able to overcome these

10  substantial barriers to entry by leveraging its employees' unique combination of software

11  engineering experience and shortline railroad expertise—as well as its brand and relationships with

12  shortline railroads with respect to Optiswitch—to create a new TMS product in record time. Cedar

13  is the only supplier to break into the Shortline Railroad TMS Market in the last decade.

14      **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

15  as to the truth of the allegations in paragraph 88 relating to Optiswitch, Cedar, or other individuals

16  or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining

17  allegations in paragraph 88.

18      89.     RMI's dominant market share has given it the ability to exercise price control and

19  charge supracompetitive prices for RailConnect for years. On information and belief, Command

20  cost approximately half as much as RailConnect prior to ShipXpress's acquisition. Cedar's TMS,

21  ARMS, costs approximately 10-15% less than RailConnect. Despite its antiquated technology,

22  poor customer service, and refusal to respond to customers' requests for product improvements,

23  RMI continues to charge a premium price for RailConnect.

24

25

26  _____
[40] **Exhibit 3** (Evans Declaration) ¶ 11.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 35
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief
2  as to the truth of the allegations in paragraph 89 related to ARMS, Optiswitch, Cedar, or other
3  individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties further
4  state that certain allegations in paragraph 89 are vague and ambiguous such that they cannot
5  respond to them and the allegations are thus denied. The RMI Parties deny any remaining
6  allegations in paragraph 89.

7  90.    Switching TMS products is an enormous and costly undertaking for a shortline
8  railroad. The railroad has to ensure that historical data is transferred into the new system and
9  replicate all reporting and operational processes, which are typically customized by customer. It
10  also has to train employees on the new system.[41] It is also a costly undertaking, not just because
11  the railroad is licensing a new product.

12  **ANSWER:**    The RMI Parties admit that there are costs when changing TMS products.
13  The RMI Parties further state that certain allegations in paragraph 90 are vague and ambiguous
14  such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny
15  any remaining allegations in paragraph 90.

16  91.    In addition to these costs, the process of switching TMS products creates burdens
17  and significant risks to a shortline railroad, including potentially severe and costly disruptions to
18  its operations. While a TMS is offline, the railroad cannot function. When a railroad is unable to
19  function, inventory gets backed up, transportation delays snowball, and rail shippers incur fees for
20  demurrage.

21  **ANSWER:**    The RMI Parties state that certain allegations in paragraph 91 are vague and
22  ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI
23  Parties deny any remaining allegations in paragraph 91.

24

25

26  [41] **Exhibit 3** (Evans Declaration) ¶ 15.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 36
Case No. 2:21-cv-0437-TSZ

92.    The transition to a new TMS typically takes at least six months because a TMS must be customized for each railroad.

**ANSWER:**    The RMI Parties state the allegation in paragraph 92 is vague and ambiguous such that they cannot respond to it and the allegation is thus denied.

93.    Thus, the difficulty, costs, and risk of switching TMS products deters railroads from seeking out alternatives to the system with which they are familiar, even if the alternative is more efficient, innovative, and cost effective.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 93 that relate to individuals or entities other than the RMI Parties, and thus denies them. The RMI Parties deny any remaining allegations in paragraph 93.

94.    RMI has monopoly power over the vast majority of shortline railroads that are locked-in to RailConnect due in part to the significant costs and burdens of changing from one TMS product to another and the risk that RMI will terminate RailConnect before the railroad can transition to a new TMS, should RMI suspect they are seeking to do so.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 94.

95.    If RMI is allowed to persist in its pattern of anticompetitive acts and successfully extinguishes the competitive threat from Cedar, it will send a strong signal to other potential future market entrants that competition is futile, thereby further cementing its market dominance and perpetuating the harm to competition and ultimately customers.

**ANSWER:**    The RMI Parties deny RMI engaged in a "pattern of anticompetitive acts" and further deny any remaining allegations in paragraph 95.

**L.**    RMI's Anticompetitive Conduct Causes Harm to Competition and Consumers

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 37
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

96.     As detailed above, RMI, GE, and Wabtec have engaged in a pattern of anticompetitive conduct and substantially harmed competition in the Shortline Railroad TMS Market.

**ANSWER:**     The RMI Parties deny the allegations in paragraph 96.

97.     RMI, acting through its parent GE, acquired its only existing competitor, ShipXpress, in 2016 and, on information and belief, then raised the price for its TMS product, Command. Following Wabtec's acquisition of GE in February 2019, Wabtec terminated Command altogether, thereby eliminating the only competitive shortline TMS product on the market at the time.

**ANSWER:**     The RMI Parties admit that General Electric indirectly acquired ShipXpress in 2016 and that RMI completed the sunset of Command in 2021, years after the acquisition. The RMI Parties deny any remaining allegations in paragraph 97.

98.     Wabtec has similarly sought to eliminate Cedar as a nascent competitor through acquisition, making several overtures to Cedar since 2019.

**ANSWER:**     The RMI Parties deny the allegations in paragraph 98.

99.     Unable to eliminate Cedar through acquisition, as it had done with ShipXpress, RMI initiated a campaign to lock customers into new, multi-year contracts, knowing that those customers would then be foreclosed from switching to Cedar's new TMS product, ARMS. RMI sent notice of termination letters to customers, threatening to terminate their TMS service unless the customers signed new contracts for RailConnect. RMI's efforts had its intended effect, forcing unwilling customers, including PTRA, to sign new RailConnect contracts rather than switch to the product that they wanted and that better meets their needs at a lower cost: ARMS.[42]

**ANSWER:**     The RMI Parties deny the allegations in paragraph 99.

---

[42] **Exhibit 1** (McCrory Declaration) ¶¶ 30-31.

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    100.    RMI purposefully timed its notice of termination letters to reach customers before

2    Cedar had time to migrate more than a handful of customers onto ARMS, thereby seeking to lock-

3    in customers to RailConnect; sabotage its only viable competitor, ARMS; and put Cedar out of

4    business.

5    **ANSWER:**    The RMI Parties deny the allegations in paragraph 100.

6    101.    RMI has also sought to deter railroads from switching TMS service providers by

7    restricting customers' access to historical data after leaving RailConnect and making their

8    transition to a new TMS product unnecessarily painful. On information and belief, this conduct is

9    having a chilling effect on shortline railroads contemplating leaving RailConnect for ARMS, and

10   RMI controls over 80% of the Shortline Railroad TMS Market.

11   **ANSWER:**    The RMI Parties state that certain allegations in paragraph 101 are vague

12   and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

13   Parties deny any remaining allegations in paragraph 101.

14   102.    RMI's conduct has allowed it to exercise price control, exclude competition, and

15   eliminate or substantially reduce customer choice, and will have the effect of inhibiting technical

16   innovation, increasing costs, reducing quality, and reducing output in the Shortline Railroad TMS

17   Market.

18   **ANSWER:**    The RMI Parties deny the allegations in paragraph 102.

19   103.    RMI has substantially harmed competition in the Shortline Railroad TMS Market,

20   and that reduction in competition has harmed actual and potential competing suppliers, including

21   Cedar, as well as railroad customers.

22   **ANSWER:**    The RMI Parties deny the allegations in paragraph 103.

23   104.    There are no procompetitive benefits for RMI's conduct, which serves only to force

24   customers to use a TMS product that is antiquated, inadequate, and supracompetitively-priced.

25   **ANSWER:**    The RMI Parties deny any remaining allegations in paragraph 104.

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 39
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1

2

3

4

5

## V.    COUNTERCLAIMS AND THIRD-PARTY CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

**(Monopolization in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2))**

105.    Cedar repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the preceding paragraphs.

106.    RMI provides a Shortline Railroad TMS product that is used by Class II and Class III railroads in the United States, RailConnect. Upon information and belief, RMI's Shortline Railroad TMS product, RailConnect, has an over 80% share of the Shortline Railroad TMS Market. Further, on information and belief, RMI has profitably charged prices above the competitive level in the Shortline Railroad TMS Market for a sustained amount of time. As a consequence, RMI possesses monopoly power in the Shortline Railroad TMS Market.

**ANSWER:**    The RMI Parties admit that RMI offers RailConnect to Class II and Class III railroads. The RMI Parties further state that certain allegations in paragraph 106 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 106.

107.    Along with a dominant share of the market, RMI also wields monopoly power because of the high costs and risk of business disruption a shortline railroad must incur in order to switch to an alternative TMS provider. As a result of its hold on the Shortline Railroad TMS Market, RMI has the ability to control prices, exclude competition, and reduce customer choice.

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 107 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 107.

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 40
Case No. 2:21-cv-0437-TSZ

1    108.    Cedar offers a unique competitive threat to RMI's dominance in the Shortline

2    Railroad TMS Market, and RMI has acted aggressively and anticompetitively to extinguish that

3    threat and preserve its monopoly power. Cedar offers a competitive Shortline Railroad TMS

4    product, ARMS. However, a high quality, competitive Shortline Railroad TMS product may not

5    be enough to cause a shortline railroad to move away from RMI because of the costs, complexities,

6    and risks associated with switching products. Cedar's unique position stems from its simplified

7    user-friendly technology, reduced costs, and strong reputation among shortline railroad customers.

8    As a result, Cedar offers customers a more seamless and risk-free alternative to transition away

9    from RMI. RMI thus has engaged in ongoing efforts to undermine Cedar, impair its products,

10    interfere with prospective customers, and impede its ability to compete fairly for shortline railroad

11    customers.

12    **ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief

13    as to the truth of the allegations in paragraph 108 that relate to Cedar or other individuals or entities

14    other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations

15    in paragraph 108.

16    109.    RMI has similarly interfered with the ability of other providers to compete

17    effectively on the merits of their products. For example, in 2016, RMI acquired ShipXpress, a

18    competitor that also offered TMS services to shortline railroads, and after Wabtec acquired RMI

19    in 2019, it discontinued ShipXpress's competing TMS product, Command.

20    **ANSWER:**    The RMI Parties admit that General Electric indirectly acquired ShipXpress

21    in 2016. The RMI Parties deny any remaining allegations in paragraph 109.

22    110.    Likewise, Wabtec has attempted to acquire Cedar, making multiple overtures since

23    2019. Like it did with ShipXpress, Wabtec is attempting to eliminate the competitive threat to

24    RailConnect from ARMS through acquisition.

25    **ANSWER:**    The RMI Parties deny the allegations in paragraph 110.

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 41
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

111.    Not confident that it can either compete with Cedar on the merits or eliminate it through acquisition, RMI has taken additional steps to eliminate ARMS before it gains a foothold in the market. When RMI learned that former ShipXpress customers intended to switch to Cedar's ARMS product, RMI threatened to terminate these customers' TMS services if they did not sign a new multi-year contract for RailConnect. Upon information and belief, RMI has also coerced customers into signing long-term contracts with substantial early termination fees, thereby preventing customers from switching to alternative suppliers. In addition, RMI has restricted customers' access to historical data and made their transition to a new TMS product unnecessarily painful, seeking to deter those and other customers from switching TMS providers.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 111.

112.    RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic designed to exclude competition in the relevant market.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 112.

113.    RMI has willfully maintained its monopoly power through exclusionary conduct designed to foreclose competition, to gain a competitive advantage, and to destroy competitors in the Shortline Railroad TMS Market. RMI's actions have had and continue to have the effect of injuring the competitive process in the entire relevant market and depriving shortline railroad customers of free choice. By creating barriers to customers seeking alternatives to its outdated and inefficient TMS, RMI has used its monopoly level of power to force many railroads that would prefer a more innovative TMS product to instead continue to use RMI's services. Further, RMI's anticompetitive conduct has foreclosed competitors, including but not limited to Cedar, from competing in a substantial share of the market. Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to reduce) customer choice in the Shortline Railroad TMS Market, and will have the effect of inhibiting technical innovation, increasing costs, reducing quality, and reducing output. Furthermore, RMI's conduct does not improve its product, efficiency, or ability

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 42
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX. (206) 407-2278

1   to compete on the merits of its Shortline Railroad TMS product. To the contrary, RMI is exercising

2   monopoly power to prevent Cedar from competing on the merits and foreclosing the benefits that

3   free competition would bring to the market. RMI's unlawful conduct has caused and will continue

4   to directly and proximately cause injury or loss to interstate commerce and shortline railroad

5   customers.

6       **ANSWER:**    The RMI Parties state that certain allegations in paragraph 113 are vague

7   and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

8   Parties deny any remaining allegations in paragraph 113.

9       114.    The conduct set forth above constitutes unreasonable and anticompetitive means by

10  which RMI is willfully maintaining dominant monopoly power in the Shortline Railroad TMS

11  Market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

12      **ANSWER:**    Paragraph 114 states legal conclusions to which no answer is required. To

13  the extent that an answer may be required, the RMI Parties state that certain allegations in

14  paragraph 114 are vague and ambiguous such that they cannot respond to them and the allegations

15  are thus denied. The RMI Parties deny any remaining allegations in paragraph 114.

16      115.    As a result of RMI's unlawful acts and the damage it has caused to free and fair

17  competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to suffer

18  direct and tangible injury. Cedar is entitled to injunctive and monetary relief, including treble

19  damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16. Cedar's damages are not

20  speculative and will be proven at trial.

21      **ANSWER:**    Paragraph 115 states legal conclusions to which no answer is required. To

22  the extent that an answer may be required, the RMI Parties deny that Cedar or any other individual

23  or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI

24  Parties further state that certain allegations in paragraph 115 are vague and ambiguous such that

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 43
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 115.

## SECOND CLAIM FOR RELIEF

### (Attempted Monopolization in Violation of Section 2 of the Sherman Act

### (15 U.S.C. § 2))

116.    Cedar repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the preceding paragraphs.

117.    To the extent that RMI does not already have monopoly power, in the alternative, there is a dangerous probability that RMI will achieve monopoly power in the relevant Shortline Railroad TMS Market. RMI's anticompetitive conduct threatens to substantially eliminate competition in Shortline Railroad TMS Market and further establish RailConnect as the dominant TMS product.

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 117 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 117.

118.    RMI has engaged in anticompetitive conduct with the specific intent to obtain monopoly power through exclusionary and anticompetitive means. In 2016, RMI acquired its only major competitor, ShipXpress, and subsequently terminated ShipXpress's competing TMS product, Command. When Cedar launched a competing TMS product in 2020, RMI initiated an aggressive campaign to lock-up shortline railroad customers in new multi-year contracts, thereby foreclosing them from switching to Cedar's new product. RMI purposefully timed its actions to sabotage Cedar's launch of its competing product and put Cedar out of business.

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    **ANSWER:**    The RMI Parties admit that General Electric indirectly acquired ShipXpress

2    in 2016. The RMI Parties deny any remaining allegations in paragraph 118.

3    119.    Wabtec has repeatedly attempted to acquire Cedar, including after it launched

4    ARMS, hoping to stifle a competitive threat to RMI's dominance in the Shortline Railroad TMS

5    Market.

6    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 119 are vague

7    and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

8    Parties deny any remaining allegations in paragraph 119.

9    120.    RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic designed

10   to exclude competition in the relevant market.

11   **ANSWER:**    The RMI Parties deny the allegations in paragraph 120.

12   121.    RMI's actions have had and continue to have the effect of injuring the competitive

13   process in the entire relevant market and depriving customers of free choice. By creating barriers

14   to customers seeking alternatives to its outdated and inefficient TMS, RMI seeks to force many

15   railroads that would prefer a more innovative TMS product to instead continue to use RMI's

16   services. Further, RMI's anticompetitive conduct has foreclosed competitors, including Cedar,

17   from competing in a substantial share of the market, thereby creating a dangerous probability that

18   RMI will achieve monopoly power in the relevant Shortline Railroad TMS Market.

19   **ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

20   suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties further

21   state that certain allegations in paragraph 121 are vague and ambiguous such that they cannot

22   respond to them and the allegations are thus denied. The RMI Parties deny any remaining

23   allegations in paragraph 121.

24   122.    Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to

25   reduce) customer choice in the Shortline Railroad TMS Market, and will have the effect of

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 45
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

cementing RMI's dominance in the market, inhibiting technical innovation, increasing costs, reducing quality, and reducing output.

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 122 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny the allegations in paragraph 122.

123.    RMI's unlawful conduct has caused and will continue to directly and proximately cause injury or loss to interstate commerce, competitors, and shortline railroad customers.

**ANSWER:** The RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny any remaining allegations in paragraph 123.

124.    The conduct set forth above constitutes unreasonable and anticompetitive means by which RMI has attempted to monopolize the Shortline Railroad TMS Market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

**ANSWER:**    Paragraph 124 states legal conclusions to which no answer is required. To the extent that an answer may be required, the RMI Parties state that certain allegations in paragraph 124 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 124.

125.    As a result of RMI's unlawful acts and the damage it has caused to free and fair competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to suffer direct and tangible injury. Cedar is entitled to injunctive and monetary relief, including treble damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16. Cedar's damages are not speculative and will be proven at trial.

**ANSWER:**    Paragraph 125 states legal conclusions to which no answer is required. To the extent that an answer may be required, the RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 46
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1  Parties further state that certain allegations in paragraph 125 are vague and ambiguous such that
2  they cannot respond to them and the allegations are thus denied. The RMI Parties deny any
3  remaining allegations in paragraph 125.

4  <div align="center">**THIRD CLAIM FOR RELIEF**</div>

5  <div align="center">**(Monopolization in Violation of WASH. REV. CODE § 19.86.040)**</div>

6  126.    Cedar repeats and incorporates by reference all preceding paragraphs and
7  allegations.

8  **ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the
9  preceding paragraphs.

10  127.    RMI provides a Shortline Railroad TMS product that is used by Class II and Class
11  III railroads in the United States, RailConnect. Upon information and belief, RMI's Shortline
12  Railroad TMS product, RailConnect, has an over 80% share of the Shortline Railroad TMS
13  Market. Further, on information and belief, RMI has profitably charged prices above the
14  competitive level in the Shortline Railroad TMS Market for a sustained amount of time. As a
15  consequence, RMI possesses monopoly power in the Shortline Railroad TMS Market.

16  **ANSWER:**    The RMI Parties admit that RMI offers RailConnect to Class II and Class
17  III railroads. The RMI Parties further state that certain allegations in paragraph 127 are vague and
18  ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI
19  Parties deny any remaining allegations in paragraph 127.

20  128.    Along with a dominant share of the market, RMI also wields monopoly power
21  because of the high costs and risk of business disruption a shortline railroad must incur in order to
22  switch to an alternative TMS provider. As a result of its hold on the Shortline Railroad TMS
23  Market, RMI has the ability to control prices, exclude competition, and reduce customer choice.

24

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 47
Case No. 2:21-cv-0437-TSZ

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 128 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 128.

129.    Cedar offers a unique competitive threat to RMI's dominance in the Shortline Railroad TMS Market, and RMI has acted aggressively and anticompetitively to extinguish that threat and preserve its monopoly power. Cedar offers a competitive Shortline Railroad TMS product, ARMS. However, a high quality, competitive Shortline Railroad TMS may not be enough to cause a shortline railroad to move away from RMI because of the costs, complexities, and risks associated with switching products. Cedar's unique position stems from its simplified user-friendly technology, reduced costs, and strong reputation among shortline railroad customers. As a result, Cedar offers customers a more seamless and risk-free alternative to transition away from RMI. RMI thus has engaged in ongoing efforts to undermine Cedar, impair its products, interfere with prospective customers, and impede its ability to compete fairly for shortline railroad customers.

**ANSWER:**    The RMI Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations in paragraph 129 that relate to Cedar or other individuals or entities other than the RMI Parties, and thus deny them. The RMI Parties deny any remaining allegations in paragraph 129.

130.    RMI has similarly interfered with the ability of other providers to compete effectively on the merits of their products. For example, in 2016, RMI acquired ShipXpress, a competitor that also offered TMS services to shortline railroads, and after Wabtec acquired RMI in 2019, Wabtec discontinued ShipXpress's competing TMS product, Command.

**ANSWER:**    The RMI Parties admit that General Electric indirectly acquired ShipXpress in 2016. The RMI Parties deny any remaining allegations in paragraph 130.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 48
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

131.    Likewise, Wabtec has made repeated overtures to attempt to acquire Cedar. Like it did with ShipXpress, Wabtec is attempting to eliminate the competitive threat to RailConnect from ARMS through acquisition.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 131.

132.    Not confident that it can either compete with Cedar on the merits or eliminate it through acquisition, RMI has taken additional steps to eliminate ARMS before it gains a foothold in the market. When RMI learned that former ShipXpress customers intended to switch to Cedar's ARMS product, RMI threatened to terminate these customers' TMS services if they did not sign a new multi-year contract for RailConnect. Upon information and belief, RMI has also coerced customers into signing long-term contracts with substantial early termination fees, thereby preventing customers from switching to alternative suppliers. RMI's lawsuit against Cedar is yet another anticompetitive tactic designed to exclude competition in the relevant market. In addition, RMI has restricted customers' access to historical data and made their transition to a new TMS product unnecessarily painful, seeking to deter those and other customers from switching TMS providers.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 132.

133.    RMI has willfully maintained its monopoly power through exclusionary conduct designed to foreclose competition, to gain a competitive advantage, and to destroy competitors in the United States market. RMI's actions have had and continue to have the effect of injuring the competitive process in the entire relevant market and depriving shortline railroad customers of free choice. By creating barriers to customers seeking alternatives to its outdated and inefficient TMS, RMI has used its monopoly level of power to force many railroads that would prefer a more innovative TMS product to instead continue to use RMI's services. Further, RMI's anticompetitive conduct has foreclosed competitors, including Cedar, from competing in a substantial share of the market. Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to reduce)

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 49
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  customer choice in the Shortline Railroad TMS Market, and will have the effect of inhibiting

2  technical innovation, increasing costs, reducing quality, and reducing output. Furthermore, RMI's

3  conduct does not improve its product, efficiency, or ability to compete on the merits of its Shortline

4  Railroad TMS product. To the contrary, RMI is exercising monopoly power to prevent Cedar from

5  competing on the merits and foreclosing the benefits that free competition would bring to the

6  market. RMI's unlawful conduct has caused and will continue to directly and proximately cause

7  injury or loss to interstate commerce and shortline railroad customers.

8      **ANSWER:**    The RMI Parties state that certain allegations in paragraph 133 are vague

9  and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

10  Parties deny any remaining allegations in paragraph 133.

11      134.    The conduct set forth above constitutes unreasonable and anticompetitive means by

12  which RMI is willfully maintaining dominant monopoly power in the Shortline Railroad TMS

13  Market, in violation of Washington's Consumer Protection Act (CPA), WASH. REV. CODE §

14  19.86.040.

15      **ANSWER:**    Paragraph 134 states legal conclusions to which no answer is required. To

16  the extent that an answer may be required, the RMI Parties state that certain allegations in

17  paragraph 134 are vague and ambiguous such that they cannot respond to them and the allegations

18  are thus denied. The RMI Parties deny any remaining allegations in paragraph 134.

19      135.    As a result of RMI's unlawful acts and the damage it has caused to free and fair

20  competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to suffer

21  direct and tangible injury. Cedar is entitled to injunctive and monetary relief, including treble

22  damages and attorneys' fees, and civil penalties pursuant to WASH. REV. CODE §§ 19.86.090

23  and 19.86.140. Cedar's damages are not speculative and will be proven at trial.

24      **ANSWER:**    Paragraph 135 states legal conclusions to which no answer is required. To

25  the extent that an answer may be required, the RMI Parties deny that Cedar or any other individual

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 50
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI

2  Parties state that certain allegations in paragraph 135 are vague and ambiguous such that they

3  cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining

4  allegations in paragraph 135.

5  <center>**FOURTH CLAIM FOR RELIEF**</center>

6  <center>**(Attempted Monopolization in Violation of WASH. REV. CODE § 19.86.040)**</center>

7  136.    Cedar repeats and incorporates by reference all preceding paragraphs and

8  allegations.

9  **ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the

10  preceding paragraphs.

11  137.    To the extent that RMI does not already have monopoly power, in the alternative,

12  there is a dangerous probability that RMI will achieve monopoly power in the relevant Shortline

13  Railroad TMS Market. RMI's anticompetitive conduct threatens to substantially eliminate

14  competition in Shortline Railroad TMS Market and further establish RailConnect as the dominant

15  TMS product.

16  **ANSWER:**    The RMI Parties state that certain allegations in paragraph 137 are vague

17  and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

18  Parties deny any remaining allegations in paragraph 137.

19  138.    RMI has engaged in anticompetitive conduct with the specific intent to obtain

20  monopoly power through exclusionary and anticompetitive means. In 2016, RMI acquired its only

21  major competitor, ShipXpress, and subsequently terminated ShipXpress's competing TMS

22  product, Command. When Cedar launched a competing TMS product in 2020, RMI initiated an

23  aggressive campaign to lock-up shortline railroad customers in new multi-year contracts, thereby

24  foreclosing them from switching to Cedar's new product. RMI purposefully timed its actions to

25  sabotage Cedar's launch of its competing product and put Cedar out of business.

26

1    **ANSWER:**    The RMI Parties admit that General Electric indirectly acquired ShipXpress

2    in 2016. The RMI Parties deny any remaining allegations in paragraph 138.

3    139.    Wabtec has repeatedly attempted to acquire Cedar, including after it launched

4    ARMS, hoping to stifle a competitive threat to RMI's dominance in the Shortline Railroad TMS

5    Market.

6    **ANSWER:**    The RMI Parties state that certain allegations in paragraph 139 are vague

7    and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

8    Parties deny any remaining allegations in paragraph 139.

9    140.    RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic designed

10    to exclude competition in the relevant market.

11    **ANSWER:**    The RMI Parties deny the allegations in paragraph 140.

12    141.    RMI's actions have had and continue to have the effect of injuring the competitive

13    process in the entire relevant market and depriving customers of free choice. By creating barriers

14    to customers seeking alternatives to its outdated and inefficient TMS, RMI seeks to force many

15    railroads that would prefer a more innovative TMS product to instead continue to use RMI's

16    services. Further, RMI's anticompetitive conduct has foreclosed competitors, including Cedar,

17    from competing in a substantial share of the market, thereby creating a dangerous probability that

18    RMI will achieve monopoly power in the relevant Shortline Railroad TMS Market.

19    **ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

20    suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties further

21    state that certain allegations in paragraph 141 are vague and ambiguous such that they cannot

22    respond to them and the allegations are thus denied. The RMI Parties deny any remaining

23    allegations in paragraph 141.

24    142.    Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to

25    reduce) customer choice in the Shortline Railroad TMS Market, and will have the effect of

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 52
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

cementing RMI's dominance in the market, inhibiting technical innovation, increasing costs, reducing quality, and reducing output.

**ANSWER:** The RMI Parties state that certain allegations in paragraph 142 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 142.

143. RMI's unlawful conduct has caused and will continue to directly and proximately cause injury or loss to interstate commerce, competitors and shortline railroad customers.

**ANSWER:** The RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny any remaining allegations in paragraph 143.

144. The conduct set forth above constitutes unreasonable and anticompetitive means by which RMI has attempted to monopolize the Shortline Railroad TMS Market, in violation of Washington's Consumer Protection Act (CPA), WASH. REV. CODE § 19.86.040.

**ANSWER:** Paragraph 144 states legal conclusions to which no answer is required. To the extent that an answer may be required, the RMI Parties state that certain allegations in paragraph 144 are vague and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 144.

145. As a result of RMI's unlawful acts and the damage it has caused to free and fair competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to suffer direct and tangible injury. Cedar is entitled to injunctive and monetary relief, including treble damages and attorneys' fees, and civil penalties pursuant to WASH. REV. CODE §§ 19.86.090 and 19.86.140. Cedar's damages are not speculative and will be proven at trial.

**ANSWER:** Paragraph 145 states legal conclusions to which no answer is required. To the extent that an answer may be required, the RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 53
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1    Parties further state that certain allegations in paragraph 145 are vague and ambiguous such that

2    they cannot respond to them and the allegations are thus denied. The RMI Parties deny any

3    remaining allegations in paragraph 145.

4                                    **FIFTH CLAIM FOR RELIEF**

5          **(Refusal to Deal in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2))**

6          146.    Cedar repeats and incorporates by reference all preceding paragraphs and

7    allegations.

8          **ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the

9    preceding paragraphs.

10         147.    RMI is the dominant player in the Shortline Railroad TMS Market, with over 80%

11   market share. Along with a dominant share of the market, RMI also wields monopoly power

12   because of the high costs and risk of business disruption a shortline railroad must incur in order to

13   switch to an alternative TMS provider. As a result of its hold on the Shortline Railroad TMS

14   Market, RMI has the ability to control prices and exclude competition. Accordingly, RMI

15   possesses monopoly power in the Shortline Railroad TMS Market.

16         **ANSWER:**    The RMI Parties state that certain allegations in paragraph 147 are vague

17   and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

18   Parties deny any remaining allegations in paragraph 147.

19         148.    RMI engaged in a voluntary course of dealing with Cedar from 2018 to 2020. In

20   2018, Cedar told RMI about Optiswitch and how it could complement RailConnect and benefit

21   RMI's RailConnect customers by analyzing the inventory data that railroads stored in their TMSs.

22   RMI expressed interest in a strategic business alignment, and from May 2018 to November 2020,

23   RMI provided TMS inventory data via snapshot feeds to Cedar for 15 railroads to enable them to

24   use Optiswitch. However, RMI rejected Cedar's and customers' repeated attempts to reach a

25   commercial agreement to pay for real-time access to the data exported from RailConnect,

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 54
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  conditioning such an arrangement on Wabtec acquiring Cedar. In November 2020, RMI suddenly

2  and without warning reset all the FTP login credentials for those railroads and denied Cedar access

3  to the snapshot data feeds. RMI abruptly terminated Cedar's data access only after Cedar launched

4  its own competing shortline railroad TMS product, ARMS.

5      **ANSWER:**    The RMI Parties admit that RMI reset login credentials for railroads after a

6  major security incident that Cedar caused and that Cedar told RMI about Optiswitch. The RMI

7  Parties deny any remaining allegations in paragraph 148.

8      149.    RMI has forsaken short-term profits by refusing to enter into a data-sharing

9  arrangement with Cedar under which Cedar or customers would pay for access to data exported

10  from RailConnect, in an attempt to harm Cedar and prevent Cedar from successfully launching

11  Optiswitch and gaining a toehold with shortline railroad customers.

12      **ANSWER:**    The RMI Parties deny the allegations in paragraph 149.

13      150.    RMI unilaterally terminated a voluntary and potentially profitable course of dealing

14  with Cedar, acting against its economic interest. RMI has no legitimate business rationale for

15  refusing to deal with Cedar.

16      **ANSWER:**    The RMI Parties deny the allegations in paragraph 150.

17      151.    RMI's actions have had and continue to have the effect of injuring the competitive

18  process and depriving shortline railroad customers of free choice, inhibiting technological

19  innovation, and reducing quality and output. Furthermore, RMI's conduct does not improve its

20  product, efficiency, or ability to compete on the merits. RMI's unlawful conduct has caused and

21  will continue to directly and proximately cause injury or loss to interstate commerce and shortline

22  railroad customers.

23      **ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

24  suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny

25  any remaining allegations in paragraph 151.

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 55
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

152.    RMI's refusal to deal with Cedar violates the Sherman Act, 15 U.S.C. § 2.

**ANSWER:**    Paragraph 152 states legal conclusions to which no answer is required. To the extent that an answer may be required, the RMI Parties deny the allegations in paragraph 152.

153.    As a result of RMI's unlawful acts, Cedar has suffered and will continue to suffer direct and tangible injury. Cedar is entitled to injunctive and monetary relief, including treble damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16. Cedar's damages are not speculative and will be proven at trial.

**ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny any remaining allegations in paragraph 153.

## SIXTH CLAIM FOR RELIEF

### (Tortious Interference with Business Expectancy)

154.    Cedar repeats and incorporates by reference all preceding paragraphs and allegations.

**ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the preceding paragraphs.

155.    RMI has intentionally interfered with Cedar's business relationships and expectancies with respect to its Optiswitch and ARMS products.

**ANSWER:**    The RMI Parties deny the allegations in paragraph 155.

156.    Cedar had business expectancies with at least 15 railroads that were enthusiastic about using Cedar's rail yard switching optimization program, Optiswitch. In 2018, Cedar told RMI about Optiswitch and how it could benefit shortline railroad customers by analyzing the inventory data that railroads store in their TMSs and improving their efficiency. RMI provided inventory data to Cedar for 15 RailConnect customers, all of which began using Optiswitch, but Cedar could not execute contracts with those railroads because RMI refused to enter into a data-

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 56
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1  sharing arrangement with Cedar, and Cedar's continued access to the railroads' data was therefore

2  unreliable. Initially, RMI expressed interest in a strategic business alignment, but it strung along

3  Cedar and its railroad customers for nearly two years until it became clear that those customers

4  would never be able to use Optiswitch with RailConnect permanently.

5      **ANSWER:**    The RMI Parties admit that Cedar told RMI about Optiswitch. The RMI

6  Parties lack sufficient knowledge or information to form a belief as to the truth of the allegations

7  in paragraph 156 that relate to individuals or entities other than the RMI Parties. The RMI Parties

8  deny any remaining allegations in paragraph 156.

9      157.    RMI intentionally prevented Cedar from realizing these business expectancies even

10  though Optiswitch was not in direct competition with RailConnect. In fact, Optiswitch depended

11  on snapshot data feeds exported from RailConnect to operate and would have provided a huge

12  increase in value for railroads that used RailConnect in conjunction with Optiswitch.

13      **ANSWER:**    The RMI Parties state that certain allegations in paragraph 157 are vague

14  and ambiguous such that they cannot respond to them and the allegations are thus denied. RMI

15  Parties deny any remaining allegations in paragraph 157.

16      158.    On November 4, 2020, RMI unilaterally revoked Cedar's authorization to use TMS

17  inventory data via snapshot data feeds that they had previously granted for the 15 railroads trying

18  Optiswitch by resetting the FTP login credentials for those railroads without notice. This

19  revocation cut off those railroads' ability to use Optiswitch. RMI's conduct, therefore, caused these

20  15 railroads to end their business relationships with Cedar.

21      **ANSWER:**    The RMI Parties admit that RMI reset login credentials for railroads after a

22  major security incident that Cedar caused. The RMI Parties further state they provided notice to

23  affected customers. The RMI Parties deny any remaining allegations in paragraph 158.

24      159.    RMI's conduct prevented Cedar from continuing to market Optiswitch because

25  RMI already controlled over 80% of the Shortline Railroad TMS Market.

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 57
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 159 are vague

2

and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

3

Parties deny any remaining allegations in paragraph 159.

4

160.    RMI has also intentionally interfered with Cedar's ability to market and enter into

5

contracts for its TMS product, ARMS. When RMI learned that some former ShipXpress

6

customers, such as TNW, were going to let their RMI contracts expire and then switch to ARMS,

7

RMI sent notice of termination letters to those customers, threatening them with termination of

8

services unless they signed a new multi-year contract with RMI. RMI employed this tactic as soon

9

as it learned that Cedar had won a bid to create a new TMS for TRRA and would create competition

10

in the Shortline Railroad TMS Market.

11

**ANSWER:**    The RMI Parties state that certain allegations in paragraph 160 are vague

12

and ambiguous such that they cannot respond to them and the allegations are thus denied. The RMI

13

Parties deny any remaining allegations in paragraph 160.

14

161.    RMI's conduct, therefore, prevented Cedar from contracting with railroads that

15

seek innovative TMS technology and robust support. Thus, RMI intentionally interfered for an

16

improper purpose—to harm Cedar and strengthen its monopoly—and caused Cedar to lose

17

potential business opportunities with the railroads, such as TNW, who had expressed interest in

18

switching to ARMS.

19

**ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

20

suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny

21

any remaining allegations in paragraph 161.

22

162.    RMI's intentional interference with Cedar's business expectancies has harmed

23

Cedar by preventing it from realizing a return on its substantial investment in the development of

24

Optiswitch and ARMS. Cedar's damages are not speculative and will be proven at trial.

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 58
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1    **ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

2    suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny

3    any remaining allegations in paragraph 162.

4    <div style="text-align:center">**SEVENTH CLAIM FOR RELIEF**</div>

5    <div style="text-align:center">**(Unfair Methods of Competition in Violation of WASH. REV. CODE § 19.86.020)**</div>

6    163.    Cedar repeats and incorporates by reference all preceding paragraphs and

7    allegations.

8    **ANSWER:**    The RMI Parties incorporate, as if fully set forth herein, their answers to the

9    preceding paragraphs.

10    164.    RMI engaged in unfair methods of competition and deceptive and unfair practices

11    and acts that were injurious to the public interest and did not constitute legitimate business

12    practices.

13    **ANSWER:**    The RMI Parties deny that Cedar or any other individual or entity have

14    suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny

15    any remaining allegations in paragraph 164.

16    165.    RMI unfairly interfered with Cedar's existing and potential business relationships

17    with existing and potential Optiswitch customers. After Cedar developed Optiswitch, RMI

18    expressed interest in a strategic business alignment with Cedar and provided TMS inventory data

19    for 15 railroads using RailConnect. But RMI refused to link Optiswitch and RailConnect through

20    an API or other real-time data-sharing arrangement unless Wabtec acquired Cedar. This prevented

21    Cedar from entering into contractual relationships with those 15 railroads. In November 2020,

22    RMI revoked Cedar's authorization to use TMS inventory data without notice by unilaterally

23    resetting the FTP login credentials for those railroads and thus preventing those railroads from

24    using Optiswitch. RMI's actions were deceptive and unfair, and not justified by any legitimate

25    business purpose.

26

**ANSWER:**     The RMI Parties admit that RMI reset login credentials for railroads after a major security incident that Cedar caused. The RMI Parties further state they provided notice to affected customers. The RMI Parties deny any remaining allegations in paragraph 165.

166.     RMI's deceptive and unfair practices prevented railroads from benefiting from Optiswitch's groundbreaking rail yard optimization tool, causing injury to railroads and the public.

**ANSWER:**     The RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny any remaining allegations in paragraph 166.

167.     Cedar has been injured directly by RMI's deceptive and unfair practices with respect to Optiswitch, including the loss of existing business relationships with 15 railroads and potential business relationships with countless other railroads.

**ANSWER:**     The RMI Parties deny that Cedar or any other individual or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI Parties deny any remaining allegations in paragraph 167.

168.     In addition, RMI has acquired and willfully maintained a monopoly in the Shortline Railroad TMS Market through unfair methods of competition. For example, RMI acquired its only existing competitor in the market, ShipXpress, and retired its competing product. Wabtec has similarly attempted to acquire Cedar in order to thwart its competitive threat in the Shortline Railroad TMS Market. RMI also threatened to terminate its existing customers' TMS services unless they agreed to sign multi-year contracts with RMI, effectively precluding them from switching to an alternative TMS supplier like Cedar. RMI has also coerced customers into signing long-term contracts with substantial early termination fees, which prevents customers from switching to alternative suppliers, and has restricted customers' access to their historical data, which deters customers from switching TMS providers. RMI's lawsuit against Cedar is yet another anticompetitive tactic designed to exclude competition in the relevant market. As alleged above,

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 60
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL. (206) 407-2200  FAX, (206) 407-2278

1  Cedar took substantial and reasonable steps to enter the Shortline Railroad TMS Market and has

2  been injured directly by RMI's unfair methods of competition.

3    **ANSWER:**    The RMI Parties admit that General Electric indirectly acquired

4  ShipXpress. The RMI Parties lack sufficient knowledge or information to form a belief as to the

5  truth of the allegations in paragraph 168 that relate to individuals or entities other than the RMI

6  Parties. The RMI Parties deny that Cedar or any other individual or entity have suffered any injury

7  as a result of any action or conduct of the RMI Parties. The RMI Parties further state that certain

8  allegations in paragraph 168 are vague and ambiguous such that they cannot respond to them and

9  the allegations are thus denied. The RMI Parties deny any remaining allegations in paragraph 168.

10    169.    Cedar is entitled to injunctive and monetary relief, including treble damages and

11  attorneys' fees, and civil penalties pursuant to WASH. REV. CODE §§ 19.86.090 and 19.86.140.

12  Cedar's damages are not speculative and will be proven at trial.

13    **ANSWER:**    Paragraph 169 states legal conclusions to which no answer is required. To

14  the extent that an answer may be required, the RMI Parties deny that Cedar or any other individual

15  or entity have suffered any injury as a result of any action or conduct of the RMI Parties. The RMI

16  Parties deny any remaining allegations in paragraph 169.

17    **VI.    PRAYER FOR RELIEF**

18    WHEREFORE, Counterclaim Plaintiff Cedar respectfully requests that judgment be

19  entered in its favor on each of the foregoing claims for relief, and that this Court enter an Order:

20    A.    Enjoining Counterclaim and Third-Party Defendants RMI, GE, and Wabtec from
21        engaging in further anticompetitive, tortious and unfair conduct;

22    B.    Awarding Cedar damages in an amount to be proven at trial, trebled pursuant to 15
        U.S.C. § 15(a) and WASH. REV. CODE § 19.86.090;

23    C.    Awarding Cedar its attorneys' fees, pursuant to at least 15 U.S.C. §§ 15(a) and
24        1117(a), and WASH. REV. CODE § 19.186.150;

25    D.    Awarding Cedar its costs;

26    E.    Awarding Cedar pre- and post-judgment interest, to the extent allowable; and

**F.**    Awarding such other and further relief as equity and justice may require.

**ANSWER:** To the extent that an answer may be required to the Prayer for Relief at the end, the RMI Parties deny each and every allegation contained therein and deny that Cedar is entitled to the relief it seeks.

\* \* \* \* \* \*

## DENIAL

The RMI Parties deny each and every allegation not specifically admitted above.

## AFFIRMATIVE DEFENSES

Without assuming any burden of proof that they would not otherwise bear, the RMI Parties also assert the following affirmative and additional defenses:

### First Defense

The Counterclaim fails to state a claim upon which relief may be granted.

### Second Defense

As detailed in RMI's Amended Complaint, the actions of Cedar, Mario Ponticello, Daril Vilhena, and the John Doe defendants (collectively, "Defendants") are illegal independent of any conduct or action by the RMI Parties. As such, all of Cedar's claims are barred as a matter of law. Restraint of illegal trade is not redressable under the antitrust laws, and because Cedar's claims are based on Cedar's illegal business activities, Cedar lacks antitrust injury.

### Third Defense

Cedar's claims are barred, in whole or in part, by any applicable statute of limitations. Cedar filed this Counterclaim on November 24, 2021, and has not pled any event that would toll any applicable limitations period. As such, the statutory time limitation applicable to some or all of each of Cedar's claims has passed and they are thus time-barred.

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 62
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1

**Fourth Defense**

2      Cedar's claims are barred, in whole or in part, based on the doctrines of estoppel, laches,

3  and waiver as Cedar's claims are based, in part, on actions and events spanning decades. Cedar

4  has pled no facts to explain or justify why this Counterclaim was filed when it was filed. To the

5  extent that Cedar could have brought essentially the same claims years earlier, Cedar is barred

6  from pursuing all or part of their claims by the doctrines of estoppel and laches.

7

**Fifth Defense**

8      Cedar's claims are barred, in whole or in part, because Cedar does not have standing to

9  raise those claims.

10

**Sixth Defense**

11      Cedar's claims are barred, in whole or in part, because the RMI Parties' actions were

12  authorized or permitted under state and/or federal law.

13

**Seventh Defense**

14      If and to the extent Cedar has been damaged, which the RMI Parties deny, Cedar, by the

15  exercise of reasonable diligence, could have mitigated its damages but did not, and Cedar is

16  therefore barred from recovery. Alternatively, any damages sustained by Cedar, which the RMI

17  Parties deny, must be reduced by the amount that such damages would have been reduced had

18  Cedar exercised reasonable diligence in mitigating its damages.

19

**Eight Defense**

20      Cedar's claims are barred, in whole or in part, because to the extent Cedar suffered any

21  injury or incurred any damages as alleged in the Counterclaim, which the RMI Parties deny, the

22  RMI Parties' alleged conduct was not the actual or proximate cause of any injury or damage to

23  Cedar.

24

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 63
Case No. 2:21-cv-0437-TSZ

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1

**Ninth Defense**

2     Cedar's claims are barred, in whole or in part, because to the extent Cedar suffered any

3   injury or incurred any damages as alleged in the Counterclaim, which the RMI Parties deny, any

4   such injury or damage was caused and brought about by the acts, conduct or omissions of

5   individuals or entities other than the RMI Parties and, as such, any recovery herein should be

6   precluded or diminished in proportion to the amount of fault attributable to such other individuals

7   or entities.

8

**Tenth Defense**

9     Cedar's claims are barred, in whole or in part, because to the extent Cedar suffered any

10  injury or incurred any damages as alleged in the Counterclaim, which the RMI Parties deny, any

11  such injury or damage was caused and brought about by intervening or superseding events, factors,

12  occurrences, conditions or acts of others, including forces in the marketplace, and not by the

13  alleged wrongful conduct on the part of the RMI Parties.

14

**Eleventh Defense**

15    Cedar's claims are barred, in whole or in part, because any recovery would result in unjust

16  enrichment to Cedar.

17

**Twelfth Defense**

18    Cedar's claims for equitable relief are barred because Cedar has an adequate remedy at law.

19

**Thirteenth Defense**

20    The Counterclaim is an abuse of process, being pursued for an improper purpose.

21

**Fourteenth Defense**

22    Cedar's claims are barred, in whole or in part, due to insufficient service of process. *See*

23  Dkt. 44.

24

25

26

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1

**Reservation of Rights**

2 The RMI Parties reserve the right to assert additional affirmative defenses as they become

3 available.

4 ******

5 The RMI Parties have insufficient knowledge or information upon which to form a basis

6 as to whether they may have additional, as yet unstated, separate defenses available. The RMI

7 Parties reserve the right to amend this Answer to add, supplement or modify defenses based upon

8 legal theories that may be or will be divulged through clarification, through discovery, or through

9 further factual or legal analysis of Cedar's allegations, contentions and positions in this litigation.

10 **JURY DEMAND**

11 Pursuant to Federal Rules of Civil Procedure, Rule 38(b), the RMI Parties hereby demand

12 trial by jury on all issues so triable.

13 **PRAYER FOR RELIEF**

14 WHEREFORE, the RMI Parties request that Cedar's Counterclaim and Third-Party

15 Counterclaim be dismissed with prejudice, that the Court find that Cedar is not entitled to any

16 judgment or relief, that the Court enter judgment in favor of the RMI Parties, and that the Court

17 award the RMI Parties their attorneys' fees, costs and expenses, pre-judgment interest, and such

18 other and further relief as the Court deems just and proper.

19

20

21

22

23

24

25

26

LAW OFFICES
**CALFO EAKES LLP**
1301 SECOND AVENUE, SUITE 2800
SEATTLE, WASHINGTON 98101
TEL, (206) 407-2200  FAX, (206) 407-2278

1    Dated this 24th day of May 2022

2                                                    Respectfully submitted,

3                                                    By:  s/ *Henry C. Phillips*

4                                                    Henry C. Phillips (WSBA No. 55152)
                                                     CALFO EAKES LLP
5                                                    1301 2nd Avenue, Suite 2800
                                                     Seattle, Washington 98101-3808
6                                                    Tel: (206) 407 2200
                                                     HenryP@calfoeakes.com
7
                                                     Charles E. Harris, II (*admitted pro hac vice*)
8                                                    Richard M. Assmus (*admitted pro hac vice*)
                                                     Emily A. Nash (*admitted pro hac vice*)
9                                                    MAYER BROWN LLP
                                                     71 South Wacker Drive
10                                                   Chicago, Illinois 60606-4637
                                                     Tel: (312) 782 0600
11                                                   CHarris@mayerbrown.com
                                                     RAssmus@mayerrown.com
12                                                   ENash@mayerbrown.com

13                                                   Kristin W. Silverman (WSBA No. 49420)
                                                     MAYER BROWN LLP
14                                                   Two Palo Alto Square
                                                     3000 El Camino Real
15                                                   Palo Alto, California 94306-2112
                                                     Tel: (650) 331 2000
16                                                   KSilverman@mayerbrown.com

17                                                   *Attorneys for Plaintiff Railcar Management,*
                                                     *LLC and Counterclaim Defendant Wabtec*
18                                                   *Corporation*

19

20

21

22

23

24

25

26

ANSWER AND AFFIRMATIVE DEFENSES TO COUNTERCLAIM
AND THIRD-PARTY COMPLAINT - 66
Case No. 2:21-cv-0437-TSZ