Hon. Thomas S. Zilly

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAILCAR MANAGEMENT, LLC,

                    Plaintiff,

    v.

CEDAR AI, INC., MARIO PONTICELLO, DARIL VILHENA, and YI CHEN,

                    Defendants.

CEDAR AI, INC.,

                    Counterclaim Plaintiff,

    v.

RAILCAR MANAGEMENT, LLC, GE TRANSPORTATION, WABTEC CORPORATION,

                    Counterclaim and
                    Third-Party Defendants.

No. 2:21-cv-00437-TSZ

SECOND AMENDED COMPLAINT

JURY DEMAND

Plaintiff Railcar Management, LLC ("RMI") alleges and complains against Defendants Cedar AI, Inc. ("Cedar"), Mario Ponticello, Daril Vilhena, and Yi Chen (collectively, "individual Defendants" and together with Cedar, "Defendants"), on knowledge as to itself and its actions, and information and belief as to all other matters, as follows:

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**NATURE OF THE ACTION**

1.      The preliminary information RMI has obtained in this lawsuit confirms that Cedar and the individual Defendants have been engaging in unlawful, unfair, and unscrupulous business practices attempting to poach RMI's RailConnect Transportation Management System ("TMS"), in violation of both federal and state laws.

2.      RMI's TMS is a core operational system for railroads that helps them maximize performance by automating day-to-day operations. Rail operators use RMI's TMS to manage their rail and intermodal operations, signal and communication assets, railcar repair billing and inventory, and multi-modal visibility, planning, and execution for industrial shippers and logistics service providers.

3.      Cedar also offers rail companies a transportation management system. Cedar claims that its system is the first to leverage artificial intelligence to present users with suggestions for handling traffic and customer billing. Since its inception, Cedar has hired multiple former employees of RMI's former and current parent company, General Electric Company and Wabtec Corporation ("Wabtec"), respectively.

4.      In March 2020, Wabtec sent a letter to Cedar's co-chief executive officers ("co-CEOs"), Ponticello and Vilhena, stating that it "has strong concerns about the potential misuse of Wabtec confidential and proprietary data." Wabtec's letter specifically identified an "unauthorized data feed" (i.e., a snapshot data feed) utilized by Cedar that Wabtec discovered and disabled, and noted that the "exfiltrated data was and remains Wabtec confidential and proprietary data." Wabtec further demanded that any "Wabtec confidential and proprietary data … whether in physical or electronic form, be immediately destroyed." Ponticello responded to Wabtec's letter in April 2020. He affirmed that "we do not have access to any of your confidential and proprietary data."

5.      RMI initiated this lawsuit after it detected highly unusual and significantly harmful activity on its TMS servers—i.e., more frequent logins to the platform and an

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 2

abnormal spike in the frequency and volume of snapshot data downloaded from certain customers' accounts. Its investigation of that activity identified Amazon Web Services ("AWS")-owned IP addresses for the devices connected to the suspicious logins and downloads. With the Court's permission, RMI subpoenaed AWS to identify the owners of these IP addresses.

6.      Information produced by AWS in response to the subpoena, attached as **Exhibit 1**, revealed that Cedar owns the IP addresses in question, that the account for those IP addresses is registered to Vilhena, and that Ponticello is the billing contact for the account.

7.      The information from AWS conclusively proves that Cedar both accessed RMI's computer systems without RMI's authorization and downloaded data many months before RMI detected the activity. Cedar has since confirmed that it used an AWS application to regularly access RMI's snapshot data feeds, download data, and upload them to an AWS cloud storage application—and that Cedar did not stop even after receiving Wabtec's March 2020 letter.

8.      Cedar has also confirmed that its chief technology officer, Yi Chen, changed the pull frequency for the snapshot data feeds on November 1, 2020 (more than six months after receiving Wabtec's March 2020 letter). On information and belief, Cedar, including its consultant David McCrory, used their unauthorized access to RMI's systems, and the data it retrieved from them to gain a competitive advantage when performing demonstrations for RMI's customers. In other words, Cedar used illegal activity and the proprietary data that it stole from RMI to then compete with RMI. On information and belief, the individual Defendants were personally involved in, directed, or approved of this unlawful activity.

9.      Cedar and the individual Defendants' actions violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*. and the Stored Communications Act, 18 U.S.C.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 3

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

§ 2701 *et seq*., 18 U.S.C. § 1836 *et seq*., both of which, in addition to providing the civil causes of action stated below, impose criminal liability on intruders like Cedar. RMI also brings claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., and the laws of Washington for misappropriation of trade secrets, unfair competition, tortious interference, trespass, and negligence.

10.    RMI seeks compensatory damages for the multimillion-dollar losses it has sustained due to Defendants' unlawful and improper conduct; punitive damages; preliminary and permanent relief barring Cedar from, among other things, accessing TMS and soliciting RMI's customers using stolen data; reasonable attorneys' fees and costs; and pre-and post-judgment interest.

## JURISDICTION AND VENUE

11.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises from Defendants' violation of the federal statutes identified in this Second Amended Complaint.

12.    This action also arises under the laws of Washington. This Court has jurisdiction over those claims under 28 U.S.C. § 1367 because Defendants' conduct giving rise to the state law claims are the same as or related to the activities giving rise to the claims arising under federal law such that they form part of the same case or controversy.

13.    Venue for RMI's claims is proper in this district under 28 U.S.C. § 1391(b) because Cedar's principal place of business is in Seattle, Washington, located in this district. The individual Defendants also reside or work for any employer located in Seattle, Washington. In addition, events giving rise to this action occurred in Bothell, Washington, located within this district. For example, one of the Defendants logged into TMS from Bothell, Washington, and improperly downloaded RMI's data.

## PARTIES

14.    RMI is a subsidiary of Wabtec, a leading global provider of equipment,

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 4

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

systems, digital solutions, and other freight and transit rail services. RMI delivers software and related solutions to optimize its customers' railway operating and maintenance activities. RMI is and was at all times relevant to this action a limited liability company incorporated under the laws of Georgia with its principal place of business in Atlanta, Georgia.

15.     Cedar, which offers service and technology to the rail industry, is incorporated under the laws of Delaware and has a principal place of business in Seattle, Washington.

16.     Mario Ponticello is Cedar's co-CEO and chief financial officer. Ponticello resides in Seattle, Washington.

17.     Daril Vilhena is Cedar's co-CEO. Vilhena resides in Seattle, Washington.

18.     Yi Chen is Cedar's CTO. Chen, on information and belief, resides in or around Seattle, Washington.[1]

## BACKGROUND

### RMI's TMS

19.     As a core operating and communications system, TMS automates and tracks the entry of rail car movements and switching operations for RMI's rail customers and provides them high visibility over all rail assets.

20.     TMS contains data relating to, among other things, customers' rail cars, including content and location, routing and railroad information, and the origins and destination of rail cars, and proprietary data derived from the raw data RMI collects (collectively, the "Data"). The Data is stored in on-premises systems located near Atlanta, Georgia, as well as on back-up on-premises systems located in Ohio.

21.     RMI's rail customers with properly authorized credentials access TMS via

---

[1] RMI has sought via discovery the identities of any other defendants. To date, Cedar has provided only limited information in response to RMI's requests. RMI reserves the right to seek leave to join additional parties based on information learned in discovery.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 5

a website interface hosted by AWS, a well-known provider of on-demand cloud computing platforms and application programming interfaces to individuals, companies, and governments. RMI customers with properly authorized credentials may also access folders that contain certain Data extracted from TMS via file transfer protocol ("FTP") at ftp.railconnect.com (the "RailConnect FTP Site"). Some of the extracted Data is called snapshot data.

22.    RMI assigns each of its rail customers unique login credentials to access TMS and the RailConnect FTP Site, and only RMI can authorize someone to use the credentials to enter them. Indeed, RMI and its customers expressly agree in written contracts that customers will keep their login credentials strictly confidential.

23.    Furthermore, TMS conspicuously and explicitly warns those logging into the system that they must have RMI's permission to use it:

> You have accessed the RMI computer system. Access or use of this system is strictly limited to persons having express authorization from RMI. Unauthorized access or use of this system is unlawful and strictly prohibited.

*The Suspicious and Harmful Activity*

24.    While RMI's rail customers routinely access and/or download Data on the RailConnect FTP Site, on or about November 1, 2020, RMI identified an unusual spike in the frequency and volume of downloads. The incident caused significant and costly damage to RMI, including loss of access to its TMS servers, that required RMI to engage in significant and costly remediation efforts.

25.    After conducting a preliminary investigation, RMI observed that the unusual activity was triggered by devices oddly requesting simultaneous file downloads from multiple customer accounts, each with unique customer login credentials.

26.    Several of RMI's rail customers said they had not logged onto the RailConnect FTP Site and downloaded Data. Accordingly, RMI launched an internal investigation to verify that the downloads it observed were indeed illegitimate and to

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

determine whether an unauthorized person accessed TMS.

*Forensic Investigation*

27.     On or about November 6, 2020, RMI retained an outside vendor to conduct a forensic investigation to further assess the suspicious activity on TMS. As part of the investigation, the vendor analyzed RMI's logs and forensic images and deployed endpoint software to capture IP addresses and other pertinent information.

28.     RMI discovered through this investigation that there were logins to the RailConnect FTP Site from more than 200 IP addresses owned by AWS from November 1, 2020, to November 3, 2020.

29.     RMI also discovered that another series of unexplained logins to the RailConnect FTP Site and Data downloads occurred from other AWS-owned IP addresses, and at least 23 IP addresses owned by conventional Internet service providers, well before it detected the unusual activity in November 2020. IP addresses that logged into the RailConnect FTP Site from locations in Washington were responsible for much of the suspicious activity.

*AWS Subpoena and Confidential Information on Cedar's Website*

30.     RMI moved for expedited discovery at the same time it filed the original complaint. After the Court granted that motion, RMI served AWS with a subpoena requesting information to identify the individuals responsible for the suspicious logins and downloads. In particular, RMI asked that AWS identify the persons associated with the 20 unique IP addresses that were most active during the peak of the suspicious activity and Data downloads.

31.     AWS responded to the subpoena on June 10, 2021, providing the account registration information associated with the 20 IP addresses RMI identified.

32.     AWS's response confirms, as RMI had suspected, that Cedar owns the IP addresses that accessed the RailConnect FTP Site and downloaded Data during the

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 7

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

suspicious activity RMI detected. The response also indicated that the related account is registered to Vilhena, and Ponticello is listed as the billing contact for the account. *See* **Ex. 1**.

33.     While waiting for information from AWS, RMI obtained proof that Cedar also accessed TMS without permission. Cedar posted a graphic to its website that depicted a TMS database. As shown in the far-right column below, the "User" Cedar identified on the picture is "RMIJET," which is an authentic and unique TMS user identification for one of RMI's current employees. The only way Cedar would have this confidential information is if it accessed TMS.



34.     As noted above, on March 31, 2020, Wabtec sent a letter to Ponticello and Vilhena, putting them personally, along with Cedar, on notice of RMI's "strong concerns about the potential misuse of Wabtec confidential and proprietary data." Wabtec's letter specifically identified an "unauthorized data feed" utilized by Cedar that Wabtec had discovered and disabled, and noted that the "exfiltrated data was and remains Wabtec confidential and proprietary data." Thus, Cedar was aware that Wabtec considered Data

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

downloaded via the RailConnect FTP Site "confidential and proprietary." The March 31, 2020 letter is attached as **Exhibit 2**.

35.    Wabtec further demanded in the letter that any "Wabtec confidential and proprietary data … whether in physical or electronic form, be immediately destroyed." Ponticello denied any wrongdoing by Cedar. In an April 14, 2020, letter, attached as **Exhibit 3**, he stated that, "to our knowledge," Cedar did not have "access to any of [RMI's] confidential and proprietary data."

36.    Despite Ponticello's claim, Defendants had been accessing the RailConnect FTP Site to download Data at or about the time Ponticello told RMI that Cedar did not have access to RMI's proprietary data. Ponticello's statement is contradicted by the information AWS provided showing that it assigned Cedar the IP addresses for the devices used to access TMS and download Data during the unusual activity RMI detected. *See* **Ex. 1**.

37.    Cedar has since confirmed that it used an AWS application to regularly access and download snapshot data feeds and upload the files to an AWS cloud storage application. Starting in at least 2018 and 2019, Cedar set up a program to access and upload Data from the RailConnect FTP Site for at least 15 railroads. Even after receiving Wabtec's March 2020 letter, *see* **Ex. 2,** Cedar did not stop logging into the RailConnect FTP Site and downloading Data. Accordingly, until November 2020, Cedar continued to access and upload Data from the RailConnect FTP Site.

38.    Cedar has since confirmed that Chen changed the "pull frequency" on the program Cedar set up to download Data—*i.e.*, Chen made a change that resulted in Cedar accessing and updating Data on a much more frequent basis. Chen made this change on November 1, 2020—more than six months after receiving Wabtec's March 2020 letter.

39.    Chen's actions in increasing the pull frequency triggered the highly unusual and significantly harmful spike in activity in November 2020.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 9

40.     As recently as June 2022 (more than a year after this litigation began), representatives of Cedar have continued to access of RMI's systems without authorization or in excess of any authorized access. For example, the User ID PTRADDM, assigned to McCrory (who formerly worked for a customer of RMI, Port Terminal Railroad Association, and currently acts as a consultant for Cedar), accessed TMS as recently as June 9, 2022. Likewise, the User ID "Gray, Gray, Gray," which, upon information and belief, is used by Grace Cobbinah (who formerly worked at Wabtec and now works at Cedar), accessed TMS as recently as March 24, 2022.

*Defendants' Improper Use of RMI's Data to Compete with RMI*

41.     Defendants used the Data they stole from RMI through unauthorized access to TMS and/or the RailConnect FTP Site to unfairly compete with and disparage RMI. One example of Data in TMS that provide Defendants a significant competitive advantage is the "car hire" data that RMI creates from several raw data sources. Car hire is the rental amount that railroads pay to equipment owners. This is valuable trade secret Data that Cedar could have used to help rail operators drive efficiencies by prioritizing the return of higher-priced equipment over lower-cost items and to gain other competitive advantages.

42.     Cedar's main marketing tool to solicit RMI's customers is a software demonstration that compares its transportation management system to TMS. On information and belief, while attempting to compete with RMI, Cedar, including (but not limited to) McCrory while acting as a consultant on behalf of Cedar, relied on access to TMS and/or the RailConnect FTP Site and Data taken from RMI, to give Cedar a major competitive advantage in the demonstrations.

43.     RMI has lost at least 15 TMS customer accounts because of Cedar's unlawful and dishonest conduct, resulting in multimillion-dollar losses to RMI.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 10

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

**FIRST CAUSE OF ACTION**
**Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)**
**(Against All Defendants)**

44.     RMI re-alleges and incorporates by reference paragraphs 1 through 43 above.

45.     The servers that store Data from TMS and the RailConnect FTP Site are "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e) as RMI and its customers use the servers in affecting domestic or foreign commerce or communication.

46.     On information and belief, Cedar, at the direction of Ponticello, Vilhena, and Chen, and each in violation of 18 U.S.C. § 1030(a), intentionally accessed TMS and/or the RailConnect FTP Site without authorization, or alternatively, exceeded any authorized access. As described above, in or around November 2020, RMI discovered highly unusual and harmful activity on the RailConnect FTP Site. RMI promptly launched an investigation into the activity and identified the IP addresses connected to the unusual activity. RMI learned that AWS owned those IP addresses, so RMI sought and received expedited discovery from AWS to obtain information about the persons assigned the IP addresses in question.

47.     AWS's subpoena response conclusively demonstrated that the IP addresses for the devices used to access RailConnect FTP Site without authorization, or alternatively, in excess of any authorized access, were assigned to Cedar, registered to Vilhena, and billed to Ponticello.

48.     Cedar has since admitted that it accessed and uploaded Data from the RailConnect FTP Site, and continued to do so until November 2020, even after Wabtec asked Cedar to "immediately destroy[]" any "Wabtec confidential and proprietary data … whether in physical or electronic form." Cedar further admitted that Chen increased the pull frequency for Data via the RailConnect FTP Site in November 2020.

49.     Cedar and/or the other Defendants also accessed TMS without

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 11

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

authorization, or alternatively, in excess of any authorized access.

50.     To be sure, Cedar posted a graphic to its website containing a confidential TMS user identification ("RMIJET") that it could have only obtained from the system. Furthermore, RMI learned that Cobbinah and McCrory accessed TMS without authorization as recently as March and June 2022, respectively. On information and belief, Cobbinah and McCrory were both acting at the direction and under the supervision of Cedar.

51.     Defendants' actions were intentional. Indeed, Cedar knew it was barred from accessing the Data from TMS and/or the RailConnect FTP Site without RMI's permission because Wabtec raised concerns to Ponticello and Vilhena about Cedar's "potential misuse of [RMI's] confidential and proprietary data" and demanded that Cedar immediately destroy "any such data" in its possession. Also, Defendants ignored the conspicuous notice on TMS that advises those entering the system that "[a]ccess or use of this system is strictly limited to persons having express authorization from RMI."

52.     Defendants' actions caused RMI damage during a one-year period aggregating at least $5,000.00. Indeed, in the wake of Defendants' unauthorized access to TMS, RMI has suffered multimillion-dollar business losses, as well as losses and costs associated with the unusual and harmful spike in activity on TMS caused by Defendants in November 2020.

### SECOND CAUSE OF ACTION
### Violation of Stored Communications Act (18 U.S.C. § 2701)
### (Against All Defendants)

53.     RMI re-alleges and incorporates by reference paragraphs 1 through 52 above.

54.     TMS and the RailConnect FTP Site are "electronic communication services" within the meaning of 18 U.S.C. § 2701(a) because, among other reasons, they provide users the ability to send or receive Data in interstate commerce.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 12

55.     As explained above, *supra* at 46, Cedar, acting, on information and belief, at the direction of Ponticello, Vilhena, and Chen, and each in violation of 18 U.S.C. § 2701, knowingly or intentionally accessed TMS and the RailConnect FTP Site without authorization, or alternatively, exceeded authorized access.

56.     RMI's forensic examination after it detected the suspicious activity in November 2020 revealed that Defendants used their unauthorized access to the RailConnect FTP Site to obtain Data while it was contained in electronic storage. And Defendants did the same with respect to TMS.

57.     As described above, *supra* at 47, RMI traced the unauthorized access to Defendants. Cedar's website further shows that Defendants accessed TMS without authorization, or alternatively, exceeded authorized access, as it displays a graphic containing confidential information. In any event, Cedar has now confirmed that it accessed and uploaded Data from the RailConnect FTP Site through November 2020, even after Wabtec asked Cedar to "immediately destroy[]" any "Wabtec confidential and proprietary data … whether in physical or electronic form." Cedar further admitted that Chen increased the pull frequency for Data Cedar was downloading from the RailConnect FTP Site in November 2020.

58.     RMI has suffered actual harm due to Defendants' unlawful and dishonest conduct, including multimillion dollars in lost business, as well as losses and costs associated with the unusual and harmful spike in activity on TMS caused by Defendants in November 2020.

### THIRD CAUSE OF ACTION
**Trade Secret Misappropriation Under Defend Trade Secrets Act (18 U.S.C. § 1836)**
**(Against All Defendants)**

59.     RMI re-alleges and incorporates by reference paragraphs 1 through 58 above.

60.     RMI has developed and owns confidential, proprietary, and trade secret

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 13

information contained in TMS and the RailConnect FTP Site, including financial, business, scientific, technical, economic, or engineering information such as the Data, and the login credentials that provide access to the Data. This information relates to products or services used in, or intended for use in interstate commerce, as RMI's rail customers across the country use TMS and the RailConnect FTP Site.

61.     The confidential, proprietary, and trade secret information in TMS and the RailConnect FTP Site is valuable as it is unknown to others. RMI has implemented access restrictions to protect the information, including requiring users to register on TMS, providing unique login credentials for each customer, and notifying anyone entering TMS that "[a]ccess or use of this system is strictly limited to persons having express authorization from RMI." RMI has expended significant resources and effort to develop TMS, the confidential, proprietary, and trade secret information contained in the system, and the access control systems that protect TMS and the RailConnect FTP Site from unauthorized intrusion.

62.     The confidential, proprietary, and trade secret information included in TMS and the RailConnect FTP Site derives independent economic value from not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from disclosing or using the information. The information at hand has tremendous value to Defendants in their effort to solicit RMI's customers and develop a client base.

63.     All of RMI's rail customers that use TMS and the RailConnect FTP Site are contractually obligated to maintain the secrecy of their login credentials and other confidential and trade secret information that is contained in or provides access to the system. Also, RMI's employees are required to keep the company's proprietary and trade secret information confidential.

64.     In violation of RMI's rights under the Defend Trade Secrets Act, 18 U.S.C.

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

§ 1836 et seq., Cedar, acting at the direction of Ponticello, Vilhena, and Chen, misappropriated the confidential, proprietary, and trade secret information contained in TMS and the RailConnect FTP Site as described above.

65.     Defendants misappropriated the confidential, proprietary, and trade secret information contained in TMS and the RailConnect FTP Site knowing or having reason to know that it was acquired by improper means. Also, when they obtained and used the information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use. That Defendants continued to misappropriate the information after Ponticello claimed Cedar did not have "access to any of [RMI's] confidential and proprietary data" shows that Defendants' acts are willful and rise to the level of maliciousness appropriate for exemplary and punitive damages, including attorney's fees.

66.     As a result of Defendants' misappropriation of the confidential, proprietary, and trade secret information included in TMS and the RailConnect FTP Site, RMI has suffered actual damages in an amount to be proven at trial. At a minimum, Defendants have gained an improper competitive advantage over RMI because they have accessed and used RMI's proprietary information to solicit RMI's customers, all without having invested the time, funds, and resources to develop the information.

67.     Defendants' ongoing and continuing use of RMI's trade secrets and proprietary and confidential information has caused, and will cause, RMI repeated and irreparable injury. RMI's remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further threatened. RMI is also entitled to damages for unjust enrichment resulting from Defendants' misappropriation of the trade secrets that are not addressed in computing damages for actual loss. Defendants have unjustly enriched

LAW OFFICES OF
McNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

themselves from RMI's information because they have not invested anything in acquiring or curating the information.

## FOURTH CAUSE OF ACTION
### Trade Secret Misappropriation under Wash. Rev. Stat. § 19.108.010
### (Against All Defendants)

68.     RMI re-alleges and incorporates by reference paragraphs 1 through 67 above.

69.     As explained above, *supra* at 61-62, RMI has developed and owns confidential, proprietary, and trade secret information, including the Data, and the login credentials that provide access to the Data.

70.     As explained above, *supra* at 63, RMI has taken reasonable measures to keep such information secret. Also, RMI's trade secret information derives independent economic value by not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from disclosing or using the information.

71.     In violation of Plaintiff's rights under the Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010 et seq., Cedar, acting at the direction of Ponticello, Vilhena, and Chen, misappropriated the confidential, proprietary, and trade secret information described above. *Supra* 64-65.

72.     Defendants' unlawful conduct involved the misappropriation of RMI's trade secret information knowing or having reason to know that it was acquired by improper means. Furthermore, at the time they obtained and used RMI's trade secret information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 16

LAW OFFICES OF
MᴄNᴀᴜʟ Eʙᴇʟ Nᴀᴡʀᴏᴛ & Hᴇʟɢʀᴇɴ ᴘʟʟᴄ
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

73.     Defendants' conduct was intentional, knowing, willful, malicious, fraudulent, and oppressive. As a direct and proximate result of their conduct, RMI has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the confidentiality of its proprietary and trade secret information, for which there is no adequate remedy at law.

74.     RMI has suffered substantial damages as a direct and proximate result of Defendants' conduct in an amount to be proven at trial. Defendants have also been unjustly enriched by their misappropriation of RMI's trade secrets in an amount to be proven at trial.

### FIFTH CAUSE OF ACTION
### Unfair Competition under Wash. Rev. Stat. § 19.86.020
### (Against All Defendants)

75.     RMI re-alleges and incorporates by reference paragraphs 1 through 74 above.

76.     Defendants' unlawful acts constitute unfair competition under Wash. Rev. Stat. § 19.86.020 because Cedar, acting at the direction of Ponticello, Vilhena, and Chen, engaged in unfair methods of competition and deceptive acts in the conduct of trade or commerce.

77.     Defendants' unfair methods of competition include, but are not limited to, accessing TMS and the RailConnect FTP Site without RMI's consent; improperly downloading confidential Data; and improperly using the Data to compete against and disparage RMI. On information and belief, Defendants also used access to TMS and the RailConnect FTP Site and Data they stole from the platforms to perform demonstrations for RMI's customers.

78.     The public is interested in the subject matter of this dispute because, among other reasons, Defendants committed the acts alleged here in the course of their business in Washington.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 17

79.     RMI was injured in its business or property by Defendants' violation of Wash. Rev. Stat. § 19.86.020, including suffering multimillion-dollar losses in business.

**SIXTH CAUSE OF ACTION**
**Tortious Interference with Business Relationships**
**(Against All Defendants)**

80.     RMI re-alleges and incorporates by reference paragraphs 1 through 79 above.

81.     RMI had a legitimate business relationship with its customers and reasonable business expectations derived from those relationships.

82.     On information and belief, Defendants knew about RMI's business relationships because, among other things, Cedar hired numerous former Wabtec employees familiar with RMI's customer base for TMS. On information and belief, certain of these employees took confidential information when leaving Wabtec, including information showing when RMI's customer's contracts ended.

83.     On information and belief, Cedar, acting at the direction of Ponticello, Vilhena, and Chen, intentionally interfered with numerous RMI business relationships for an improper purpose or using improper means, thereby causing termination of those relationships.

84.     As described above, Defendants improperly used the Data to compete against and disparage RMI. Again, on information and belief, Defendants used access to TMS and the RailConnect FTP Site and Data they stole from the platforms to perform demonstrations in an attempt to solicit RMI's customers.

85.     Defendants' wrongful conduct has significantly harmed RMI. To date, RMI has lost at least 15 customer accounts, representing multimillion-dollar losses in business.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 18

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

### SEVENTH CAUSE OF ACTION
**Trespass to Chattels**
**(Against All Defendants)**

86.     RMI re-alleges and incorporates by reference paragraphs 1 through 85 above.

87.     As described above, Cedar, acting at the direction of Ponticello, Vilhena, and Chen, intentionally accessed RMI's personal property (*i.e.*, TMS and the RailConnect FTP Site) without RMI's authorization and improperly downloaded confidential and proprietary Data in a manner that deprived RMI of its possession and use of the TMS servers.

88.     In particular, when Cedar and/or Chen changed the pull frequency from Data downloaded from RailConnect FTP Site in November 2020, RMI experienced an unusual and harmful spike in activity on the TMS servers, which temporarily deprived RMI of its (and its customers') use of it, and also required significant and costly remediation efforts.

### EIGHTH CAUSE OF ACTION
**Negligence**
**(Against Cedar and Chen)**

89.     RMI re-alleges and incorporates by reference paragraphs 1 through 88 above.

90.     Cedar and Chen, acting through Cedar, owed a duty of reasonable care to RMI when downloading Data from TMS and/or the RailConnect FTP Site.

91.     They breached that duty of reasonable care by increasing the pull frequency on Data downloaded from the RailConnect FTP Site in a manner caused significant and costly harm to RMI's TMS servers and required RMI to engage in significant and costly remediation efforts.

92.     Cedar and/or Chen's breach of their duty of reasonable care resulted in and was the proximate cause of RMI's injury—namely, losses and costs associated with the

LAW OFFICES OF
McNaul Ebel Nawrot & Helgren pllc
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

unusual and harmful spike in activity on the RailConnect FTP Site.

**PRAYER FOR RELIEF**

**WHEREFORE**, RMI prays for:

93.     Compensatory damages for losses sustained due to Defendants' improper conduct;

94.     Exemplary and punitive damages per 18 U.S.C. §§ 1836(b)(3)(C), 2707(c), or any other cause of action stated here that permits the recovery of such damages;

95.     Preliminary and permanent relief enjoining Defendants from accessing, using, disclosing, or benefitting directly or indirectly from TMS, the RailConnect Site and the Data and from soliciting, attempting to solicit, or doing business with any of RMI's rail customers;

96.     An order that directs Defendants to (a) return to all RMI confidential information in its possession, (b) disclose all persons or entities to which it disclosed confidential information and who disclosed it, and (c) destroy all Data and other information obtained from TMS and/or the RailConnect Site;

97.     A judgment that Defendants violated the Computer Fraud and Abuse, Stored Communications, and Trade Secret Misappropriation Under Defend Trade Secrets Acts, that Defendants misappropriated trade secrets, unfairly competed with RMI, tortiously interfered with RMI's business relationships, and trespassed, and that Cedar and Chen acted negligently;

98.     Reasonable attorneys' fees and costs under 18 U.S.C. §§ 1836(b)(3)(D), 2707(b)(3), or any other cause of action stated here that permits the recovery of these expenses;

99.     Pre- and post-judgment interest; and

100.     Such other and further relief as the Court deems just and proper.

SECOND AMENDED COMPLAINT
No. 2:21-cv-00437-TSZ – Page 20

LAW OFFICES OF
MCNAUL EBEL NAWROT & HELGREN PLLC
600 University Street, Suite 2700
Seattle, Washington 98101-3143
(206) 467-1816

1

**JURY DEMAND**

2

    101.    RMI demands a jury trial in this action.

3

DATED this 31st day of August, 2022.

4

            McNAUL EBEL NAWROT & HELGREN PLLC

5

            By: *s/Anna F. Cavnar*

6

                Anna F. Cavnar, WSBA No. 54413

7

            600 University Street, Suite 2700
            Seattle, Washington 98101

8

            Tel:    (206) 467-1816

9

            Email: acavnar@mcnaul.com

10

            MAYER BROWN LLP

11

            Charles E. Harris, II, *Admitted Pro Hac Vice*

12

            Megan Stride, *Admitted Pro Hac Vice*
            71 South Wacker Drive

13

            Chicago, Illinois 60606-4637
            Tel:    (312) 782-0600

14

            Email: charris@mayerbrown.com
            Email: mstride@mayerbrown.com

15

16

            Kristin W. Silverman, WSBA No. 49420
            Two Palo Alto Square

17

            3000 El Camino Real
            Palo Alto, California 94306-2112

18

            Tel:    (650) 331 2000
            Email: ksilverman@mayerbrown.com

19

20

            *Attorneys for Plaintiff and Counterclaim and Third-Party Defendants Railcar Management, LLC and Wabtec Corporation*

21

22

23

24

25

26