THE HONORABLE THOMAS S. ZILLY

1

2

3

4

5

6                          UNITED STATES DISTRICT COURT
                           WESTERN DISTRICT OF WASHINGTON
7                                    AT SEATTLE

8   RAILCAR MANAGEMENT, LLC,

9                      Plaintiff,                    Case No. 2:21-cv-00437-TSZ

10         v.                                        **DEFENDANTS CEDAR AI, INC., MARIO
                                                     PONTICELLO, DARIL VILHENA, AND YI
11                                                   CHEN'S ANSWER AND AFFIRMATIVE
                                                     DEFENSES TO RAILCAR MANAGEMENT,
12  CEDAR AI, INC., MARIO PONTICELLO, DARIL          LLC'S SECOND AMENDED COMPLAINT
    VILHENA, and YI CHEN,                            AND DEFENDANT CEDAR AI, INC.'S
13                                                   COUNTERCLAIM AND THIRD-PARTY
                       Defendants.                   COMPLAINT**
14

15  CEDAR AI, INC.,                                  **JURY DEMAND REQUESTED**

16                     Counterclaim Plaintiff,

17         v.

18

19  RAILCAR MANAGEMENT, LLC, WABTEC
    CORPORATION,
20

21                     Counterclaim and Third-
                       Party Defendants.
22

23

24         DEFENDANTS CEDAR AI, INC. ("Cedar"), MARIO PONTICELLO, DARIL VILHENA, and YI

25  CHEN (collectively, "Defendants"), by and through the undersigned counsel, file this Answer

26  and Affirmative Defenses. Counterclaim Plaintiff CEDAR AI, INC. alleges the following

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO          **TERRELL MARSHALL LAW GROUP PLLC**      **MORRISON & FOERSTER LLP**
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S              936 North 34th Street, Suite 300          425 Market Street
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 1             Seattle, Washington  98103-8869           San Francisco, CA  94105-2482
CASE NO. 2:21-cv-00437-TSZ                             TEL. 206.816.6603 • FAX 206.319.5450      TEL. 415.268.7000 • FAX 415.268.7522
                                                        www.terrellmarshall.com                  www.mofo.com

1  Counterclaims against RAILCAR MANAGEMENT, LLC ("RMI"), and Third-Party Complaint against

2  WABTEC CORPORATION ("Wabtec").

3  <u>**GENERAL DENIAL AND ANSWER**</u>

4  Defendants generally deny each and every allegation in the Second Amended Complaint

5  (ECF No. 99) that requires a response except those items specifically admitted herein.

6  Defendants respond to each allegation of the Second Amended Complaint as follows:

7  <u>**ANSWER**</u>

8  1.  The preliminary information RMI has obtained in this lawsuit confirms that Cedar

9  and the individual Defendants have been engaging in unlawful, unfair, and unscrupulous

10  business practices attempting to poach RMI's RailConnect Transportation Management System

11  ("TMS"), in violation of both federal and state laws.

12  **ANSWER:  Deny.**

13  2.  RMI's TMS is a core operational system for railroads that helps them maximize

14  performance by automating day-to-day operations.  Rail operators use RMI's TMS to manage

15  their rail and intermodal operations, signal communication assets, railcar repair billing and

16  inventory, and multi-modal visibility, planning, and execution for industrial shippers and

17  logistics service providers.

18  **ANSWER:  Defendants admit only that RMI's TMS is a transportation management**

19  **system for railroads.  Defendants lack knowledge regarding the remaining allegations in this**

20  **paragraph and therefore are unable to admit or deny.  To the extent a response is required,**

21  **deny.**

22  3.  Cedar also offers rail companies a transportation management system.  Cedar

23  claims that its system is the first to leverage artificial intelligence to present users with

24  suggestions for handling traffic and customer billing.  Since its inception, Cedar has hired

25  multiple former employees of RMI's former and current parent company, General Electric

26  Company and Wabtec Corporation ("Wabtec"), respectively.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 2
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER:  Defendants admit that Cedar offers rail companies a transportation**

2    **management system and that Cedar's system leverages artificial intelligence to present users**

3    **with suggestions for handling traffic and customer billing.  Defendants also admit that Cedar**

4    **hired individuals who approached Cedar regarding job opportunities after having worked for**

5    **RMI and General Electric Company ("GE"), which merged with Wabtec in 2019.  The**

6    **remaining allegations in this paragraph are denied.**

7         4.     In March 2020, Wabtec sent a letter to Cedar's co-chief executive officers ("co-

8    CEOs"), Ponticello and Vilhena, stating that it "has strong concerns about the potential misuse

9    of Wabtec confidential and proprietary data." Wabtec's letter specifically identified an

10   "unauthorized data feed" (i.e., a snapshot data feed) utilized by Cedar that Wabtec discovered

11   and disabled, and noted that the "exfiltrated data was and remains Wabtec confidential and

12   proprietary data … whether in physical or electronic form, be immediately destroyed."

13   Ponticello responded to Wabtec's letter in April 2020.  He affirmed that "we do not have access

14   to any of your confidential and proprietary data."

15   **ANSWER:  Defendants admit that Wabtec sent a letter to Messrs. Ponticello and**

16   **Vilhena in March 2020.  Defendants admit that Mr. Ponticello refuted Wabtec's allegations**

17   **and affirmed Cedar did "not have access to any of [RMI's] confidential and proprietary data."**

18   **Defendants affirmatively allege that the information contained in the snapshot data feeds**

19   **was owned by individual railroads, and not owned by RMI, as reflected in the terms of RMI's**

20   **customer contracts for its RailConnect TMS services.  *See* Exhibit A at ¶ 6(b), Exhibits B – D at**

21   **¶ 7(b).  Defendants further allege that the snapshot data feeds thus did not contain any of**

22   **RMI's confidential and proprietary data.  Defendants deny that Cedar's access to snapshot**

23   **data feeds for any of the railroads was "unauthorized," and affirmatively allege that RMI not**

24   **only knew that Cedar was accessing such feeds, but authorized Cedar's access.  Moreover,**

25   **Defendants affirmatively allege that Wabtec's March 2020 letter did not expressly revoke**

26   **Cedar's authorization to access the snapshot data feeds for the railroad customers who had**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 3
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  **been using Cedar's product, Optiswitch.  The remaining allegations in this paragraph are**

2  **denied.**

3       5.     RMI initiated this lawsuit after it detected highly unusual and significantly

4  harmful activity on its TMS servers—i.e., more frequent logins to the platform and an abnormal

5  spike in the frequency and volume of snapshot data downloaded from certain customers'

6  accounts.  Its investigation of that activity identified Amazon Web Services ("AWS")-owned IP

7  addresses for the devices connected to the suspicious logins and downloads.  With the Court's

8  permission, RMI subpoenaed AWS to identify the owners of these IP addresses.

9       **ANSWER**:  **Defendants lack knowledge regarding the allegations in this paragraph and**

10  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

11       6.     Information produced by AWS in response to the subpoena, attached as Exhibit

12  1, revealed that Cedar owns the IP addresses in question, that the account for those IP

13  addresses is registered to Vilhena, and that Ponticello is the billing contact for the account.

14       **ANSWER**:  **Admit.**

15       7.     The information from AWS conclusively proves that Cedar both accessed RMI's

16  computer systems without RMI's authorization and downloaded data many months before RMI

17  detected the activity.  Cedar has since confirmed that it used an AWS application to regularly

18  access RMI's snapshot data feeds, download data, and upload them to an AWS cloud storage

19  application—and that Cedar did not stop even after receiving Wabtec's March 2020 letter.

20       **ANSWER**:  **Defendants admit only that Cedar accessed snapshot data feeds for certain**

21  **railroads from an external FTP server using an AWS application and stored the snapshot data**

22  **files in an AWS cloud storage application, both before and after receiving Wabtec's March**

23  **2020 letter.  Defendants deny that Cedar accessed RMI's computer systems or the snapshot**

24  **data feeds without authorization, and deny that Wabtec's March 2020 letter revoked Cedar's**

25  **authorization to access any of the snapshot data feeds.  Defendants affirmatively allege that**

26  **RMI not only knew Cedar was accessing certain railroads' data feeds, but authorized Cedar's**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 4
CASE NO. 2:21-cv-00437-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **access of the data feeds.  Defendants lack knowledge regarding the remaining allegations in**

2    **this paragraph and therefore are unable to admit or deny.  To the extent a response is**

3    **required, deny.**

4        8.      Cedar has also confirmed that its chief technology officer, Yi Chen, changed the

5    pull frequency for the snapshot data feeds on November 1, 2020 (more than six months after

6    receiving Wabtec's March 2020 letter).  On information and belief, Cedar, including its

7    consultant David McCrory, used their unauthorized access to RMI's systems, and the data it

8    retrieved from them to gain a competitive advantage when performing demonstrations for

9    RMI's customers.  In other words, Cedar used illegal activity and the proprietary data that it

10    stole from RMI to then compete with RMI.  On information and belief, the individual

11    Defendants were personally involved in, directed, or approved of this unlawful activity.

12        **ANSWER:  Defendants deny that Yi Chen changed the pull frequency for the snapshot**

13    **data feeds on November 1, 2020.  Defendants affirmatively allege that Mr. Chen changed the**

14    **pull frequency of the snapshot data feeds on December 10, 2019.  Defendants deny that**

15    **Cedar's access to the snapshot data feeds was unauthorized, and deny that the snapshot data**

16    **feeds contained RMI's confidential or proprietary data.  Defendants deny that any data**

17    **contained in the snapshot data feeds could be or was used by Cedar to gain a competitive**

18    **advantage over, or to compete with, RMI.  Defendants deny that David McCrory ever**

19    **accessed RMI's systems or RailConnect TMS without authorization, or accessed RailConnect**

20    **TMS on Cedar's behalf, at Cedar's direction, or in connection with his work for Cedar.  *See* ECF**

21    **No. 95-1 ¶ 8.  Defendants deny that Mr. McCrory, while he was a consultant for Cedar, ever**

22    **accessed or utilized RMI's FTP server or the snapshot data feeds that Cedar was authorized to**

23    **access.  *See id*. ¶ 12.  Defendants deny that Mr. McCrory ever used RMI data when**

24    **performing demonstrations for customers.  *See id*. ¶¶ 9-10.  Defendants further deny that**

25    **they engaged in any illegal activity or stole proprietary data from RMI.  Defendants deny the**

26    **remaining allegations in this paragraph.**

27

1    9.    Cedar and the individual Defendants' actions violate the Computer Fraud and

2  Abuse Act, 18 U.S.C. § 1030, *et seq.* and the Stored Communications Act, 18 U.S.C. § 2701 *et*

3  *seq.*, 18 U.S.C. § 1836 *et seq.*, both of which in addition to providing the civil causes of action

4  stated below, impose criminal liability on intruders like Cedar.  RMI also brings claims under the

5  Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, and the laws of Washington for

6  misappropriation of trade secrets, unfair competition, tortious interference, trespass, and

7  negligence.

8    **ANSWER:  This paragraph consists of legal conclusions to which no response is**

9  **required.  To the extent a response is required, deny.**

10    10.    RMI seeks compensatory damages for the multimillion-dollar losses it has

11  sustained due to Defendants' unlawful and improper conduct; punitive damages; preliminary

12  and permanent relief barring Cedar from, among other things, accessing TMS and soliciting

13  RMI's customers using stolen data; reasonable attorneys' fees and costs; and pre-and post-

14  judgment interest.

15    **ANSWER:  This paragraph consists of legal conclusions to which no response is**

16  **required.  To the extent a response is required, deny.**

17    **JURISDICTION AND VENUE**

18    11.    This Court has jurisdiction under 28 U.S.C. § 1331 because this action arises from

19  Defendants' violation of the federal statutes identified in this Second Amended Complaint.

20    **ANSWER:  This paragraph consists of legal conclusions to which no response is**

21  **required.**

22    12.    This action also arises under the laws of Washington.  This Court has jurisdiction

23  over those claims under 28 U.S.C. § 1367 because Defendants' conduct giving rise to the state

24  law claims are the same as or related to the activities giving rise to the claims arising under

25  federal law such that they form part of the same case or controversy.

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 6
Case No. 2:21-cv-00437-TSZ

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER:  This paragraph consists of legal conclusions to which no response is**

2    **required.**

3         13.    Venue for RMI's claims is proper in this district under 28 U.S.C. § 1391(b)

4    because Cedar's principal place of business is in Seattle, Washington, located in this district.

5    The individual Defendants also reside or work for any employer located in Seattle, Washington.

6    In addition, events giving rise to this action occurred in Bothell, Washington, located within this

7    district.  For example, one of the Defendants logged into TMS from Bothell, Washington, and

8    improperly downloaded RMI's data.

9         **ANSWER:  This paragraph consists of legal conclusions to which no response is**

10   **required.  To the extent a response is required, Defendants admit that Cedar's principal place**

11   **of business is located in Seattle, Washington, that at least one of the individual Defendants**

12   **resides in Seattle, Washington, and that venue is proper in this district under 28 U.S.C.**

13   **§ 1391(b).  To the extent not expressly admitted, deny.**

14                                  **PARTIES**

15        14.    RMI is a subsidiary of Wabtec, a leading global provider of equipment, systems,

16   digital solutions, and other freight and transit rail services.  RMI delivers software and related

17   solutions to optimize its customers' railway operating and maintenance activities.  RMI is and

18   was at all times relevant to this action a limited liability company incorporated under the laws

19   of Georgia with its principal place of business in Atlanta, Georgia.

20        **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**

21   **therefore are unable to admit or deny.**

22        15.    Cedar, which offers service and technology to the rail industry, is incorporated

23   under the laws of Delaware and has a principal place of business in Seattle, Washington.

24        **ANSWER:  Admit.**

25        16.    Mario Ponticello is Cedar's co-CEO and chief financial officer.  Ponticello resides

26   in Seattle, Washington.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 7
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER:  Defendants admit that Mr. Ponticello is Cedar's co-CEO and Chief Financial**

2    **Officer.  Defendants deny that Mr. Ponticello resides in Seattle, Washington.**

3          17.    Daril Vilhena is Cedar's co-CEO.  Vilhena resides in Seattle, Washington.

4          **ANSWER:  Admit.**

5          18.    Yi Chen is Cedar's CTO.  Chen, on information and belief, resides in or around

6    Seattle, Washington.[1]

7          **ANSWER:  Defendants admit that Mr. Chen is Cedar's Chief Technology Officer, and**

8    **admit that Mr. Chen lives in Seattle, Washington.  Defendants deny the allegation in footnote**

9    **1 that Cedar has provided only limited information in response to RMI's discovery requests**

10   **regarding the identities of any other defendants.**

11                                    **BACKGROUND**

12                                    *RMI's TMS*

13         19.    As a core operating and communications system, TMS automates and tracks the

14   entry of rail car movements and switching operations for RMI's rail customers and provides

15   them high visibility over all rail assets.

16         **ANSWER:  Defendants admit only that RMI's TMS is a transportation management**

17   **system for railroads, which like any other railroad transportation management system, tracks**

18   **the entry of rail car movements and switching operations for certain railroads.  Defendants**

19   **lack knowledge regarding the remaining allegations in this paragraph and therefore are**

20   **unable to admit or deny.  To the extent a response is required, deny.**

21         20.    TMS contains data relating to, among other things, customers' rail cars, including

22   content and location, routing and railroad information, and the origins and destination of rail

23   cars, and proprietary data derived from the raw data RMI collects (collectively, the "Data").  The

24

25

---

26   [1] RMI has sought via discovery the identities of any other defendants. To date, Cedar has provided only limited
     information in response to RMI's requests.  RMI reserves the right to seek leave to join additional parties based on

27   information learned in discovery.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 8
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1 │ Data is stored in on-premises systems located near Atlanta, Georgia, as well as on back-up on-

2 │ premises systems located in Ohio.

3 │ **ANSWER: Defendants admit only that RMI-authorized snapshots related to certain**

4 │ **railroads, which were uploaded to an external FTP server, contain data relating to customers'**

5 │ **rail cars, including content and location, routing and railroad information, and the origins and**

6 │ **destinations of rail cars. Defendants deny that TMS Data is confidential or proprietary to**

7 │ **RMI. Defendants further allege that the TMS Data is owned by the individual railroad**

8 │ **customers, and not owned by RMI, as reflected in the terms of RMI's customer contracts for**

9 │ **its RailConnect TMS services.** *See* **Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b). Defendants lack**

10 │ **knowledge regarding the remaining allegations in this paragraph, including where the Data**

11 │ **might be stored, and therefore are unable to admit or deny. To the extent a response is**

12 │ **required, deny.**

13 │ 21.     RMI's rail customers with properly authorized credentials access TMS via a

14 │ website interface hosted by AWS, a well-known provider of on-demand cloud computing

15 │ platforms and application programming interfaces to individuals, companies, and governments.

16 │ RMI customers with properly authorized credentials may also access folders that contain

17 │ certain Data extracted from TMS via file transfer protocol ("FTP") at ftp.railconnect.com (the

18 │ "RailConnect FTP Site"). Some of the extracted Data is called snapshot data.

19 │ **ANSWER: Defendants admit that some of the data extracted from TMS and accessible**

20 │ **via the RailConnect FTP Site is called snapshot data. Defendants affirmatively allege that RMI**

21 │ **employees and/or RMI's railroad customers authorized and provided Cedar with login**

22 │ **credentials to access the snapshot data feeds via the RailConnect FTP Site for certain railroad**

23 │ **customers with those customers' permission. Defendants allege that the login credentials**

24 │ **used to access TMS are distinct from the login credentials used to access the RailConnect FTP**

25 │ **Site.** *See* **Declaration of Steve Murray ("Murray Decl.") ¶¶ 10, 13. Defendants lack**

26 │

27 │

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 9
CASE NO. 2:21-cv-00437-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   **knowledge regarding the remaining allegations in this paragraph and therefore are unable to**

2   **admit or deny.  To the extent a response is required, deny.**

3   22.   RMI assigns each of its rail customers unique login credentials to access TMS and

4   the RailConnect FTP Site, and only RMI can authorize someone to use the credentials to enter

5   them.  Indeed, RMI and its customers expressly agree in written contracts that customers will

6   keep their login credentials strictly confidential.

7   **ANSWER:  Defendants admit only that RMI assigns each of its rail customers unique**

8   **login credentials to access RailConnect TMS and the external FTP server.  Defendants**

9   **affirmatively allege that the login credentials used to access the RailConnect FTP Site are**

10  **distinct from the login credentials used to access RailConnect TMS.  *See* Murray Decl. ¶¶ 10,**

11  **13.  Defendants further affirmatively allege that RMI created the RailConnect FTP Site**

12  **specifically for third party vendors to access and use data owned by railroad customers that**

13  **has been exported from TMS.  *Id.* ¶ 8.  Defendants further allege that, to the extent**

14  **customers had any contractual obligation to keep their login credentials confidential, that**

15  **applied only to RailConnect TMS, not to login credentials for the external FTP server.**

16  **Defendants lack knowledge regarding the remaining allegations in this paragraph, and**

17  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

18  23.   Furthermore, TMS conspicuously and explicitly warns those logging into the

19  system that they must have RMI's permission to use it:

20
21  > You have accessed the RMI computer system.  Access or use of
    > this system is strictly limited to persons having express
    > authorization from RMI.  Unauthorized access or use of this
22  > system is unlawful and strictly prohibited.

23  **ANSWER:  Defendants affirmatively allege that the warning message described in this**

24  **paragraph is not displayed when one logs into the RailConnect FTP Site, rather than**

25  **RailConnect TMS.  Defendants affirmatively allege that Cedar was authorized to access the**

26  **RailConnect FTP Site for certain railroad customers that piloted Optiswitch.  Defendants**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 10
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1 **further affirmatively allege that RMI knew that Cedar was accessing snapshot data feeds from**

2 **the RailConnect FTP Site for certain railroads because RMI and/or the railroad customers had**

3 **authorized it.  Defendants lack knowledge regarding the remaining allegations in this**

4 **paragraph and therefore are unable to admit or deny.  To the extent a response is required,**

5 **deny.**

6 *The Suspicious and Harmful Activity*

7 24. While RMI's rail customers routinely access and/or download Data on the

8 RailConnect FTP Site, on or about November 1, 2020, RMI identified an unusual spike in the

9 frequency and volume of downloads.  The incident caused significant and costly damage to

10 RMI, including loss of access to its TMS servers, that required RMI to engage in significant and

11 costly remediation efforts.

12 **ANSWER:  Defendants affirmatively allege that the snapshot data feeds are hosted on**

13 **an external FTP server that is separate from RMI's TMS computer system.  *See* Murray Decl.**

14 **¶¶ 9, 12.  Defendants deny that any spike in activity on the RailConnect FTP Site caused harm**

15 **to RMI or RailConnect TMS.  Defendants lack knowledge regarding the remaining allegations**

16 **in this paragraph and therefore are unable to admit or deny.  To the extent a response is**

17 **required, deny.**

18 25. After conducting a preliminary investigation, RMI observed that the unusual

19 activity was triggered by devices oddly requesting simultaneous file downloads from multiple

20 customer accounts, each with unique customer login credentials.

21 **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**

22 **therefore are unable to admit or deny.  To the extent a response is required, deny.**

23 26. Several of RMI's rail customers said they had not logged onto the RailConnect

24 FTP Site and downloaded Data.  Accordingly, RMI launched an internal investigation to verify

25 that the downloads it observed were indeed illegitimate and to determine whether an

26 unauthorized person accessed TMS.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 11
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  **ANSWER:  Defendants deny that any of Cedar's downloads from the RailConnect FTP**
2  **Site were illegitimate or unauthorized.  Defendants lack knowledge regarding the remaining**
3  **allegations in this paragraph and therefore are unable to admit or deny.  To the extent a**
4  **response is required, deny.**

5  *Forensic Investigation*

6  27.    On or about November 6, 2020, RMI retained an outside vendor to conduct a
7  forensic investigation to further assess the suspicious activity on TMS.  As part of the
8  investigation, the vendor analyzed RMI's logs and forensic images and deployed endpoint
9  software to capture IP addresses and other pertinent information.

10  **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**
11  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

12  28.    RMI discovered through this investigation that there were logins to the
13  RailConnect FTP Site from more than 200 IP addresses owned by AWS from November 1, 2020,
14  to November 3, 2020.

15  **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**
16  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

17  29.    RMI also discovered that another series of unexplained logins to the RailConnect
18  FTP Site and Data downloads occurred from other AWS-owned IP addresses, and at least 23 IP
19  addresses owned by conventional Internet service providers, well before it detected the
20  unusual activity in November 2020.  IP addresses that logged into RailConnect FTP Site from
21  locations in Washington were responsible for much of the suspicious activity.

22  **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**
23  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

24  *AWS Subpoena and Confidential Information on Cedar's Website*

25  30.    RMI moved for expedited discovery at the same time it filed the original
26  complaint.  After the Court granted that motion, RMI served AWS with a subpoena requesting

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 12
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   information to identify the individuals responsible for the suspicious logins and downloads.  In

2   particular, RMI asked that AWS identify the persons associated with the 20 unique IP addresses

3   that were most active during the peak of the suspicious activity and Data downloads.

4          __ANSWER__:  **Defendants lack knowledge regarding the allegations in this paragraph and**

5   **therefore are unable to admit or deny.  To the extent a response is required, deny.**

6          31.     AWS responded to the subpoena on June 10, 2021, providing the account

7   registration information associated with the 20 IP addresses RMI identified.

8          __ANSWER__:  **Defendants lack knowledge regarding the allegations in this paragraph and**

9   **therefore are unable to admit or deny.  To the extent a response is required, deny.**

10         32.     AWS's response confirms, as RMI had suspected, that Cedar owns the IP

11  addresses that accessed the RailConnect FTP Site and downloaded Data during the suspicious

12  activity RMI detected.  The response also indicated that the related account is registered to

13  Vilhena, and Ponticello is listed as the billing contact for the account.  *See* Ex. 1.

14         __ANSWER__:  **Defendants admit only that they have an account with AWS that is**

15  **registered to Mr. Vilhena and for which Mr. Ponticello is listed as the billing contact.**

16  **Defendants deny there was anything suspicious about the activity RMI detected.  Defendants**

17  **affirmatively allege that RMI knew all along that Cedar was accessing snapshot feeds from**

18  **the RailConnect FTP Site for certain railroads because RMI had authorized Cedar's access and**

19  **provided Cedar login credentials.  Defendants lack knowledge regarding the remaining**

20  **allegations in this paragraph and therefore are unable to admit or deny.  To the extent a**

21  **response is required, deny.**

22         33.     While waiting for information from AWS, RMI obtained proof that Cedar also

23  accessed TMS without permission.  Cedar posted a graphic to its website that depicted a TMS

24  database.  As shown in the far-right column below, the "User" Cedar identified on the picture is

25  "RMIJET," which is an authentic and unique TMS user identification for one of RMI's current

26  employees.  The only way Cedar would have this confidential information is if it accessed TMS.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 13
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1
2
3
4
5
6
7
8
9
10
11
12
13

| Station | Zone | Name | Type | User |  |
|---------|------|------|------|------|--|
| ABERDMS | YD | YARD | Y | RMIJET | 3/ |
| ALPINTX | YARD | ALPIN TEXAS | Y | RMIJET | 3/ |
| AMSTEMO | YARD | AMSTERDAM MO. | Y | RMIJET | 3/ |
| ANDRES | CLASIF | CLASSIFICATION | C | RMIJET | 3/ |
| ANDRES | INTERC | SWITCHING DISTRIC | S | RMIJET | 3/ |
| ANDRES | PATIO | YARD | Y | RMIJET | 3/ |
| ANT | 001 | ZONA 001 | Y | RMIJET | 3/ |
| ATHENS | BBFX | ZONA 002 | Y | RMIJET | 3/ |
| AUSTIN | YD | ATHENS | Y | RMIJET | 3/ |
| AUSTIN | CALSSI | CLASSIFICATION | C | RMIJET | 3/ |
| A0007 | GRALYD | PATIO | C | RMIJET | 3/ |
| A0047 | PUBLIC | VIAS PUBLICO | Y | RMIJET | 3/ |
| A0353 | YD | YARD | Y | RMIJET | 3/ |
| A0353 | 01 | PATIO 001 | Y | RMIJET | 3/ |

14  **ANSWER:  Defendants admit only that Cedar copied the graphic from a publicly**

15  **available image that was posted on RMI's support website.  Defendants deny Cedar**

16  **improperly accessed what RMI claims is purportedly "an authentic and unique TMS user**

17  **identification for one of RMI's current employees."  Defendants allege that the publicly-**

18  **posted graphic included the user identification "RMIJET."  Defendants lack knowledge**

19  **regarding the remaining allegations in this paragraph and therefore are unable to admit or**

20  **deny.  To the extent a response is required, deny.**

21      34.    As noted above, on March 31, 2020, Wabtec sent a letter to Ponticello and

22  Vilhena, putting them personally, along with Cedar, on notice of RMI's "strong concerns about

23  the potential misuse of Wabtec confidential and proprietary data." Wabtec's letter specifically

24  identified an "unauthorized data feed" utilized by Cedar that Wabtec had discovered and

25  disabled, and noted that the "exfiltrated data was and remains Wabtec confidential and

26  proprietary data." Thus, Cedar was aware that Wabtec considered Data downloaded via the

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 14
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  RailConnect FTP Site "confidential and proprietary." The March 31, 2020 letter is attached as

2  Exhibit 2.

3  **ANSWER:  Defendants admit only that Wabtec sent a letter dated March 31, 2020 to**

4  **Messrs. Ponticello and Vilhena.  Defendants affirmatively allege that the information**

5  **contained in the snapshot data feeds was owned by individual railroad customers, and not**

6  **owned by RMI, as reflected in the terms of RMI's customer contracts for its RailConnect TMS**

7  **services.  *See* Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).  Defendants further allege that the snapshot**

8  **data feeds did not contain any RMI confidential and proprietary data.  Defendants deny that**

9  **Cedar's access to snapshot data feeds for certain railroads was unauthorized, and**

10 **affirmatively allege that RMI not only knew that Cedar was accessing such feeds, but**

11 **authorized Cedar's access.  Moreover, Defendants allege that Wabtec's March 2020 letter did**

12 **not expressly revoke Cedar's authorization to access the snapshot data feeds for the railroad**

13 **customers who had been using Cedar's product, Optiswitch.  Defendants deny that Cedar or**

14 **any of its employees misused any of RMI/Wabtec's confidential or proprietary data.  To the**

15 **extent not expressly admitted, the remaining allegations in this paragraph are denied.**

16 35.     Wabtec further demanded in the letter that any "Wabtec confidential and

17 proprietary data … whether in physical or electronic form, be immediately destroyed."

18 Ponticello denied any wrongdoing by Cedar.  In an April 14, 2020 letter, attached as Exhibit 3,

19 he stated that, "to our knowledge," Cedar did not have "access to any of [RMI's] confidential

20 and proprietary data."

21 **ANSWER:  Defendants admit only that Wabtec sent a letter dated March 31, 2020 to**

22 **Messrs. Ponticello and Vilhena, and that Mr. Ponticello sent Wabtec a letter dated April 14,**

23 **2020.  Defendants affirmatively allege that the information contained in the snapshot data**

24 **feeds was owned by individual railroad customers, and not owned by RMI, as reflected in the**

25 **terms of RMI's customer contracts for its RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B**

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 15
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  **– D at ¶ 7(b).  Defendants further affirmatively allege that the snapshot data feeds did not**

2  **contain any RMI confidential and proprietary data.**

3  36.     Despite Ponticello's claim, Defendants had been accessing the RailConnect FTP

4  Site to download Data at or about the time Ponticello told RMI that Cedar did not have access

5  to RMI's proprietary data.  Ponticello's statement is contradicted by the information AWS

6  provided showing that it assigned Cedar the IP addresses for the devices used to access TMS

7  and download Data during the unusual activity RMI detected. *See* Ex. 1.

8  <u>**ANSWER**</u>:  **Defendants admit only that Cedar accessed snapshot data files pertaining**

9  **to certain railroads stored on the RailConnect FTP Site, with RMI's and the railroads'**

10  **authorization.  Defendants affirmatively allege that the snapshot data feeds did not contain**

11  **any RMI proprietary data, based in part on the terms of RMI's customer contracts for its**

12  **RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).  Defendants deny they ever**

13  **accessed RailConnect TMS to download data.  Defendants further deny that the information**

14  **AWS provided shows that IP addresses assigned to Cedar were used to access RailConnect**

15  **TMS or download data directly from RailConnect TMS in November 2020.  Defendants lack**

16  **knowledge regarding the remaining allegations in this paragraph and therefore are unable to**

17  **admit or deny.  To the extent a response is required, deny**.

18  37.   Cedar has since confirmed that it used an AWS application to regularly access and

19  download snapshot data feeds and upload the files to an AWS cloud storage application.

20  Starting in at least 2018 and 2019, Cedar set up a program to access and upload Data from the

21  RailConnect FTP Site for at least 15 railroads. Even after receiving Wabtec's March 2020 letter,

22  see Ex. 2, Cedar did not stop logging into the RailConnect FTP Site and downloading Data.

23  Accordingly, until November 2020, Cedar continued to access and upload Data from the

24  RailConnect FTP Site.

25  <u>**ANSWER**</u>:  **Defendants admit that Cedar used an AWS application to access and**

26  **download snapshot data feeds for certain railroads with RMI's authorization, and stored the**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 16
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1 snapshot files in an AWS cloud storage application.  Defendants admit that at various times in

2 2018 and 2019, Cedar set up a program to access, download, and upload snapshot data files

3 from the RailConnect FTP Site for up to 15 railroads.  Defendants deny that Cedar's access to

4 snapshot data feeds for certain railroads was unauthorized, and affirmatively allege that RMI

5 and the railroads authorized Cedar to access the snapshot data feeds for those 15 railroads.

6 Defendants affirmatively allege that the information contained in the snapshot data feeds

7 was owned by individual railroad customers, and not owned by RMI, as reflected in the terms

8 of RMI's customer contracts for its RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B – D at

9 ¶ 7(b).  Defendants further affirmatively allege that the snapshot data feeds did not contain

10 any RMI confidential and proprietary data.  Moreover, Defendants allege that Wabtec's

11 March 2020 letter did not revoke Cedar's authorization to access the snapshot data feeds for

12 the railroad customers who had been using Cedar's product, Optiswitch.  Defendants admit

13 that the AWS application continued to access some of the snapshot data feeds until

14 November 2, 2020.  To the extent not expressly admitted, deny.

15       38.   Cedar has since confirmed that Chen changed the "pull frequency" on the program

16 Cedar set up to download Data—i.e., Chen made a change that resulted in Cedar accessing and

17 updating Data on a much more frequent basis. Chen made this change on November 1, 2020—

18 more than six months after receiving Wabtec's March 2020 letter.

19       <u>ANSWER</u>:  Defendants admit only that Mr. Chen changed the "pull frequency" on the

20 program Cedar created to automatically check for and download new snapshot data files.

21 Defendants deny that the pull frequency change occurred on November 1, 2020.  Instead,

22 Defendants allege that Mr. Chen changed the pull frequency on December 10, 2019.  To the

23 extent not expressly admitted, deny.

24       39.   Chen's actions in increasing the pull frequency triggered the highly unusual and

25 significantly harmful spike in activity in November 2020.

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 17
Case No. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER**:  Defendants deny that Mr. Chen changing the pull frequency on December

2    10, 2019, triggered any purported spike in activity on RMI's servers.  Defendants further deny

3    that any purported spike in activity was harmful to RMI or RailConnect TMS.  Defendants

4    affirmatively allege that the snapshot data feeds are hosted on an external FTP server that is

5    separate from RMI's TMS computer system.  *See* Murray Decl. ¶¶ 9, 12.  Defendants deny

6    that any purported spike in activity on the RailConnect FTP Site caused any harm to

7    RailConnect TMS.  The remaining allegations in this paragraph are denied.

8           40.     As recently as June 2022 (more than a year after this litigation began),

9    representatives of Cedar have continued to access of RMI's systems without authorization or in

10   excess any authorized access. For example, the User ID PTRADDM, assigned to McCrory (who

11   formerly worked for a customer of RMI, Port Terminal Railroad Association, and currently acts

12   as a consultant for Cedar), accessed TMS as recently as June 9, 2022. Likewise, the User ID

13   "Gray, Gray, Gray," which, upon information and belief, is used by Grace Cobbinah (who

14   formerly worked at Wabtec and now works at Cedar), accessed TMS as recently as March 24,

15   2022.

16          **ANSWER**:  Defendants admit that David McCrory is a former employee of Port

17   Terminal Railroad Association (PTRA) and currently works as a consultant for Cedar.  *See* ECF

18   No. 95-1 ¶¶ 3, 7.  Defendants affirmatively allege that beginning in January 2022, Mr.

19   McCrory was contracted to provide as-needed technical support services for RailConnect TMS

20   to PTRA.  *See id.* ¶ 4.  Defendants admit that Mr. McCrory was assigned the TMS User ID

21   PTRADDM, which he was authorized to use throughout his employment at PTRA from 2010 to

22   December 2021 and as an independent contractor for PTRA.  *See id.* ¶ 6.  Defendants admit

23   that on June 9, 2022, Mr. McCrory accessed RailConnect TMS using his PTRADDM User ID at

24   PTRA's request in order to fix a "customer entry that was not setup in the system correctly."

25   *Id.* ¶ 5.  Defendants affirmatively allege that Mr. McCrory has "never used [his] PTRA

26   RailConnect credentials to log into RailConnect on Cedar's behalf, at Cedar's direction, or in

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 18
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  connection with [his] work for Cedar." *Id*. ¶ 8.  Defendants admit that Grace Cobbinah is a

2  current Cedar employee and previously worked at Wabtec.  Defendants deny that Grace

3  Cobbinah accessed RMI's TMS on behalf of or at the direction of Cedar or Defendants, or used

4  the User ID "Gray, Gray, Gray."  Defendants affirmatively allege that the User ID "Gray, Gray,

5  Gray" is used by a company called Gray, Gray & Gray that provides auditing services to Pan

6  Am railroad, a RMI customer. To the extent not expressly admitted, deny.

7  *Defendants' Improper Use of RMI's Data to Compete with RMI*

8  41.  Defendants used the Data they stole from RMI through unauthorized access to

9  TMS and/or the RailConnect FTP Site to unfairly compete with and disparage RMI.  One

10  example of Data in TMS that provide Defendants a significant competitive advantage is the "car

11  hire" data that RMI creates from several raw data sources.  Car hire is the rental amount that

12  railroads pay to equipment owners.  This is valuable trade secret Data that Cedar could have

13  used to help rail operators drive efficiencies by prioritizing the return of higher-priced

14  equipment over lower-cost items and to gain other competitive advantages.

15  **ANSWER**:  **Defendants deny that they stole data via unauthorized access to TMS or the**

16  **RailConnect FTP Site and further deny that they have competed unfairly with or disparaged**

17  **RMI.  Defendants affirmatively allege that the information contained in the snapshot data**

18  **feeds was not trade secret information and could not give Defendants any competitive**

19  **advantage over RMI because the feeds primarily consisted of standard EDI fields that every**

20  **railroad uses to track railcar inventory.  Furthermore, Defendants affirmatively allege that the**

21  **information contained in the snapshot data feeds was not trade secret information in part**

22  **because it was owned by individual railroad customers, and not owned by RMI, as reflected**

23  **in the terms of RMI's customer contracts for its RailConnect TMS services.  Defendants deny**

24  **that they used or accessed any "car hire" data described in this paragraph, which in any event**

25  **is likely publicly-available rate information from CHARM, an industry-standard rate manual**

26  **published by Railinc. Defendants also allege that, to the extent any "car hire" data was**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 19
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  **included in the snapshot data feeds, such data would be useless without the associated**

2  **business logic and LCS events, which Defendants deny were contained in the snapshot data**

3  **feeds.**

4  42.     Cedar's main marketing tool to solicit RMI's customers is a software

5  demonstration that compares its transportation management system to TMS.  On information

6  and belief, while attempting to compete with RMI, Cedar including (but not limited to) McCrory

7  while acting as a consultant on behalf of Cedar, relied on access to TMS and/or the RailConnect

8  FTP Site and Data taken from RMI to give Cedar a major competitive advantage in the

9  demonstrations.

10  **ANSWER:  Defendants admit only that Cedar conducts demonstrations of its**

11  **transportation management system, ARMS, for customers.  Defendants deny that Cedar, or**

12  **any of its employees, or its consultant, David McCrory, ever used any data taken from RMI or**

13  **relied on access to RailConnect TMS and/or the RailConnect FTP Site during any of Cedar's**

14  **ARMS demonstrations or to give Cedar a competitive advantage during such demonstrations.**

15  *See* **ECF No. 95-1 ¶¶ 7–11.  Furthermore, Defendants affirmatively allege that the information**

16  **contained in the snapshot data feeds was not trade secret information and could not give**

17  **Defendants any competitive advantage over RMI.**

18  43.     RMI has lost at least 15 TMS customer accounts because of Cedar's unlawful and

19  dishonest conduct, resulting in multimillion-dollar losses to RMI.

20  **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**

21  **therefore are unable to admit or deny.  To the extent a response is required, deny.**

22  **FIRST CAUSE OF ACTION**

**Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)**
23  **(Against All Defendants)**

24  44.     RMI re-alleges and incorporates by reference paragraphs 1 through 43 above.

25  **ANSWER:  This paragraph consists of statements to which no response is required.  To**

26  **the extent a response is required, deny.**

27

45.     The servers that store Data from TMS and RailConnect FTP Site are "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e) as RMI and its customers use the servers in affecting domestic or foreign commerce or communication.

**ANSWER:  This paragraph consists of legal conclusions to which no response is required.  To the extent a response is required, deny.**

46.     On information and belief, Cedar, at the direction of Ponticello, Vilhena, and Chen, and each in violation of 18 U.S.C. § 1030(a), intentionally accessed TMS and/or the RailConnect FTP Site without authorization, or alternatively, exceeded any authorized access. As described above, in or around November 2020, RMI discovered highly unusual and harmful activity on the RailConnect FTP Site.  RMI promptly launched an investigation into the activity and identified the IP addresses connected to the unusual activity.  RMI learned that AWS owned those IP addresses, so RMI sought and received expedited discovery from AWS to obtain information about the persons assigned the IP addresses in question.

**ANSWER:  Defendants deny they violated 18 U.S.C. § 1030(a) or intentionally accessed TMS and/or the RailConnect FTP Site without authorization or exceeded any authorized access.  Defendants deny that Cedar's access of the RailConnect FTP Site was harmful. Defendants lack knowledge regarding the remaining allegations in this paragraph and therefore are unable to admit or deny.  To the extent a response is required, deny.**

47.     AWS's subpoena response conclusively demonstrated that the IP addresses for the devices used to access RailConnect FTP Site without authorization, or alternatively in excess of any authorized access, were assigned to Cedar, registered to Vilhena, and billed to Ponticello.

**ANSWER:  Defendants only admit that Cedar has accounts with AWS that are registered to Mr. Vilhena and that the billing contact for Cedar's AWS accounts is Mr. Ponticello.  Defendants deny that Cedar accessed the RailConnect FTP Site without authorization or exceeded its authorized access.  Defendants deny the remaining allegations in this paragraph.**

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 21
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    48.    Cedar has since admitted that it accessed and uploaded Data from the

2    RailConnect FTP Site, and continued to do so until November 2020, even after Wabtec asked

3    Cedar to "immediately destroy[]" any "Wabtec confidential and proprietary data … whether in

4    physical or electronic form." Cedar further admitted that Chen increased the pull frequency for

5    Data via the RailConnect FTP Site in November 2020.

6    **ANSWER:  Defendants admit only that Cedar accessed and uploaded Data from the**

7    **RailConnect FTP Site until November 2020.  Defendants deny that Mr. Chen increased the pull**

8    **frequency for Data via the RailConnect FTP Site in November 2020.  Defendants affirmatively**

9    **allege that Mr. Chen changed the pull frequency of the snapshot data feeds on December 10,**

10   **2019.  Defendants affirmatively allege that the information contained in the snapshot data**

11   **feeds was owned by individual railroad customers, and not owned by RMI, as reflected in the**

12   **terms of RMI's customer contracts for its RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B**

13   **– D at ¶ 7(b).  Defendants further affirmatively allege that the snapshot data feeds did not**

14   **contain any RMI confidential or proprietary data.  Defendants deny that Cedar's access to**

15   **snapshot data feeds for certain railroads was unauthorized or exceeded the scope of**

16   **authorization, and affirmatively allege that RMI not only knew that Cedar was accessing such**

17   **feeds, but authorized Cedar's access.  Moreover, Defendants allege that Wabtec's March**

18   **2020 letter did not revoke Cedar's authorization to access the snapshot data feeds for the**

19   **railroad customers who had been using Cedar's product, Optiswitch.  To the extent not**

20   **expressly admitted, deny.**

21   49.    Cedar and/or the other Defendants also accessed TMS without authorization, or

22   alternatively, in excess of any authorized access.

23   **ANSWER:  Deny.**

24   50.    To be sure, Cedar posted a graphic to its website containing a confidential TMS

25   user identification ("RMIJET") that it could have only obtained from the system. Furthermore,

26   RMI learned that Cobbinah and McCrory accessed TMS without authorization as recently as

27

1    March and June 2022, respectively. On information and belief, Cobbinah and McCrory were

2    both acting at the direction and under the supervision of Cedar.

3        **ANSWER:  Defendants admit only that Cedar copied the graphic from a publicly**

4    **available image that was posted on RMI's support website, which included the user**

5    **identification "RMIJET."  Defendants deny that Mr. McCrory accessed TMS without**

6    **authorization, or that he accessed TMS on behalf of, at the direction of, or under the**

7    **supervision of Cedar.  *See* ECF No. 95-1.  Defendants deny that Ms. Cobbinah accessed TMS**

8    **without authorization, or that she accessed TMS on behalf of, at the direction of, or under the**

9    **supervision of Cedar.  To the extent not expressly admitted, deny.**

10        51.     Defendants' actions were intentional.  Indeed, Cedar knew it was barred from

11    accessing the Data from TMS and/or the RailConnect FTP Site without RMI's permission

12    because Wabtec raised concerns to Ponticello and Vilhena about Cedar's "potential misuse of

13    [RMI's] confidential and proprietary data" and demanded that Cedar immediately destroy "any

14    such data" in its possession.  Also, Defendants ignored the conspicuous notice on TMS that

15    advises those entering the system that "[a]ccess or use of this system is strictly limited to

16    persons having express authorization from RMI."

17        **ANSWER:  Deny.**

18        52.     Defendants' actions caused RMI damage during a one-year period aggregating at

19    least $5,000.00.  Indeed, in the wake of Defendants' unauthorized access to TMS, RMI has

20    suffered multimillion-dollar business losses, as well as losses and costs associated with the

21    unusual and harmful spike in activity on TMS caused by Defendants in November 2020.

22        **ANSWER:  Deny.**

23                **SECOND CAUSE OF ACTION**

24        **Violation of Stored Communications Act (18 U.S.C. § 2701)**
                     **(Against All Defendants)**

25        53.     RMI re-alleges and incorporates by reference paragraphs 1 through 52 above.

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 23
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER:  This paragraph consists of statements to which no response is required.  To**

2    **the extent a response is required, deny.**

3    54.    TMS and the RailConnect FTP Site are "electronic communication services"

4    within the meaning of 18 U.S.C. § 2701(a) because, among other reasons, they provide users

5    the ability to send or receive Data in interstate commerce.

6    **ANSWER:  This paragraph consists of legal conclusions to which no response is**

7    **required.  To the extent a response is required, deny.**

8    55.    As explained above, *supra* at 46, Cedar, acting, on information and belief, at the

9    direction of Ponticello, Vilhena, and Chen, and each in violation of 18 U.S.C. § 2701, knowingly

10   or intentionally accessed TMS and the RailConnect FTP Site without authorization, or

11   alternatively, exceeded authorized access.

12   **ANSWER:  Deny.**

13   56.    RMI's forensic examination after it detected the suspicious activity in November

14   2020 revealed that Defendants used their unauthorized access to the RailConnect FTP Site to

15   obtain Data while it was contained in electronic storage. And Defendants did the same with

16   respect to TMS.

17   **ANSWER:  Deny.**

18   57.    As described above, *supra* at 47, RMI traced the unauthorized access to

19   Defendants.  Cedar's website further shows that Defendants accessed TMS without

20   authorization, or alternatively, exceeded authorized access, as it displays a graphic containing

21   confidential information. In any event, Cedar has now confirmed that it accessed and uploaded

22   Data from the RailConnect FTP Site through November 2020, even after Wabtec asked Cedar to

23   "immediately destroy[]" any "Wabtec confidential and proprietary data … whether in physical

24   or electronic form." Cedar further admitted that Chen increased the pull frequency for Data

25   Cedar was downloading from the RailConnect FTP Site in November 2020.

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 24
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER**:  Defendants admit only that Cedar copied a graphic from a publicly available

2    image that was posted on RMI's support website, which included the user identification

3    "RMIJET."  Defendants affirmatively allege that the snapshot data feeds are hosted on an

4    external FTP server that is separate from RMI's TMS computer system.  *See* Murray Decl.

5    ¶¶ 9, 12.  Defendants admit that Cedar accessed snapshot data files pertaining to certain

6    railroads held on an external FTP server, with RMI's and the railroads' authorization.

7    Defendants deny that Cedar's access to snapshot data feeds for certain railroads was

8    unauthorized or exceeded the scope of authorization, and affirmatively allege that RMI not

9    only knew that Cedar was accessing such feeds, but authorized Cedar's access.  Defendants

10   affirmatively allege that the information contained in the snapshot data feeds was owned by

11   individual railroad customers, and not owned by RMI, as reflected in the terms of RMI's

12   customer contracts for its RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).

13   Defendants further affirmatively allege that the snapshot data feeds did not contain any RMI

14   confidential or proprietary data.  Defendants deny that Mr. Chen increased the pull frequency

15   for Data Cedar was downloading from the RailConnect FTP Site in November 2020.  Instead,

16   Defendants affirmatively allege that Mr. Chen changed the pull frequency of the snapshot

17   data feeds on December 10, 2019.  To the extent not expressly admitted, deny.

18   58.    RMI has suffered actual harm due to Defendants' unlawful and dishonest

19   conduct, including multimillion dollars in lost business, as well as losses and costs associated

20   with the unusual and harmful spike in activity on TMS caused by Defendants in November 2020.

21   **ANSWER**:  Deny.

22   ### THIRD CAUSE OF ACTION
     ### Trade Secret Misappropriation Under Defend Trade Secrets Act (18 U.S.C. § 1836)
23   ### (Against All Defendants)

24   59.    RMI re-alleges and incorporates by reference paragraphs 1 through 58 above.

25   **ANSWER**:  This paragraph consists of statements to which no response is required.  To

26   the extent a response is required, deny.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 25
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    60.    RMI has developed and owns confidential, proprietary, and trade secret

2   information contained in TMS and the RailConnect FTP Site, including financial, business,

3   scientific, technical, economic, or engineering information such as the Data, and the login

4   credentials that provide access to the Data.  This information relates to products or services

5   used in, or intended for use in interstate commerce, as RMI's rail customers across the country

6   use TMS and the RailConnect FTP Site.

7    **ANSWER:  Defendants affirmatively allege that the RailConnect FTP Site is separate**

8   **from RMI's TMS system.  *See* Murray Decl. ¶¶ 9, 12.  Defendants affirmatively allege that the**

9   **login credentials used to access RailConnect TMS are distinct from the login credentials used**

10  **to access the RailConnect FTP Site.  *Id*.  Defendants deny that all of the information contained**

11  **in TMS is confidential, proprietary, or trade secret information.  Defendants affirmatively**

12  **allege that the snapshot data feeds on the RailConnect FTP Site did not contain any RMI**

13  **confidential, proprietary, or trade secret data in part because the information contained in**

14  **the snapshot data feeds was owned by individual railroad customers, and not owned by RMI,**

15  **as reflected in the terms of RMI's customer contracts for its RailConnect TMS services.  *See***

16  **Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).  Defendants lack knowledge regarding the remaining**

17  **allegations in this paragraph and therefore are unable to admit or deny.  To the extent a**

18  **response is required, deny.**

19   61.    The confidential, proprietary, and trade secret information in TMS and the

20  RailConnect FTP Site is valuable as it is unknown to others.  RMI has implemented access

21  restrictions to protect the information, including requiring users to register on TMS, providing

22  unique login credentials for each customer, and notifying anyone entering TMS that "[a]ccess or

23  use of this system is strictly limited to persons having express authorization from RMI." RMI has

24  expended significant resources and effort to develop TMS, the confidential, proprietary, and

25  trade secret information contained in the system, and the access control systems that protect

26  TMS and the RailConnect FTP Site from unauthorized intrusion.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 26
Case No. 2:21-cv-00437-TSZ

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    **ANSWER:  Defendants affirmatively allege that the RailConnect FTP Site is separate**

2    **from RMI's TMS system.  *See* Murray Decl. ¶¶ 9, 12.  Defendants affirmatively allege that the**

3    **login credentials used to access RailConnect TMS are distinct from the login credentials used**

4    **to access the RailConnect FTP Site.  *Id*.  Defendants deny that all of the information contained**

5    **in TMS is confidential, proprietary, or trade secret information.  Defendants affirmatively**

6    **allege that the snapshot data feeds on the RailConnect FTP Site did not contain any RMI**

7    **confidential, proprietary, or trade secret data in part because the information contained in**

8    **the snapshot data feeds was owned by individual railroad customers, and not owned by RMI,**

9    **as reflected in the terms of RMI's customer contracts for its RailConnect TMS services.  *See***

10   **Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).  Defendants deny that the information in the RailConnect**

11   **FTP Site is valuable because it is unknown to others because the snapshot data feeds contain**

12   **inventory data that is shared among different railroads and third parties in order to track**

13   **railcar shipments.  Defendants deny that Cedar's access to snapshot data feeds for certain**

14   **railroads was unauthorized or exceeded the scope of authorization, and affirmatively allege**

15   **that RMI not only knew that Cedar was accessing such feeds, but authorized Cedar's access.**

16   **Defendants lack knowledge regarding the remaining allegations in this paragraph and**

17   **therefore are unable to admit or deny.  To the extent a response is required, deny.**

18        62.    The confidential, proprietary, and trade secret information included in TMS and

19   the RailConnect FTP Site derives independent economic value from not being generally known

20   to and not being readily ascertainable through proper means by another person who could

21   obtain economic value from disclosing or using the information.  The information at hand has

22   tremendous value to Defendants in their effort to solicit RMI's customers and develop a client

23   base.

24        **ANSWER:  Defendants deny that all of the information contained in TMS is**

25   **confidential, proprietary or trade secret information.  Defendants affirmatively allege that**

26   **the snapshot data feeds did not contain any RMI confidential, proprietary, or trade secret**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 27
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  **data in part because the information contained in the snapshot data feeds was owned by**

2  **individual railroad customers, and not owned by RMI, as reflected in the terms of RMI's**

3  **customer contracts for its RailConnect TMS services.** *See* **Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).**

4  **Defendants deny that the information in the RailConnect FTP Site derives independent**

5  **economic value from not being generally known to and not being readily ascertainable**

6  **through proper means by another person who could obtain economic value from disclosing**

7  **or using the information because the snapshot data feeds contain inventory data that is**

8  **shared among different railroads and third parties in order to track railcar shipments.**

9  **Defendants deny that Cedar, or any of its employees or consultants, ever used any data taken**

10 **from RMI, RailConnect TMS and/or the RailConnect FTP Site to solicit RMI's customers or**

11 **develop Cedar's client base.  Defendants deny the remaining allegations in this paragraph.**

12        63.     All of RMI's rail customers that use TMS and the RailConnect FTP Site are

13 contractually obligated to maintain the secrecy of their login credentials and other confidential

14 and trade secret information that is contained in or provides access to the system.  Also, RMI's

15 employees are required to keep the company's proprietary and trade secret information

16 confidential.

17        **ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and**

18 **therefore are unable to admit or deny.  To the extent a response is required, deny.**

19        64.     In violation of RMI's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836

20 et seq., Cedar, acting, on information and belief, at the direction of Ponticello, Vilhena, and

21 Chen, misappropriated the confidential, proprietary, and trade secret information contained in

22 TMS and the RailConnect FTP Site as described above.

23        **ANSWER:  Deny.**

24        65.     Defendants misappropriated the confidential, proprietary, and trade secret

25 information contained in TMS and the RailConnect FTP Site knowing or having reason to know

26 that it was acquired by improper means.  Also, when they obtained and used the information,

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 28
Case No. 2:21-cv-00437-TSZ

**Terrell Marshall Law Group PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**Morrison & Foerster LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived

2    from or through a person who had utilized improper means to acquire it, acquired it under

3    circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or

4    through a person who owed a duty to RMI to maintain its secrecy or limit its use.  That

5    Defendants continued to misappropriate the information after Ponticello claimed Cedar did not

6    have "access to any of [RMI's] confidential and proprietary data" shows that Defendants' acts

7    are willful and rise to the level of maliciousness appropriate for exemplary and punitive

8    damages, including attorney's fees.

9         **ANSWER: Deny.**

10        66.    As a result of Defendants' misappropriation of the confidential, proprietary, and

11   trade secret information included in TMS and the RailConnect FTP Site, RMI has suffered actual

12   damages in an amount to be proven at trial.  At a minimum, Defendants have gained an

13   improper competitive advantage over RMI because they have accessed and used RMI's

14   proprietary information to solicit RMI's customers, all without having invested the time, funds,

15   and resources to develop the information.

16        **ANSWER: Deny.**

17        67.    Defendants' ongoing and continuing use of RMI's trade secrets and proprietary

18   and confidential information has caused, and will cause, RMI repeated and irreparable injury.

19   RMI's remedy at law is not, by itself, adequate to compensate for the injuries already inflicted

20   and further threatened.  RMI is also entitled to damages for unjust enrichment resulting from

21   Defendants' misappropriation of the trade secrets that are not addressed in computing

22   damages for actual loss.  Defendants have unjustly enriched themselves from RMI's information

23   because they have not invested anything in acquiring or curating the information.

24        **ANSWER: Deny.**

25

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 29
Case No. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

**FOURTH CAUSE OF ACTION**
**Trade Secret Misappropriation under Wash. Rev. Stat. § 19.108.010**
**(Against All Defendants)**

68.     RMI re-alleges and incorporates by reference paragraphs 1 through 67 above.

**ANSWER:  This paragraph consists of statements to which no response is required.  To the extent a response is required, deny.**

69.     As explained above, *supra* at 61-62, RMI has developed and owns confidential, proprietary, and trade secret information, including the Data, and the login credentials that provide access to the Data.

**ANSWER:  Defendants affirmatively allege that Cedar obtained login credentials to access the RailConnect FTP Site for certain railroads from RMI and/or the railroads. Defendants affirmatively allege that the snapshot data feeds did not contain any RMI confidential, proprietary, or trade secret data in part because the information contained in the snapshot data feeds was owned by individual railroad customers, and not owned by RMI, as reflected in the terms of RMI's customer contracts for its RailConnect TMS services.  *See* Ex. A at ¶ 6(b), Exs. B – D at ¶ 7(b).  Defendants lack knowledge regarding the remaining allegations in this paragraph and therefore are unable to admit or deny.  To the extent a response is required, deny.**

70.     As explained above, *supra* at 63, RMI has taken reasonable measures to keep such information secret.  Also, RMI's trade secret information derives independent economic value by not being generally known to and not being readily ascertainable through proper means by another person who could obtain economic value from disclosing or using the information.

**ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and therefore are unable to admit or deny.  To the extent a response is required, deny.**

71.     In violation of Plaintiff's rights under the Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010 et seq., Cedar, acting at the direction of Ponticello, Vilhena,

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 30
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  Chen, misappropriated the confidential, proprietary, and trade secret information described

2  above. *Supra* 64-65.

3      **ANSWER: Deny.**

4      72.    Defendants' unlawful conduct involved the misappropriation of RMI's trade

5  secret information knowing or having reason to know that it was acquired by improper means.

6  Furthermore, at the time they obtained and used RMI's trade secret information, Defendants

7  knew or had reason to know their knowledge of RMI's trade secrets was derived from or

8  through a person who had utilized improper means to acquire it, acquired it under

9  circumstances giving rise to a duty to maintain its secrecy or limit its use or derived it from or

10  through a person who owed a duty to RMI to maintain its secrecy or limit its use.

11      **ANSWER: Deny.**

12      73.    Defendants' conduct was intentional, knowing, willful, malicious, fraudulent, and

13  oppressive.  As a direct and proximate result of their conduct, RMI has suffered and will

14  continue to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the

15  confidentiality of its proprietary and trade secret information, for which there is no adequate

16  remedy at law.

17      **ANSWER: Deny.**

18      74.    RMI has suffered substantial damages as a direct and proximate result of

19  Defendants' conduct in an amount to be proven at trial.  Defendants have also been unjustly

20  enriched by their misappropriation of RMI's trade secrets in an amount to be proven at trial.

21      **ANSWER: Deny.**

22              **FIFTH CAUSE OF ACTION**

      **Unfair Competition under Wash. Rev. Stat. § 19.86.020**

23             **(Against All Defendants)**

24      75.    RMI re-alleges and incorporates by reference paragraphs 1 through 74 above.

25      **ANSWER:  This paragraph consists of statements to which no response is required.  To**

26  **the extent a response is required, deny.**

27

76.     Defendants' unlawful acts constitute unfair competition under Wash. Rev. Stat. § 19.86.020 because Cedar, acting at the direction of Ponticello and Vilhena, engaged in unfair methods of competition and deceptive acts in the conduct of trade or commerce.

**ANSWER:  Deny.**

77.     Defendants' unfair methods of competition include, but are not limited to, accessing TMS and the RailConnect FTP Site without RMI's consent; improperly downloading confidential Data; and improperly using the Data to compete against and disparage RMI. Defendants also used access to TMS and the RailConnect FTP Site and Data they stole from the platforms to perform demonstrations for RMI's customers.

**ANSWER:  Deny.**

78.     The public is interested in the subject matter of this dispute because, among other reasons, Defendants committed the acts alleged here in the course of their business in Washington.

**ANSWER:  Deny.**

79.     RMI was injured in its business or property by Defendants' violation of Wash. Rev. Stat. § 19.86.020, including suffering multimillion-dollar losses in business.

**ANSWER:  Deny.**

**SIXTH CAUSE OF ACTION**
**Tortious Interference with Business Relationships**
**(Against All Defendants)**

80.     RMI re-alleges and incorporates by reference paragraphs 1 through 79 above.

**ANSWER:  This paragraph consists of statements to which no response is required.  To the extent a response is required, deny.**

81.     RMI had a legitimate business relationship with its customers and reasonable business expectations derived from those relationships.

**ANSWER:  Defendants lack knowledge regarding the allegations in this paragraph and therefore are unable to admit or deny.  To the extent a response is required, deny.**

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 32
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   82.     On information and belief, Defendants knew about RMI's business relationships

2   because, among other things, Cedar hired numerous former Wabtec employees familiar with

3   RMI's customer base for TMS. On information and belief, certain of these employees took

4   confidential information when leaving Wabtec, including information showing when RMI's

5   customer's contracts ended.

6   **ANSWER:  Defendants admit only that Cedar hired certain individuals who approached**

7   **Cedar regarding job opportunities after having worked for RMI and General Electric Company**

8   **("GE"), which merged with Wabtec in 2019.  Defendants deny the remaining allegations in**

9   **this paragraph.**

10   83.     On information and belief, Cedar, acting at the direction of Ponticello, Vilhena,

11   and Chen, intentionally interfered with numerous RMI business relationships for an improper

12   purpose or using improper means, thereby causing termination of those relationships.

13   **ANSWER:  Deny.**

14   84.     As described above, Defendants improperly used the Data to compete against

15   and disparage RMI.  Again, on information and belief, Defendants used access to TMS and the

16   RailConnect FTP Site and Data they stole to perform demonstrations in an attempt to solicit

17   RMI's customers.

18   **ANSWER:  Deny.**

19   85.     Defendants' wrongful conduct has significantly harmed RMI.  To date, RMI has

20   lost at least 15 customer accounts, representing multimillion-dollar losses in business.

21   **ANSWER:  Deny.**

22                    **SEVENTH CAUSE OF ACTION**
                     **Trespass to Chattels**
23                    **(Against All Defendants)**

24   86.     RMI re-alleges and incorporates by reference paragraphs 1 through 85 above.

25   **ANSWER:  This paragraph consists of statements to which no response is required.  To**

26   **the extent a response is required, deny.**

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 33
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

87.     As described above, Cedar, acting at the direction of Ponticello, Vilhena, and Chen, intentionally accessed RMI's personal property (*i.e.*, TMS and the RailConnect FTP Site) without RMI's authorization and improperly downloaded confidential and proprietary Data in a manner that deprived RMI of its possession and use of the TMS servers.

**ANSWER:  Deny.**

88.     In particular, when Cedar and/or Chen changed the pull frequency from Data downloaded from RailConnect FTP Site in November 2020, RMI experienced an unusual and harmful spike in activity on the TMS servers, which temporarily deprived RMI of its (and its customers) use of it, and also required significant and costly remediation efforts.

**ANSWER:  Deny.**

**EIGHTH CAUSE OF ACTION**
**Negligence**
**(Against Cedar and Chen)**

89.     RMI re-alleges and incorporates by reference paragraphs 1 through 88 above.

**ANSWER:  This paragraph consists of statements to which no response is required.  To the extent a response is required, deny.**

90.     Cedar and Chen, acting through Cedar, owed a duty of reasonable care to RMI when downloading Data from TMS and/or the RailConnect FTP Site.

**ANSWER:  Deny.**

91.     They breached that duty of reasonable care by increasing the pull frequency on Data downloaded from the RailConnect FTP Site in a manner caused significant and costly harm to RMI's TMS servers and required RMI to engage in significant and costly remediation efforts.

**ANSWER:  Deny.**

92.     Cedar and/or Chen's breach of their duty of reasonable care resulted in and was the proximate cause of RMI's injury—namely, losses and costs associated with the unusual and harmful spike in activity on the RailConnect FTP Site.

**ANSWER:  Deny.**

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 34
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

**PRAYER FOR RELIEF**

WHEREFORE, RMI prays for:

93.     Compensatory damages for losses sustained due to Defendants' improper

conduct;

94.     Exemplary and punitive damages per 18 U.S.C. §§ 1836(b)(3)(C), 2707(c), or any

other cause of action stated here that permits the recovery of such damages.

95.     Preliminary and permanent relief enjoining Defendants from accessing, using,

disclosing, or benefitting directly or indirectly from TMS and the Data and from soliciting,

attempting to solicit, or doing business with any of RMI's rail customers;

96.     An order that directs Defendants to (a) return to all RMI confidential information

in its possession, (b) disclose all persons or entities to which it disclosed confidential

information and who disclosed it, and (c) destroy all Data and other information obtained from

TMS;

97.     A judgment that Defendants violated the Computer Fraud and Abuse Act and

Stored Communications Act, and that it unfairly competed with RMI, tortiously interfered with

RMI's business relationships, and was unjustly enriched at RMI's expense;

98.     Reasonable attorneys' fees and costs under 18 U.S.C. §§ 1836(b)(3)(D),

2707(b)(3), or any other cause of action stated here that permits the recovery of these

expenses.

99.     Pre- and post-judgment interest; and

100.    Such other and further relief as the Court deems just and proper.

**ANSWER:  Defendants deny that Plaintiff is entitled to any of the relief sought in the**

**Second Amended Complaint.**

**JURY DEMAND**

101.    RMI demands a jury trial in this action.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 35
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1

**AFFIRMATIVE DEFENSES**

2      Without assuming any burden of pleading or proof that would otherwise rest on

3  Plaintiff, and reserving the right to amend this Answer to assert any additional defenses when,

4  and if, in the course of its investigation, discovery, preparation for trial, or otherwise, it

5  becomes appropriate to assert such defenses, Defendants allege the following affirmative

6  defenses.

7          **FIRST AFFIRMATIVE DEFENSE – FAILURE TO STATE A CLAIM**

8      Plaintiff fails to state a claim upon which relief can be granted.

9          **SECOND AFFIRMATIVE DEFENSE – UNJUST ENRICHMENT**

10      Defendants allege that granting Plaintiff's demand in the Second Amended Complaint

11  would result in unjust enrichment.

12          **THIRD AFFIRMATIVE DEFENSE – UNCLEAN HANDS**

13      Plaintiff's claims are barred under the doctrine of unclean hands because Plaintiff has

14  engaged in the same course of unlawful conduct with respect to unfair methods of competition

15  and tortious interference with business expectancies of which it accuses Defendants.

16          **FOURTH AFFIRMATIVE DEFENSE – EQUITABLE ESTOPPEL**

17      Plaintiff's claims are barred under the doctrine of equitable estoppel because

18  Defendants relied on Plaintiff's authorizations to access the RailConnect FTP Site and download

19  the snapshot data feeds for certain railroads via the unique login credentials provided to

20  Defendants by Plaintiff with the permission of the railroad customers.

21          **FIFTH AFFIRMATIVE DEFENSE – ABUSE OF PROCESS**

22      Plaintiff's claims are an abuse of process, being pursued for an improper purpose which

23  is to stifle competition by disparaging Cedar and Defendants and driving Cedar out of business.

24          **SIXTH AFFIRMATIVE DEFENSE – GOOD FAITH**

25      Defendants acted at all times in good faith and did not directly or indirectly induce any

26  acts alleged to constitute of violation of law or give rise to a claim in this action.

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 36
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1

**SEVENTH AFFIRMATIVE DEFENSE – CONSENT**

2      Plaintiff's claims are barred as Plaintiff authorized and consented to Defendants' access

3  to the RailConnect FTP Site by providing Defendants with unique login credentials with the

4  permission of the railroad customers.

5

**EIGHTH AFFIRMATIVE DEFENSE – NO DUTY**

6      Defendants owe no duty of care to Plaintiff.

7

**NINTH AFFIRMATIVE DEFENSE – NO BREACH OF DUTY**

8      Even if Defendants owed a duty of care to Plaintiff, which Defendants deny, Defendants

9  did not breach that duty.

10

**TENTH AFFIRMATIVE DEFENSE – CAUSATION**

11      To the extent Plaintiff has suffered the damages alleged in the Second Amended

12  Complaint, which Defendants deny, such damages were not caused by Defendants.

13

**ELEVENTH AFFIRMATIVE DEFENSE – COMPARATIVE NEGLIGENCE**

14      Plaintiff's claims are barred due to its contributory and/or comparative negligence.

15

**TWELFTH AFFIRMATIVE DEFENSE – FAILURE TO MITIGATE DAMAGES**

16      Plaintiff failed to mitigate any damages that it has allegedly suffered.

17

**THIRTEENTH AFFIRMATIVE DEFENSE – SPECULATIVE DAMAGES**

18      Plaintiff's damages are speculative and cannot be reasonably calculated.

19

**RESERVATION OF RIGHTS**

20      Defendants reserve the right to assert additional affirmative defenses as they become

21  available.

22

**DEMAND FOR JURY TRIAL**

23      Defendants hereby demand a jury trial on all matters so triable as of right.

24

25

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 37
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

## COUNTERCLAIM AND THIRD-PARTY COMPLAINT

Defendant and Counterclaim Plaintiff Cedar AI, Inc. ("Cedar") brings claims against Plaintiff and Counterclaim Defendant Railcar Management, LLC ("RMI"), and Third-Party Defendant Wabtec Corporation ("Wabtec") as follows:

### I.       PARTIES

1.       Cedar is a technology startup company dedicated to providing the rail industry with state-of-the-art yard operating, planning, and management software.  Cedar is incorporated under the laws of Delaware and has its principal place of business in Seattle, Washington.

2.       On information and belief, RMI is a limited liability company formed under the laws of the state of Georgia.  Its principal place of business is located in Atlanta, Georgia.  RMI was a subsidiary of GE from January 2012 to February 2019, and became a subsidiary of Wabtec after GE merged with Wabtec in February 2019.

3.       Wabtec is a global provider of equipment, components, software, services, and systems for the transportation industry.  Wabtec is incorporated under the laws of Delaware and has a principal place of business in Pittsburgh, Pennsylvania.  Wabtec acquired RMI via its merger with GE Transportation ("GE") in February 2019 and GE is now a division of Wabtec.

4.       RMI as defined herein includes GE and Wabtec during the relevant time periods of ownership by those respective entities.

5.       On information and belief, Wabtec operates as RMI's and GE's alter ego and there is such a unity of ownership and interest between RMI, GE, and Wabtec that the separateness of these corporate entities, if any, has ceased to exist.  For example, there is unity of ownership because Wabtec owns both RMI and GE.  Neither GE nor RMI appear to have separate employees and, on information and belief, RMI's main asset, RailConnect, has been transferred to Wabtec.  RMI, GE, and Wabtec have disregarded any distinction between the corporate entities by allowing Wabtec to act on RMI's and GE's behalf throughout the relevant

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 38
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1 | time frame during the respective periods of ownership, including in business interactions with

2 | Cedar.

3 | **II.     JURISDICTION AND VENUE**

4 | 6.     Counterclaim and Third-Party Defendants RMI and Wabtec are within the

5 | jurisdiction of this Court.  Cedar's counter- and third-party- claims arise under Section 2 of the

6 | Sherman Act (15 U.S.C. § 2), Section 4 of the Clayton Act (15 U.S.C. § 15(a)), and Section 16 of

7 | the Clayton Act (15 U.S.C. § 26).  Cedar seeks damages for its injuries resulting from RMI and

8 | Wabtec's tortious and anti-competitive conduct.  Cedar also seeks an injunction to prohibit RMI

9 | and Wabtec (including GE, now a division of Wabtec) from continuing their unlawful conduct.

10 | This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question), 28 U.S.C.

11 | § 1332 (in that there is diversity of citizenship between the parties and the amount placed in

12 | controversy by each of the claims for relief herein exceeds $75,000, exclusive of interests, costs

13 | and attorneys' fees), 28 U.S.C. § 1337(a) (antitrust), and 15 U.S.C. § 15 (antitrust).  This Court

14 | also has jurisdiction over Cedar's state law claims pursuant to 28 U.S.C. § 1367 because such

15 | state law claims are related to, and form part of, the same case or controversy.

16 | 7.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial

17 | portion of the acts alleged herein took place in this district and RMI and Wabtec carry out

18 | interstate trade and commerce in this district.  Venue also is appropriate in this district under

19 | Section 12 of the Clayton Act, 15 U.S.C. § 22 (nationwide venue for antitrust matters).  Further,

20 | venue is proper in this district because RMI sued Cedar in this judicial district on the basis of

21 | RMI's Transportation Management System ("TMS"), which is the subject of Cedar's

22 | Counterclaim and Third-Party Complaint.

23 | **III.     NATURE OF THE ACTION**

24 | 8.     Cedar was founded in 2017 to develop Optiswitch, an innovative yard

25 | optimization tool for shortline railroads that leverages artificial intelligence.

26 |

27 |

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 39
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    9.    Optiswitch relies on inventory data from Transportation Management Systems

2  ("TMSs") in order to operate.  A TMS is a railcar inventory management system used by

3  railroads to automate their daily operations.

4    10.    Shortline railroads are Class II and Class III railroads with reporting marks, as

5  defined by the Surface Transportation Board of the United States ("STB").  Shortline railroads

6  are distinct from Class I railroads, such as BNSF Railway Company and Norfolk Southern, as well

7  as from third-party switchers, which move railcars within a rail yard, but not longer distances.

8    11.    RMI is the dominant TMS provider for shortline railroads in the United States.

9  However, over the course of approximately the last 15 years, RMI has allowed its TMS product,

10  RailConnect, and its customer service to languish.

11    12.    Rather than innovate or improve its services, RMI has engaged in a campaign of

12  anticompetitive conduct in order to maintain its dominant position and stifle competition from

13  the only two major vendors who have attempted to compete with it.  In 2016, RMI acquired its

14  only meaningful existing competitor, ShipXpress, and shortly thereafter terminated ShipXpress'

15  TMS product, Command.  When Cedar launched a competing, innovative, cost-effective TMS

16  product in 2020, RMI initiated an aggressive campaign to lock up shortline railroad customers in

17  new multi-year contracts, thereby foreclosing them from switching to Cedar's new product.

18  RMI purposefully timed its actions to sabotage Cedar's launch of its competing product and to

19  put Cedar out of business.  RMI has also tried on numerous occasions to acquire Cedar, just as it

20  did ShipXpress.  RMI has now filed a baseless lawsuit against Cedar with the intent of interfering

21  with Cedar's business and eliminating RMI's only real competitor in the market for TMS

22  products for shortline railroads.

23    13.    Cedar's Counterclaim and Third-Party Complaint arises from RMI and Wabtec's

24  pattern of unfair, unlawful, and anticompetitive actions against its competitors in the market

25  for TMS products for shortline railroads, including but not limited to Cedar.  Upon information

26  and belief, and as described below, RMI and Wabtec's intentional conduct has severely harmed

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 40
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  competition, and will continue to cause injury to current and potential future competitors and

2  customers by substantially foreclosing competition in the market for TMS products for shortline

3  railroads.

4                          **IV.    FACTUAL ALLEGATIONS**

5  **A.    TMS Products Are the Backbone of a Shortline Railroad's Business and RMI Is the**
   **Dominant TMS Provider for Shortline Railroads Despite Antiquated Technology, Poor**
6  **Customer Service, and High Prices**

7        14.    A TMS is a railcar inventory management system used by railroads to automate

8  their daily operations.  A TMS tracks rail car events, movements, and rail tracks; calculates

9  revenue owed to the railroad; handles invoicing; and provides business intelligence.  Shortline

10  railroads send and receive all of their electronic data interchange ("EDI") messages to and from

11  other railroads via their TMS.  Without the ability to send and receive EDI, a shortline railroad

12  has no way of knowing which trains are coming and going from its rail yards or what to do with

13  the railcars once they arrive.  Thus, a shortline railroad is unable to function without a TMS.[2]

14        15.    RMI is the dominant TMS provider for shortline railroads in the United States.

15  RMI introduced the first major shortline TMS, RailConnect, in 1992.

16        16.    On information and belief, RMI has over an 80% share of the market for TMS

17  products for shortline railroads in the United States (the "Shortline Railroad TMS Market").  In

18  March 2018, Jen Schopfer, Vice President of GE's Transport Logistics division (RMI's parent

19  company until February 2019), described RMI's customer base as "virtually all" shortline

20  railroads in the United States.[3]

21        17.    RMI's current parent company, Wabtec, is a global corporation with over 100

22  subsidiaries, 27, 000 employees in 50 countries, net sales of $8.2 billion in 2019, and a market

23  capitalization value of over $16 billion.[4]

24

[2] *See* **Exhibit 1** (McCrory Declaration) ¶ 30; **Exhibit 2** (Mahlandt Declaration) ¶ 3.
25
[3] Daniel Niepow, *Short Lines Band Together to Leverage Big Data*, Progressive Railroading (March 15, 2018),
   https://www.progressiverailroading.com/internet-digital/article/Short-lines-band-together-to-leverage-Big-Data--
26  54114.
[4] *See* Wabtec Corporation, Annual Report (Form 10-K) (Feb. 19, 2021), https://ir.wabteccorp.com/static-
27  files/45820bca-d006-48f0-b02f-6112e1ba8932.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 41
Case No. 2:21-cv-00437-TSZ

Terrell Marshall Law Group PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

18.     RailConnect was originally developed in 1992 using a "green screen" interface, which relies on manually entered commands, similar to MS-DOS.  Over the years, RMI attempted to graft more user-friendly interfaces onto RailConnect's 1992-vintage software without success.

19.     RailConnect has become an outdated product, as RMI has failed to update its software to meet customer demands.  RMI's customers have also complained that its customer service has deteriorated over time.[5]

20.     Customers have long wanted an alternative to RailConnect because it is outdated, difficult to use, and overpriced.  In 2015, GE created a Customer Advisory Board in response to complaints from shortline railroad customers who were dissatisfied with RailConnect.[6]  However, RMI has not delivered requested changes or updates to RailConnect under either GE or Wabtec ownership.

21.     Shortline railroads measure efficiency by analyzing metrics like railcar dwell time, or the amount of time a railcar sits in the yard, and the overall number of railcars the yards are able to process.  The more railcars that move through, the more revenue the yard makes.[7] Shortline railroads cannot maintain, much less improve, efficiency without innovative TMS technology and competent customer service.

**B.      RMI Acquired and Eliminated its Only Meaningful Competitor in the Shortline Railroad TMS Market**

22.     Before Cedar existed, RMI's only meaningful competitor was ShipXpress, which gained a foothold in the Shortline Railroad TMS Market in the 2010s by offering a less expensive alternative TMS product called Command.[8]  Between 2010 and 2016, ShipXpress gained approximately 100 shortline railroad customers for Command.  On information and belief, Command cost roughly half as much as RMI's RailConnect TMS product.

---

[5] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶ 28; ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶¶ 5-7.
[6] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶¶ 5-6.
[7] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶ 33.
[8] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶ 8.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 42
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    23.    Rather than compete with ShipXpress, RMI decided to squelch the competition

2  by acquiring ShipXpress in 2016.  After the acquisition, on information and belief, RMI raised

3  the price of Command, and allowed the product and customer service to deteriorate.

4    24.    After Wabtec acquired RMI, it announced in late 2019 or early 2020 that it would

5  discontinue Command and told Command customers their only option was to switch to RMI's

6  RailConnect.[9]

7  **C.    Cedar's Founders Designed Optiswitch to Integrate with TMS Software**

8    25.    Mario Ponticello and Daril Vilhena founded Cedar in 2017 to build Optiswitch, a

9  yard optimization tool for shortline railroads.  Optiswitch utilizes artificial intelligence to analyze

10  the inventory in a rail yard and tell operators how to move railcars efficiently, a process that has

11  historically been handled manually with pen and paper.  Optiswitch is not a TMS, but instead an

12  innovative complement to a TMS that can automate inventory and rail yard management.

13    26.    Optiswitch requires up-to-the-minute inventory data to function.  Optiswitch

14  needs to know which cars are on which track, what commodities the cars contain, and where

15  the cars are going to create an efficient switching plan for the yard.  Rail yards receive inventory

16  data from EDI messages sent by other railroads.  EDI messages use standardized fields and

17  codes to maintain data uniformity throughout the railroad industry.  Once received via EDI,

18  inventory data is stored in the railroad's TMS.

19    27.    Optiswitch uses inventory data that has been exported from a TMS into a static

20  source, such as a comma-separated values (CSV) file.  Data exported from a TMS into CSV

21  format is known as a "snapshot" file.  However, exported inventory data becomes obsolete the

22  moment a single rail car moves, so snapshot files have to be produced at regular intervals (e.g.,

23  every five minutes) to keep up with current inventory.

24    28.    At a minimum, Optiswitch requires the following fields to work: station, track,

25  sequence (order of car on the track), car initial and number, car length, gross weight, load

26

27  ---
[9] *See* ECF No. 31-2, **Exhibit 2** (Mahlandt Declaration) ¶ 8.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 43
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   status, STCC (commodity code), and block (block name from the car's trip plan).[10]  These are

2   standard fields used by all railroads in the United States and recognized by every TMS, and are

3   intended to maintain consistency among the shortline railroads.  Optiswitch also allows for

4   additional optional fields that Class I railroads generally have, such as car priority or track

5   distance matrices.

6   **D.     Cedar Marketed Optiswitch with RMI's Permission and Participation**

7          29.     Cedar was eager, and needed, to work cooperatively with RMI due to RMI's

8   dominant share of the Shortline Railroad TMS Market.  In April 2018, Cedar approached RMI

9   about integrating Optiswitch with its TMS product, RailConnect.

10         30.     Beginning in May 2018, RMI provided access to snapshot data feeds for 15 of

11  Cedar's potential customers.  RMI provided Cedar with unique login credentials to access

12  snapshot data feeds for 15 railroads interested in using Optiswitch in concert with RMI's TMS,

13  RailConnect.  The login credentials provided Cedar access to an external FTP server where

14  RailConnect automatically uploaded and stored the snapshot data files.  The login credentials

15  did not provide Cedar access to RMI's internal servers or the RailConnect TMS program.  Cedar

16  created a program that downloaded each railroad's snapshot data files from the external FTP

17  server at regular intervals and imported the data into Optiswitch.

18         31.     On May 4, 2018, Steve Murray, Cedar's Executive Vice President, sought

19  "express approval" for an Optiswitch pilot project for RMI customer, Longview Junction Switch

20  Railroad (LVSW), in an email to RMI Customer Success Manager, Larry Cantu:

21              [W]e would develop a prototype of [Optiswitch] for LVSW to
22              evaluate.  This process requires an interface from RailConnect of
                current inventory information.   We have proposed using the
23              snapshot file via ftp, as that's a common interface that other GE
                Customers [sic] use to feed data to external systems.  I have
24              added a line in the MOU to make sure we're very clear that we

25

26

---

[10] *See* ECF No. 31-4, **Exhibit 4** (Optiswitch Minimum Interface Specification).

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 44
CASE NO. 2:21-cv-00437-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    will treat RailConnect information, all business processes, and
     the LVSW data as confidential.[11]

2  Mr. Cantu responded "[a]s far as we are concerned we do not see any conflict with the

3  proposal."[12]

4       32.     Following this exchange, Mr. Murray corresponded with Andrew Parker, Senior

5  Director of Technical Product Management at RMI, about the EDI fields needed for the

6  snapshot file.[13]  In a subsequent email including the customer, LVSW, Mr. Murray explained:

7  "What we're talking about below with Andrew is simply a data feed, basically a switch list; I

8  don't need or want access to TMS for that."[14]

9       33.     Cedar continued to market Optiswitch to customers throughout 2018 and 2019.

10  Each time Cedar began working with a new railroad, RMI provided FTP login credentials either

11  directly to Cedar or through the customer so that Cedar could access a snapshot data feed for

12  that customer.  RMI did so on each occasion without raising any concerns with Cedar.

13       34.     For example, between December 2018 and November 2018, RMI provided Cedar

14  with unique login credentials to access snapshot data feeds for at least the following:  Grafton

15  and Upton ("GU") and Port Harbor Railroad ("PHRR");[15] Gardendale Railroad ("GRD");[16] Cedar

16  Rapids & Iowa City Railroad ("CIC");[17] Central Maine and Quebec Railway ("CMQ");[18] Port

17  Terminal Railroad Association ("PTRA");[19] Texas North Western Railway ("TXNW");[20] and

18  Portland Terminal Railroad Company ("PTRC").[21]

19

20  ─────────────────
[11] See ECF No. 31-5, **Exhibit 5** (May 4, 2018 email RE: Cedar AI MOU with LVSW).
21  [12] See ECF No. 31-5, **Exhibit 5** (May 4, 2018 email RE: Cedar AI MOU with LVSW).
[13] See ECF No. 52-1 at H, **Exhibit 6** at 4 (May 27, 2018 email RE: GE-RMI Generated Data – LVSW).
22  [14] See ECF No. 52-1 at H, **Exhibit 6** at 1 (May 27, 2018 email RE: GE-RMI Generated Data – LVSW).
[15] See ECF No. 31-7, **Exhibit 7** (Dec. 7, 2018 email FTP for Online Snapshot); see also ECF No. 31-8, **Exhibit 8** (Dec.
23  10, 2018 email Re: FTP for Online Snapshot); and ECF No. 31-9, **Exhibit 9** (Dec. 10, 2018 email  FTP for GU and
   PHRR).
24  [16] See ECF No. 31-10, **Exhibit 10** (Dec. 19, 2018 email RE: GRD Snapshot Feed).
[17] See ECF No. 31-11, **Exhibit 11** (Jan. 16, 2019 email RE: AEI FTP for CIC).
25  [18] See ECF No. 31-12, **Exhibit 12** (Jan. 16, 2019 email RE: CMQ); see also ECF No. 31-13, **Exhibit 13** (Jan. 29, 2019
   email RE: Access).
26  [19] See ECF No. 31-14, **Exhibit 14** (Feb. 13, 2019 email RE: FTP for Snapshot for PTRA).
[20] See ECF No. 31-3, Evans Decl., Ex. C (Apr. 11, 2019 email RE: FTP).
27  [21] See ECF No. 31-15, **Exhibit 15** (Oct. 10, 2019 email RE: PTRC access).

35.     Once activated, the snapshot data feeds were updated and downloaded by Cedar from the FTP server automatically, without requiring manual entry of login credentials each time.

36.     As Cedar continued to optimize the Optiswitch product and work with its customers, it became clear that the snapshot data feeds were insufficient for high-volume rail yards because the data became stale almost immediately because it was not a real-time data feed.  Customers wanted the TMS data to be sent to Optiswitch continuously, and wanted Optiswitch to be able to send data regarding inventory back to the TMS in real time.[22]  Cedar and its customers realized that an application programming interface ("API") between RailConnect and Optiswitch, which could exchange real-time data automatically, was necessary for Optiswitch to work as designed and as customers sought and needed.

37.     On information and belief, RMI customers are prohibited from or otherwise unable to provide their TMS data to Cedar directly.

**E.      RMI Abruptly Terminated Cedar's Access to the Snapshot Feeds**

38.     Although RMI authorized Cedar's access to the snapshot data feeds it used with its Optiswitch customers, Cedar was aware that RMI could unilaterally terminate the data feeds at any time.  RMI's sudden termination of Command demonstrated its willingness to abruptly terminate for its own benefit services customers need and rely on, which heightened concerns about the possibility of similar abrupt action affecting the data feeds needed for Optiswitch.

39.     The instability and uncertainty of this situation prevented Cedar from entering into Optiswitch contracts with potential customers that used the RailConnect TMS, which represented over 80% of Cedar's target customer base.

40.     On August 6-7, 2019, Brandon Parker, Andrew Parker, Jeremiah Dirnberger, and Nichole Peterson of RMI met with representatives from Cedar and mutual customer Portland Terminal Railroad Association ("PTRA") to discuss linking Optiswitch and RailConnect through

---

[22] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶ 9.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 46
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  an API. David McCrory of PTRA explained what functionality he wanted to incorporate into

2  Optiswitch and RailConnect and the parties discussed the feasibility of implementing his

3  requested changes and replacing the snapshot data feeds with a continuous data exchange.[23]

4  PTRA offered to pay for this improved data exchange.[24]

5       41.    Following the meeting, Cedar, PTRA, and RMI communicated about the API

6  project for one to two months. In late September 2019, RMI abruptly stopped responding to

7  requests for updates. After one additional follow-up with PTRA on December 6, RMI stopped

8  communicating with Cedar and PTRA entirely and the project stalled.[25]

9       42.    Without an API, Optiswitch could not work as designed and the RailConnect

10  customers who were using the product could not use it as intended.

11  **F.   Cedar Developed its Own TMS After Negotiations with RMI Failed**

12       43.    By early 2020, Cedar realized that without a reasonable guarantee of continued

13  data sharing with RMI and an API that would enable real-time data feeds for customers' own

14  TMS data, it could not move forward with Optiswitch unless it developed its own TMS. As a

15  result, Cedar began developing a new TMS platform, called Automated Rail Management

16  System ("ARMS").

17       44.    In January 2020, Cedar won a competitive bid to build a modern TMS for

18  Terminal Railroad of St. Louis ("TRRA"). TRRA was a RMI customer until 2015, when it switched

19  to ShipXpress' Command product. When RMI informed TRRA it was terminating Command,

20  TRRA chose to explore alternative TMS vendors.[26]

21       45.    Cedar's software engineers possess decades of experience from Amazon,

22  Google, Microsoft, Uber, and Docker. Furthermore, many of Cedar's employees have deep

23  experience in the rail industry, having worked at both railroads and other rail technology

24

25  ---

[23] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶¶ 13-16.

26  [24] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶ 17.

[25] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶¶ 18-22; ECF No. 52-1 at G, McCrory Decl. Ex. A.

27  [26] *See* ECF No. 31-2, **Exhibit 2** (Mahlandt Declaration) ¶¶ 4-5, 7-8.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 47
CASE NO. 2:21-CV-00437-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  companies.  Cedar's combined expertise in software development and the rail industry—

2  coupled with its existing brand and customer relationships within the Shortline Railroad TMS

3  Market from its Optiswitch product—gave Cedar a novel perspective on data management and

4  problem solving that allowed it to create its modern TMS, ARMS, in record time.

5  46.  ARMS is a full-featured inventory and revenue TMS platform for railroads that

6  serves as a single source of truth for a railroad's inventory, and supports electronic data

7  interchange across connecting railroads.  ARMS offers a simplified, user-friendly system.

8  Railroad employees can become proficient in using ARMS in approximately 30 to 60 minutes,[27]

9  whereas railroad employees took weeks to become proficient in using RMI's product,

10  RailConnect.

11  47.  On information and belief, ARMS is also approximately 10-15% less expensive

12  than RailConnect, making it an appealing and competitively-priced alternative to RailConnect.

13  48.  Even before commercially launching ARMS, Cedar sold TMS services to five

14  additional railroads, including three with RMI accounts:  Burlington Junction Railway, City of

15  Rochelle Railroad, Farmrail Corporation, Grainbelt Corporation, and North Shore Railroad

16  Company.  None had previously tried Optiswitch or had a snapshot data feed from RMI that

17  Cedar could access.

18  49.  ARMS was a success.  Cedar migrated its first customers onto ARMS in June

19  2020.

20  **G.     RMI Abruptly Terminated Cedar's Access to the Snapshot Feeds**

21  50.  While RMI halted development of an API between Optiswitch and RailConnect in

22  late 2019, from late 2019 until November 2020, RMI did not terminate Cedar's access to the

23  snapshot feeds and never told Cedar it was no longer authorized to access the feeds.  The data

24  feeds continued to update automatically, despite the fact that the RMI customers who had

25  tried Optiswitch were no longer using the product and no one was utilizing the data feeds.

26

27  [27] *See* ECF No. 31-2, **Exhibit 2** (Mahlandt Declaration) ¶ 16.

1    51.    On information and belief, on November 4, 2020, RMI unilaterally reset the FTP

2    login credentials for the railroads that had been using Optiswitch, without prior notice.

3    **H.    RMI Used Coercive Means To Keep Dissatisfied Customers Locked-in to RailConnect**

4    52.    Cedar's development of ARMS in early 2020 coincided with RMI's sun-setting of

5    the ShipXpress TMS, Command, and efforts to force Command customers onto the RMI TMS,

6    RailConnect.  Upon learning about Cedar's new TMS, ARMS, several Command customers,

7    including TRRA, wanted to switch to ARMS.[28]

8    53.    When RMI learned that some ShipXpress customers planned to let their

9    contracts expire and then switch to ARMS, it sent notice of termination letters to those

10   customers, notifying them that if they did not sign a new multi-year contract for RailConnect,

11   their TMS services would be terminated in 60 days.  RMI sent such a notice of termination letter

12   to TNW Corporation ("TNW") on January 13, 2021, stating that TNW's TMS services would be

13   terminated in 60 days unless it executed an amendment to extend its contract's original four-

14   year term.[29]  On information and belief, RMI sent similar letters to other Command customers.

15   54.    It typically takes about six months to build out a TMS for each new customer and

16   for the customer to transition to the new system.  Because it was impossible for Command

17   customers to switch to ARMS within 60 days (as RMI knew) and they could not suffer a

18   shutdown of their TMS, these railroads had no choice but to contract with RMI or cease

19   operations.

20   55.    In early- to mid-2021, RMI sent similar notice of termination letters to

21   RailConnect customers whose contracts were about to become "evergreen," meaning that

22   when the initial contract term expired, it would become month-to-month.  Like with the

23   Command customers, these letters threatened to cut off the RMI customers' TMS services if

24   they did not sign a new multi-year contract for RailConnect.  RMI sent PTRA such a letter in or

25

26   [28] *See* ECF No. 31-2, **Exhibit 2** (Mahlandt Declaration) ¶¶ 8, 11.
27   [29] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶ 14, ECF No. 52-1 at E, Evans Decl. Ex. A (Jan. 13, 2021 Non-renewal letter from Wabtec to TNW).

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 49
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    around March 2021, threatening to terminate PTRA's access to RailConnect unless PTRA

2    executed a new three-year contract.[30]

3          56.    RMI knows that railroads must have a TMS in order to conduct business and that

4    it typically takes more than 60 days for a railroad to switch TMS products.[31]  It leveraged that

5    knowledge by threatening to discontinue service unless customers committed to a new multi-

6    year contract for RailConnect.  It purposefully timed its notice of termination letters to reach

7    customers before Cedar had time to move additional customers onto ARMS, thereby seeking to

8    lock-in customers to RailConnect and put Cedar out of business.

9          57.    It is not feasible for shortline railroads to use more than one TMS product at one

10   time.  On information and belief, most shortline railroads could not afford the cost of running

11   two TMS products simultaneously and would not choose to operate duplicative operating

12   systems, as it would create a risk of inconsistencies and incur substantial cost and inefficiencies.

13   Thus, by forcing shortline railroads into signing multi-year contracts, RMI is foreclosing those

14   customers from its competitors, including Cedar.  In other words, RMI's contracts with its

15   RailConnect customers are, at least, de facto exclusive agreements that effectively foreclose

16   competition from competing TMS providers for at least the term of those agreements.

17         58.    On information and belief, RMI also deters railroads from seeking an alternative

18   TMS service provider by charging onerous early termination fees for cancelling a contract with

19   RMI.  Exorbitant early termination fees deter railroads that otherwise might seek TMS services

20   from another vendor.

21         59.    RMI has also sought to deter railroads from switching TMS service providers by

22   restricting customers' access to their historical data after leaving RMI.[32]  Railroads must have

23   access to historical data in order to conduct their business.  For example, railroads rely on

24   historical data to create reports regarding business trends, growth, and revenue; and railroads

25

26   [30] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶¶ 29-31.

     [31] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶ 15; ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶ 30.

27   [32] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶¶ 19-20; ECF No. 52-1 at F, Evans Decl. Ex. B.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 50
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    often search historical data at the request of shippers who, for example, need to know the

2    location or status of a particular railcar on a certain date.  Railroads cannot risk a lack of access

3    to their historical data.[33]

4            60.     When TNW notified RMI that it would not renew its RailConnect contract, TNW

5    requested a copy of its historical data or, alternatively, offered to pay RMI to keep TNW's old

6    data online.  RMI refused, making TNW 's transition from RailConnect to ARMS particularly

7    painful.[34]  Similarly, when TRRA decided to switch to ARMS, RMI made its transition

8    unnecessarily difficult by sending TRRA's historical data to Cedar in a disorganized format.[35]  On

9    information and belief, RMI has deterred other railroads considering switching TMS providers

10   from leaving RMI by threatening to withhold their historical data or charge an exorbitant price

11   for access to it.

12           61.      Shortline railroad customers have told Cedar that they want to switch to ARMS,

13   but cannot because of RMI's conduct.

14   **I.      Wabtec Attempted to Acquire Cedar**

15           62.     Since late 2019, Wabtec has made several overtures to acquire Cedar.

16           63.     During discussions with Wabtec in 2019 that were purportedly related to

17   integrating Optiswitch and RailConnect, it became clear that Wabtec was not willing to enter

18   into a data-sharing arrangement with Cedar, but was instead focused on acquiring Cedar.

19           64.     After Cedar won the bid with TRRA in January 2020 and began developing ARMS,

20   Wabtec reached out (after falling silent in late 2019) to propose further discussions between

21   the parties.  On May 13, 2020, Brandon Parker, Senior Director of Product Management at

22   Wabtec, emailed Steve Murray of Cedar on behalf of Wabtec Vice President Scott Holland to

23   schedule "an informative discussion with yourself and the Cedar AI team … to gain [an]

24

25

26   [33] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶¶ 21-24.

     [34] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶¶ 19-20, 22-24; ECF No. 52-1 at F, Evans Decl. Ex. B.

27   [35] *See* ECF No. 31-2, **Exhibit 2** (Mahlandt Declaration) ¶ 15.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 51
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    informative understanding of Cedar AI's product offering/strategy, to allow a better

2    understanding of potential alignments."[36]

3          65.    Wabtec requested that the parties sign a mutual non-disclosure agreement in

4    advance of the meeting, which Cedar agreed to.[37]

5          66.    On May 21, 2020, the Cedar team met with Mr. Holland who told Cedar to

6    "stay in [its] lane" and focus on rail yard optimization (i.e., Optiswitch), rather than railcar

7    management (i.e., ARMS).  Daril Vilhena, Cedar's co-CEO, pointed out that Cedar had no choice

8    but to create its own TMS because RMI refused to sell access to the inventory data that

9    Optiswitch relies on.  Wabtec again expressed interest in acquiring Cedar, but Cedar indicated it

10   was not interested and the meeting ended with no planned follow-up.

11         67.    On October 16, 2020, Mr. Holland contacted Mario Ponticello, Cedar's co-CEO

12   and CFO, to "hear how things are going and chat a bit about what we are doing on this end."[38]

13   Mr. Ponticello had a phone call with Mr. Holland shortly thereafter, in which Mr. Holland again

14   raised the possibility of acquisition and Mr. Ponticello again declined.

15         68.    These discussions all preceded RMI's November 4, 2020 cut-off of Cedar's access

16   to the snapshot data feeds.

17         69.    On March 5, 2021, nearly five months after RMI unilaterally cut off the data

18   feeds, Mr. Holland contacted Mr. Ponticello once again to propose purchasing Cedar, and Cedar

19   once again declined.[39]

20         70.    Cedar has refused all of Wabtec's offers for various reasons, including concern

21   that RMI would terminate ARMS as it did with ShipXpress's TMS product, Command, after

22   acquiring it.  Cedar has developed an innovative, cost-effective TMS product for shortline

23   railroads that already has growing demand and that is positioned to pose substantial

24

---

25   [36] *See* ECF No. 31-16, **Exhibit 16** (May 13, 2020 email from Brandon Parker RE: Wabtec/Cedar AI Meeting).
     [37] *See* ECF No. 31-16, **Exhibit 16** (May 15, 2020 email from Steve Murray to Brandon Parker RE: Wabtec/Cedar AI
26   Meeting).
     [38] *See* ECF No. 31-17, **Exhibit 17** (Oct. 16, 2020 email from Scott Holland to Mario Ponticello RE: Time to Catch Up).
27   [39] *See* ECF No. 31-18, **Exhibit 18** (Mar. 5, 2021 email from Scott Holland to Mario Ponticello RE: Quick Call?).

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 52
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  competition to RMI in the Shortline Railroad TMS Market, which RMI continues to dominate.

2  Cedar is unwilling to allow RMI to again shut down competition as it did with Command.

3  **J.      RMI's Lawsuit Against Cedar is Part of its Scheme to Stifle Competition**

4         71.     RMI commenced this lawsuit against Cedar on April 1, 2021, alleging that Cedar

5  improperly accessed and used RMI's confidential data in an attempt to gain an unfair

6  competitive advantage.  RMI initiated the lawsuit less than a month after Cedar declined

7  Wabtec's most recent acquisition offer.  On information and belief, RMI filed the lawsuit

8  because Cedar refused Wabtec's repeated acquisition overtures.  The lawsuit is part of a

9  scheme by RMI to foreclose competition from Cedar and a means to intimidate, harass, and

10 coerce Cedar into selling itself to Wabtec or to drive Cedar out of business with burdensome

11 legal fees, thereby eliminating RMI's only real competitor in the Shortline Railroad TMS Market.

12        72.     On information and belief, RMI realized that Cedar was a viable competitor in

13 the Shortline Railroad TMS Market after Cedar launched ARMS in June 2020.  Until that point,

14 without its own TMS, Cedar was at the mercy of RMI and, thus, subject to its control under the

15 threat of RMI terminating the snapshot data feeds.

16        73.     On information and belief, after RMI learned of Cedar's successful

17 implementation of ARMS, it decided to cry foul over Cedar's supposed reliance on the snapshot

18 data feeds.  However, the snapshot data feeds were unnecessary for the development of

19 ARMS.

20        74.     RMI authorized Cedar to access the snapshot data feeds, but filed this lawsuit

21 anyway.

22        75.     RMI asserted numerous allegations that are contradicted by facts known to RMI

23 and Wabtec, such as: (1) Optiswitch is not a TMS; (2) GE, Wabtec, and RMI employees granted

24 Cedar access to multiple railroads' TMS snapshot data via an external FTP server; (3) the

25 snapshot data feeds were active from various dates in 2018 and 2019 until November 2020,

26 when RMI claims it "discovered" the feeds and shut them down; (4) Cedar was not accessing

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 53
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  these railroads' actual TMS systems in RailConnect because the snapshot data was uploaded to

2  a completely separate external FTP server; (5) it would be impossible to reverse-engineer a

3  database program as complex as a TMS from the inventory data contained in a snapshot file;

4  and (6) the snapshot files Cedar had access to did not contain proprietary "car hire data."

5        76.     On April 1, 2021, RMI filed its motion for expedited discovery (Dkt. 2) and the

6  original complaint (Dkt. 1).  RMI told the Court that it had allegedly noticed "unusual activity on

7  [TMS]...namely more frequent logins and an abnormal spike in the frequency and volume of

8  data being downloaded."  (Dkt. 2 at 1:25-2:1.)  RMI also represented to the Court that the only

9  way it could identify the Doe defendants was to issue a subpoena to Amazon Web Services.  *Id.*

10  at 2:18-20.  In fact, RMI knew that the snapshot data feeds had been set up for Cedar's

11  Optiswitch users and that the feeds automatically updated at frequent intervals to keep the

12  inventory data as accurate as possible, which would account for a large volume of simultaneous

13  downloads occurring on 15 different railroad logins.

14        77.     RMI filed the complaint against nascent competitor Cedar even though RMI

15  knew that many of the factual allegations against Cedar were untrue.

16        78.     RMI's lawsuit against Cedar is objectively baseless and intended to interfere with

17  Cedar's business.

18  **K.**    **The Relevant Antitrust Market and RMI's Market Power**

19        79.     There is a relevant antitrust market for TMS products for shortline railroads

20  ("Shortline Railroad TMS Market").  TMS products for shortline railroads provide unique,

21  specialized functionality and tools required by shortline railroads with distinct and complex

22  needs including, but not limited to, handling railcars at the last-mile portion of a rail network,

23  interchanging data with Class I railroads, car ordering, car history, waybilling support,

24  load/release/rebill processing, track control, complete inventory management, customer

25  management, complex revenue management, and business intelligence.  Because of these

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 54
CASE NO. 2:21-cv-00437-TSZ

**TERRELL MARSHALL LAW GROUP PLLC**
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

**MORRISON & FOERSTER LLP**
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   specific features, there is no other product that is a reasonably interchangeable substitute for

2   TMS products for shortline railroads.

3        80.    The Shortline Railroad TMS Market is distinct from the TMS market for Class I

4   railroads, such as BNSF Railway Company and Norfolk Southern.  Class I railroads design and

5   maintain their own bespoke TMS products, while shortline railroads typically use outside

6   vendors to supply a TMS.  In addition, there are a small number of shortline railroads that are

7   provided free access to a Class I TMS product and, thus, are not included in the relevant

8   Shortline Railroad TMS Market.

9        81.    Shortline railroads are also distinct from third-party switchers.  Third-party

10   switchers move railcars within a rail yard, but are not intended for moving trains over a longer

11   distance, and are not legally considered Class II or Class III railroads by the STB.  Accordingly,

12   third-party switchers have much less complex needs than shortline railroads, which have to be

13   able to interconnect with numerous Class I and other shortline railroads.  This requires a much

14   broader set of EDI data and complex industry messaging with Railinc, a subsidiary of the

15   Association of American Railroads ("AAR").  Thus, a TMS designed for use by a third-party

16   switcher would be insufficient to meet the needs of a shortline railroad, and companies that

17   provide TMS products designed for use by third-party switchers do not compete in the for

18   Shortline Railroad TMS Market.

19        82.    The relevant geographic market is the United States.  Domestic shortline

20   railroads source TMS products exclusively within the United States.  There are no international

21   companies that offer TMS products designed for shortline railroads operating within the United

22   States.  Shortline railroads can and do source TMS products from suppliers located anywhere

23   within in the United States because TMS products are software solutions that can be created,

24   customized, and used remotely from any location within the United States.

25        83.    The Shortline Railroad TMS Market is highly concentrated and comprised of a

26   small number of market participants.  RMI has long held and continues to hold a dominant and

27

1   controlling position in the Shortline Railroad TMS Market.  On information and belief, RMI has

2   controlled over 80% share of the Shortline Railroad TMS Market for at least 10 years.

3        84.     Today, Cedar is RMI's only major competitor in this market with an estimated

4   market share of approximately 4%.  RMI acquired its only other major competitor in the

5   Shortline Railroad TMS Market, ShipXpress, and terminated its TMS product, Command, in

6   2020.  There are a small number of fringe suppliers in the Shortline Railroad TMS Market, but

7   these providers are not considered viable competitors by shortline railroads.

8        85.     Since RailConnect's launch in the early 1990s, RMI's market position has been

9   protected by high barriers to entry and expansion.  Developing a full-fledged TMS is an

10  enormous undertaking because it is the core processing center for a railroad's entire business

11  operations.  Thus, it requires specialized expertise and an investment of capital and time to

12  create and maintain a TMS product that can only be marketed to a limited audience.  Cedar has

13  spent millions of dollars on developing ARMS.

14       86.     Joey Evans of TNW explored the possibility of creating a TMS for TNW's shortline

15  railroad, TXNW, in 2019 and determined that it was not feasible because it would take too long

16  and cost millions of dollars.[40]

17       87.     Cedar represents a competitive threat to RMI because it was able to overcome

18  these substantial barriers to entry by leveraging its employees' unique combination of software

19  engineering experience and shortline railroad expertise—as well as its brand and relationships

20  with shortline railroads with respect to Optiswitch—to create a new TMS product in record

21  time.  Cedar is the only supplier to break into the Shortline Railroad TMS Market in the last

22  decade.

23       88.      RMI's dominant market share has given it the ability to exercise price control

24  and charge supracompetitive prices for RailConnect for years.  On information and belief,

25  Command cost approximately half as much as RailConnect prior to ShipXpress's acquisition.

26

27  [40] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶ 11.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 56
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   Cedar's TMS, ARMS, costs approximately 10-15% less than RailConnect.  Despite its antiquated

2   technology, poor customer service, and refusal to respond to customers' requests for product

3   improvements, RMI continues to charge a premium price for RailConnect.

4         89.     Switching TMS products is an enormous and costly undertaking for a shortline

5   railroad.  The railroad has to ensure that historical data is transferred into the new system and

6   replicate all reporting and operational processes, which are typically customized by customer.

7   It also has to train employees on the new system.[41]  It is also a costly undertaking, not just

8   because the railroad is licensing a new product.

9         90.     In addition to these costs, the process of switching TMS products creates

10  burdens and significant risks to a shortline railroad, including potentially severe and costly

11  disruptions to its operations.  While a TMS is offline, the railroad cannot function.  When a

12  railroad is unable to function, inventory gets backed up, transportation delays snowball, and rail

13  shippers incur fees for demurrage.

14        91.     The transition to a new TMS typically takes at least six months because a TMS

15  must be customized for each railroad.

16        92.     Thus, the difficulty, costs, and risk of switching TMS products deters railroads

17  from seeking out alternatives to the system with which they are familiar, even if the alternative

18  is more efficient, innovative, and cost effective.

19        93.     RMI has monopoly power over the vast majority of shortline railroads that are

20  locked-in to RailConnect due in part to the significant costs and burdens of changing from one

21  TMS product to another and the risk that RMI will terminate RailConnect before the railroad

22  can transition to a new TMS, should RMI suspect they are seeking to do so.

23        94.     If RMI is allowed to persist in its pattern of anticompetitive acts and successfully

24  extinguishes the competitive threat from Cedar, it will send a strong signal to other potential

25

26

27  [41] *See* ECF No. 31-3, **Exhibit 3** (Evans Declaration) ¶ 15.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 57
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  future market entrants that competition is futile, thereby further cementing its market

2  dominance and perpetuating the harm to competition and ultimately customers.

3  **L.     RMI's Anticompetitive Conduct Causes Harm to Competition and Consumers**

4         95.     As detailed above, RMI, GE, and Wabtec have engaged in a pattern of

5  anticompetitive conduct and substantially harmed competition in the Shortline Railroad TMS

6  Market.

7         96.     RMI, acting through its parent GE, acquired its only existing competitor,

8  ShipXpress, in 2016 and, on information and belief, then raised the price for its TMS product,

9  Command.  Following Wabtec's acquisition of GE in February 2019, Wabtec terminated

10  Command altogether, thereby eliminating the only competitive shortline TMS product on the

11  market at the time.

12        97.     Wabtec has similarly sought to eliminate Cedar as a nascent competitor through

13  acquisition, making several overtures to Cedar since 2019.

14        98.     Unable to eliminate Cedar through acquisition, as it had done with ShipXpress,

15  RMI initiated a campaign to lock customers into new, multi-year contracts, knowing that those

16  customers would then be foreclosed from switching to Cedar's new TMS product, ARMS.  RMI

17  sent notice of termination letters to customers, threatening to terminate their TMS service

18  unless the customers signed new contracts for RailConnect.  RMI's efforts had its intended

19  effect, forcing unwilling customers, including PTRA, to sign new RailConnect contracts rather

20  than switch to the product that they wanted and that better meets their needs at a lower cost:

21  ARMS.[42]

22        99.     RMI purposefully timed its notice of termination letters to reach customers

23  before Cedar had time to migrate more than a handful of customers onto ARMS, thereby

24  seeking to lock-in customers to RailConnect; sabotage its only viable competitor, ARMS; and

25  put Cedar out of business.

26

27  _____
[42] *See* ECF No. 31-1, **Exhibit 1** (McCrory Declaration) ¶¶ 30-31.

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    100.    RMI has also sought to deter railroads from switching TMS service providers by

2    restricting customers' access to historical data after leaving RailConnect and making their

3    transition to a new TMS product unnecessarily painful.  On information and belief, this conduct

4    is having a chilling effect on shortline railroads contemplating leaving RailConnect for ARMS,

5    and RMI controls over 80% of the Shortline Railroad TMS Market.

6    101.    RMI's conduct has allowed it to exercise price control, exclude competition, and

7    eliminate or substantially reduce customer choice, and will have the effect of inhibiting

8    technical innovation, increasing costs, reducing quality, and reducing output in the Shortline

9    Railroad TMS Market.

10   102.    RMI has substantially harmed competition in the Shortline Railroad TMS Market,

11   and that reduction in competition has harmed actual and potential competing suppliers,

12   including Cedar, as well as railroad customers.

13   103.    There are no procompetitive benefits for RMI's conduct, which serves only to

14   force customers to use a TMS product that is antiquated, inadequate, and supracompetitively-

15   priced.

16   **V.    COUNTERCLAIMS AND THIRD-PARTY CLAIMS FOR RELIEF**

17   **FIRST CLAIM FOR RELIEF**

18   **(Monopolization in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2))**

19   104.    Cedar repeats and incorporates by reference all preceding paragraphs and

20   allegations.

21   105.    RMI provides a Shortline Railroad TMS product that is used by Class II and Class

22   III railroads in the United States, RailConnect.   Upon information and belief, RMI's Shortline

23   Railroad TMS product, RailConnect, has an over 80% share of the Shortline Railroad TMS

24   Market.  Further, on information and belief, RMI has profitably charged prices above the

25   competitive level in the Shortline Railroad TMS Market for a sustained amount of time.  As a

26   consequence, RMI possesses monopoly power in the Shortline Railroad TMS Market.

27

1   106.   Along with a dominant share of the market, RMI also wields monopoly power

2   because of the high costs and risk of business disruption a shortline railroad must incur in order

3   to switch to an alternative TMS provider.  As a result of its hold on the Shortline Railroad TMS

4   Market, RMI has the ability to control prices, exclude competition, and reduce customer choice.

5   107.   Cedar offers a unique competitive threat to RMI's dominance in the Shortline

6   Railroad TMS Market, and RMI has acted aggressively and anticompetitively to extinguish that

7   threat and preserve its monopoly power.  Cedar offers a competitive Shortline Railroad TMS

8   product, ARMS.  However, a high quality, competitive Shortline Railroad TMS product may not

9   be enough to cause a shortline railroad to move away from RMI because of the costs,

10  complexities, and risks associated with switching products.  Cedar's unique position stems from

11  its simplified user-friendly technology, reduced costs, and strong reputation among shortline

12  railroad customers.  As a result, Cedar offers customers a more seamless and risk-free

13  alternative to transition away from RMI.  RMI thus has engaged in ongoing efforts to undermine

14  Cedar, impair its products, interfere with prospective customers, and impede its ability to

15  compete fairly for shortline railroad customers.

16  108.   RMI has similarly interfered with the ability of other providers to compete

17  effectively on the merits of their products.  For example, in 2016, RMI acquired ShipXpress, a

18  competitor that also offered TMS services to shortline railroads, and after Wabtec acquired RMI

19  in 2019, it discontinued ShipXpress's competing TMS product, Command.

20  109.   Likewise, Wabtec has attempted to acquire Cedar, making multiple overtures

21  since 2019.  Like it did with ShipXpress, Wabtec is attempting to eliminate the competitive

22  threat to RailConnect from ARMS through acquisition.

23  110.   Not confident that it can either compete with Cedar on the merits or eliminate it

24  through acquisition, RMI has taken additional steps to eliminate ARMS before it gains a

25  foothold in the market.  When RMI learned that former ShipXpress customers intended to

26  switch to Cedar's ARMS product, RMI threatened to terminate these customers' TMS services if

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 60
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    they did not sign a new multi-year contract for RailConnect.  Upon information and belief, RMI

2    has also coerced customers into signing long-term contracts with substantial early termination

3    fees, thereby preventing customers from switching to alternative suppliers.  In addition, RMI

4    has restricted customers' access to historical data and made their transition to a new TMS

5    product unnecessarily painful, seeking to deter those and other customers from switching TMS

6    providers.

7         111.   RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic

8    designed to exclude competition in the relevant market.

9         112.   RMI has willfully maintained its monopoly power through exclusionary conduct

10   designed to foreclose competition, to gain a competitive advantage, and to destroy competitors

11   in the Shortline Railroad TMS Market.  RMI's actions have had and continue to have the effect

12   of injuring the competitive process in the entire relevant market and depriving shortline

13   railroad customers of free choice.  By creating barriers to customers seeking alternatives to its

14   outdated and inefficient TMS, RMI has used its monopoly level of power to force many

15   railroads that would prefer a more innovative TMS product to instead continue to use RMI's

16   services.  Further, RMI's anticompetitive conduct has foreclosed competitors, including but not

17   limited to Cedar, from competing in a substantial share of the market.  Overall, RMI's pattern of

18   anticompetitive conduct has reduced (and continues to reduce) customer choice in the

19   Shortline Railroad TMS Market, and will have the effect of inhibiting technical innovation,

20   increasing costs, reducing quality, and reducing output.  Furthermore, RMI's conduct does not

21   improve its product, efficiency, or ability to compete on the merits of its Shortline Railroad TMS

22   product.  To the contrary, RMI is exercising monopoly power to prevent Cedar from competing

23   on the merits and foreclosing the benefits that free competition would bring to the market.

24   RMI's unlawful conduct has caused and will continue to directly and proximately cause injury or

25   loss to interstate commerce and shortline railroad customers.

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 61
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    113.   The conduct set forth above constitutes unreasonable and anticompetitive

2 means by which RMI is willfully maintaining dominant monopoly power in the Shortline

3 Railroad TMS Market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

4    114.   As a result of RMI's unlawful acts and the damage it has caused to free and fair

5 competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to

6 suffer direct and tangible injury.  Cedar is entitled to injunctive and monetary relief, including

7 treble damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16.  Cedar's damages are

8 not speculative and will be proven at trial.

9                            **SECOND CLAIM FOR RELIEF**

10   **(Attempted Monopolization in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2))**

11   115.   Cedar repeats and incorporates by reference all preceding paragraphs and

12 allegations.

13   116.   To the extent that RMI does not already have monopoly power, in the

14 alternative, there is a dangerous probability that RMI will achieve monopoly power in the

15 relevant Shortline Railroad TMS Market.  RMI's anticompetitive conduct threatens to

16 substantially eliminate competition in Shortline Railroad TMS Market and further establish

17 RailConnect as the dominant TMS product.

18   117.   RMI has engaged in anticompetitive conduct with the specific intent to obtain

19 monopoly power through exclusionary and anticompetitive means.  In 2016, RMI acquired its

20 only major competitor, ShipXpress, and subsequently terminated ShipXpress's competing TMS

21 product, Command.  When Cedar launched a competing TMS product in 2020, RMI initiated an

22 aggressive campaign to lock-up shortline railroad customers in new multi-year contracts,

23 thereby foreclosing them from switching to Cedar's new product.  RMI purposefully timed its

24 actions to sabotage Cedar's launch of its competing product and put Cedar out of business.

25

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 62
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

118.    Wabtec has repeatedly attempted to acquire Cedar, including after it launched ARMS, hoping to stifle a competitive threat to RMI's dominance in the Shortline Railroad TMS Market.

119.    RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic designed to exclude competition in the relevant market.

120.    RMI's actions have had and continue to have the effect of injuring the competitive process in the entire relevant market and depriving customers of free choice.  By creating barriers to customers seeking alternatives to its outdated and inefficient TMS, RMI seeks to force many railroads that would prefer a more innovative TMS product to instead continue to use RMI's services.  Further, RMI's anticompetitive conduct has foreclosed competitors, including Cedar, from competing in a substantial share of the market, thereby creating a dangerous probability that RMI will achieve monopoly power in the relevant Shortline Railroad TMS Market.

121.    Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to reduce) customer choice in the Shortline Railroad TMS Market, and will have the effect of cementing RMI's dominance in the market, inhibiting technical innovation, increasing costs, reducing quality, and reducing output.

122.    RMI's unlawful conduct has caused and will continue to directly and proximately cause injury or loss to interstate commerce, competitors, and shortline railroad customers.

123.    The conduct set forth above constitutes unreasonable and anticompetitive means by which RMI has attempted to monopolize the Shortline Railroad TMS Market, in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

124.    As a result of RMI's unlawful acts and the damage it has caused to free and fair competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to suffer direct and tangible injury.  Cedar is entitled to injunctive and monetary relief, including

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 63
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  treble damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16.  Cedar's damages are

2  not speculative and will be proven at trial.

3  **THIRD CLAIM FOR RELIEF**

4  **(Monopolization in Violation of WASH. REV. CODE § 19.86.040)**

5       125.    Cedar repeats and incorporates by reference all preceding paragraphs and

6  allegations.

7       126.    RMI provides a Shortline Railroad TMS product that is used by Class II and Class

8  III railroads in the United States, RailConnect.  Upon information and belief, RMI's Shortline

9  Railroad TMS product, RailConnect, has an over 80% share of the Shortline Railroad TMS

10  Market.  Further, on information and belief, RMI has profitably charged prices above the

11  competitive level in the Shortline Railroad TMS Market for a sustained amount of time.  As a

12  consequence, RMI possesses monopoly power in the Shortline Railroad TMS Market.

13       127.    Along with a dominant share of the market, RMI also wields monopoly power

14  because of the high costs and risk of business disruption a shortline railroad must incur in order

15  to switch to an alternative TMS provider.  As a result of its hold on the Shortline Railroad TMS

16  Market, RMI has the ability to control prices, exclude competition, and reduce customer choice.

17       128.    Cedar offers a unique competitive threat to RMI's dominance in the Shortline

18  Railroad TMS Market, and RMI has acted aggressively and anticompetitively to extinguish that

19  threat and preserve its monopoly power.  Cedar offers a competitive Shortline Railroad TMS

20  product, ARMS.  However, a high quality, competitive Shortline Railroad TMS may not be

21  enough to cause a shortline railroad to move away from RMI because of the costs,

22  complexities, and risks associated with switching products.  Cedar's unique position stems from

23  its simplified user-friendly technology, reduced costs, and strong reputation among shortline

24  railroad customers.  As a result, Cedar offers customers a more seamless and risk-free

25  alternative to transition away from RMI.  RMI thus has engaged in ongoing efforts to undermine

26

27

1  Cedar, impair its products, interfere with prospective customers, and impede its ability to

2  compete fairly for shortline railroad customers.

3       129.    RMI has similarly interfered with the ability of other providers to compete

4  effectively on the merits of their products.  For example, in 2016, RMI acquired ShipXpress, a

5  competitor that also offered TMS services to shortline railroads, and after Wabtec acquired RMI

6  in 2019, Wabtec discontinued ShipXpress's competing TMS product, Command.

7       130.    Likewise, Wabtec has made repeated overtures to attempt to acquire Cedar.

8  Like it did with ShipXpress, Wabtec is attempting to eliminate the competitive threat to

9  RailConnect from ARMS through acquisition.

10       131.    Not confident that it can either compete with Cedar on the merits or eliminate it

11  through acquisition, RMI has taken additional steps to eliminate ARMS before it gains a

12  foothold in the market.  When RMI learned that former ShipXpress customers intended to

13  switch to Cedar's ARMS product, RMI threatened to terminate these customers' TMS services if

14  they did not sign a new multi-year contract for RailConnect.  Upon information and belief, RMI

15  has also coerced customers into signing long-term contracts with substantial early termination

16  fees, thereby preventing customers from switching to alternative suppliers.  RMI's lawsuit

17  against Cedar is yet another anticompetitive tactic designed to exclude competition in the

18  relevant market.  In addition, RMI has restricted customers' access to historical data and made

19  their transition to a new TMS product unnecessarily painful, seeking to deter those and other

20  customers from switching TMS providers.

21       132.    RMI has willfully maintained its monopoly power through exclusionary conduct

22  designed to foreclose competition, to gain a competitive advantage, and to destroy competitors

23  in the United States market.  RMI's actions have had and continue to have the effect of injuring

24  the competitive process in the entire relevant market and depriving shortline railroad

25  customers of free choice.  By creating barriers to customers seeking alternatives to its outdated

26  and inefficient TMS, RMI has used its monopoly level of power to force many railroads that

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 65
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  would prefer a more innovative TMS product to instead continue to use RMI's services.

2  Further, RMI's anticompetitive conduct has foreclosed competitors, including Cedar, from

3  competing in a substantial share of the market.  Overall, RMI's pattern of anticompetitive

4  conduct has reduced (and continues to reduce) customer choice in the Shortline Railroad TMS

5  Market, and will have the effect of inhibiting technical innovation, increasing costs, reducing

6  quality, and reducing output.  Furthermore, RMI's conduct does not improve its product,

7  efficiency, or ability to compete on the merits of its Shortline Railroad TMS product.  To the

8  contrary, RMI is exercising monopoly power to prevent Cedar from competing on the merits

9  and foreclosing the benefits that free competition would bring to the market.  RMI's unlawful

10  conduct has caused and will continue to directly and proximately cause injury or loss to

11  interstate commerce and shortline railroad customers.

12         133.    The conduct set forth above constitutes unreasonable and anticompetitive

13  means by which RMI is willfully maintaining dominant monopoly power in the Shortline

14  Railroad TMS Market, in violation of Washington's Consumer Protection Act (CPA), WASH. REV.

15  CODE § 19.86.040.

16         134.    As a result of RMI's unlawful acts and the damage it has caused to free and fair

17  competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to

18  suffer direct and tangible injury.  Cedar is entitled to injunctive and monetary relief, including

19  treble damages and attorneys' fees, and civil penalties pursuant to WASH. REV. CODE

20  §§ 19.86.090 and 19.86.140.  Cedar's damages are not speculative and will be proven at trial.

21                                 **<u>FOURTH CLAIM FOR RELIEF</u>**

22              **(Attempted Monopolization in Violation of WASH. REV. CODE § 19.86.040)**

23         135.    Cedar repeats and incorporates by reference all preceding paragraphs and

24  allegations.

25         136.    To the extent that RMI does not already have monopoly power, in the

26  alternative, there is a dangerous probability that RMI will achieve monopoly power in the

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 66
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1 relevant Shortline Railroad TMS Market.  RMI's anticompetitive conduct threatens to

2 substantially eliminate competition in Shortline Railroad TMS Market and further establish

3 RailConnect as the dominant TMS product.

4        137.    RMI has engaged in anticompetitive conduct with the specific intent to obtain

5 monopoly power through exclusionary and anticompetitive means.  In 2016, RMI acquired its

6 only major competitor, ShipXpress, and subsequently terminated ShipXpress's competing TMS

7 product, Command.   When Cedar launched a competing TMS product in 2020, RMI initiated an

8 aggressive campaign to lock-up shortline railroad customers in new multi-year contracts,

9 thereby foreclosing them from switching to Cedar's new product.  RMI purposefully timed its

10 actions to sabotage Cedar's launch of its competing product and put Cedar out of business.

11       138.    Wabtec has repeatedly attempted to acquire Cedar, including after it launched

12 ARMS, hoping to stifle a competitive threat to RMI's dominance in the Shortline Railroad TMS

13 Market.

14       139.    RMI's baseless lawsuit against Cedar is yet another anticompetitive tactic

15 designed to exclude competition in the relevant market.

16       140.    RMI's actions have had and continue to have the effect of injuring the

17 competitive process in the entire relevant market and depriving customers of free choice.  By

18 creating barriers to customers seeking alternatives to its outdated and inefficient TMS, RMI

19 seeks to force many railroads that would prefer a more innovative TMS product to instead

20 continue to use RMI's services.  Further, RMI's anticompetitive conduct has foreclosed

21 competitors, including Cedar, from competing in a substantial share of the market, thereby

22 creating a dangerous probability that RMI will achieve monopoly power in the relevant

23 Shortline Railroad TMS Market.

24       141.    Overall, RMI's pattern of anticompetitive conduct has reduced (and continues to

25 reduce) customer choice in the Shortline Railroad TMS Market, and will have the effect of

26

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 67
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1  cementing RMI's dominance in the market, inhibiting technical innovation, increasing costs,

2  reducing quality, and reducing output.

3      142.    RMI's unlawful conduct has caused and will continue to directly and proximately

4  cause injury or loss to interstate commerce, competitors and shortline railroad customers.

5      143.    The conduct set forth above constitutes unreasonable and anticompetitive

6  means by which RMI has attempted to monopolize the Shortline Railroad TMS Market, in

7  violation of Washington's Consumer Protection Act (CPA), WASH. REV. CODE §  19.86.040.

8      144.    As a result of RMI's unlawful acts and the damage it has caused to free and fair

9  competition in the Shortline Railroad TMS Market, Cedar has suffered and will continue to

10  suffer direct and tangible injury.  Cedar is entitled to injunctive and monetary relief, including

11  treble damages and attorneys' fees, and civil penalties pursuant to WASH. REV. CODE

12  §§ 19.86.090 and 19.86.140.  Cedar's damages are not speculative and will be proven at trial.

13              **FIFTH CLAIM FOR RELIEF**

14      **(Refusal to Deal in Violation of Section 2 of the Sherman Act (15 U.S.C. § 2))**

15      145.    Cedar repeats and incorporates by reference all preceding paragraphs and

16  allegations.

17      146.    RMI is the dominant player in the Shortline Railroad TMS Market, with over 80%

18  market share.  Along with a dominant share of the market, RMI also wields monopoly power

19  because of the high costs and risk of business disruption a shortline railroad must incur in order

20  to switch to an alternative TMS provider.  As a result of its hold on the Shortline Railroad TMS

21  Market, RMI has the ability to control prices and exclude competition.  Accordingly, RMI

22  possesses monopoly power in the Shortline Railroad TMS Market.

23      147.    RMI engaged in a voluntary course of dealing with Cedar from 2018 to 2020.  In

24  2018, Cedar told RMI about Optiswitch and how it could complement RailConnect and benefit

25  RMI's RailConnect customers by analyzing the inventory data that railroads stored in their

26  TMSs.  RMI expressed interest in a strategic business alignment, and from May 2018 to

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 68
CASE NO. 2:21-CV-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

November 2020, RMI provided TMS inventory data via snapshot feeds to Cedar for 15 railroads to enable them to use Optiswitch.  However, RMI rejected Cedar's and customers' repeated attempts to reach a commercial agreement to pay for real-time access to the data exported from RailConnect, conditioning such an arrangement on Wabtec acquiring Cedar.  In November 2020, RMI suddenly and without warning reset all the FTP login credentials for those railroads and denied Cedar access to the snapshot data feeds.  RMI abruptly terminated Cedar's data access only after Cedar launched its own competing shortline railroad TMS product, ARMS.

148.    RMI has forsaken short-term profits by refusing to enter into a data-sharing arrangement with Cedar under which Cedar or customers would pay for access to data exported from RailConnect, in an attempt to harm Cedar and prevent Cedar from successfully launching Optiswitch and gaining a toehold with shortline railroad customers.

149.    RMI unilaterally terminated a voluntary and potentially profitable course of dealing with Cedar, acting against its economic interest.  RMI has no legitimate business rationale for refusing to deal with Cedar.

150.    RMI's actions have had and continue to have the effect of injuring the competitive process and depriving shortline railroad customers of free choice, inhibiting technological innovation, and reducing quality and output.  Furthermore, RMI's conduct does not improve its product, efficiency, or ability to compete on the merits.  RMI's unlawful conduct has caused and will continue to directly and proximately cause injury or loss to interstate commerce and shortline railroad customers.

151.    RMI's refusal to deal with Cedar violates the Sherman Act, 15 U.S.C. § 2.

152.    As a result of RMI's unlawful acts, Cedar has suffered and will continue to suffer direct and tangible injury.  Cedar is entitled to injunctive and monetary relief, including treble damages and attorneys' fees, pursuant to 15 U.S.C. §§ 15 and 16.  Cedar's damages are not speculative and will be proven at trial.

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 69
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1

**SIXTH CLAIM FOR RELIEF**

2

**(Tortious Interference with Business Expectancy)**

3       153.    Cedar repeats and incorporates by reference all preceding paragraphs and

4 allegations.

5       154.    RMI has intentionally interfered with Cedar's business relationships and

6 expectancies with respect to its Optiswitch and ARMS products.

7       155.    Cedar had business expectancies with at least 15 railroads that were enthusiastic

8 about using Cedar's rail yard switching optimization program, Optiswitch.  In 2018, Cedar told

9 RMI about Optiswitch and how it could benefit shortline railroad customers by analyzing the

10 inventory data that railroads store in their TMSs and improving their efficiency.  RMI provided

11 inventory data to Cedar for 15 RailConnect customers, all of which began using Optiswitch, but

12 Cedar could not execute contracts with those railroads because RMI refused to enter into a

13 data-sharing arrangement with Cedar, and Cedar's continued access to the railroads' data was

14 therefore unreliable.  Initially, RMI expressed interest in a strategic business alignment, but it

15 strung along Cedar and its railroad customers for nearly two years until it became clear that

16 those customers would never be able to use Optiswitch with RailConnect permanently.

17       156.    RMI intentionally prevented Cedar from realizing these business expectancies

18 even though Optiswitch was not in direct competition with RailConnect.  In fact, Optiswitch

19 depended on snapshot data feeds exported from RailConnect to operate and would have

20 provided a huge increase in value for railroads that used RailConnect in conjunction with

21 Optiswitch.

22       157.    On November 4, 2020, RMI unilaterally revoked Cedar's authorization to use

23 TMS inventory data via snapshot data feeds that they had previously granted for the 15

24 railroads trying Optiswitch by resetting the FTP login credentials for those railroads without

25 notice.  This revocation cut off those railroads' ability to use Optiswitch.  RMI's conduct,

26 therefore, caused these 15 railroads to end their business relationships with Cedar.

27

1    158.    RMI's conduct prevented Cedar from continuing to market Optiswitch because

2    RMI already controlled over 80% of the Shortline Railroad TMS Market.

3    159.    RMI has also intentionally interfered with Cedar's ability to market and enter

4    into contracts for its TMS product, ARMS.  When RMI learned that some former ShipXpress

5    customers, such as TNW, were going to let their RMI contracts expire and then switch to ARMS,

6    RMI sent notice of termination letters to those customers, threatening them with termination

7    of services unless they signed a new multi-year contract with RMI.  RMI employed this tactic as

8    soon as it learned that Cedar had won a bid to create a new TMS for TRRA and would create

9    competition in the Shortline Railroad TMS Market.

10    160.    RMI's conduct, therefore, prevented Cedar from contracting with railroads that

11    seek innovative TMS technology and robust support.  Thus, RMI intentionally interfered for an

12    improper purpose—to harm Cedar and strengthen its monopoly—and caused Cedar to lose

13    potential business opportunities with the railroads, such as TNW, who had expressed interest in

14    switching to ARMS.

15    161.    RMI's intentional interference with Cedar's business expectancies has harmed

16    Cedar by preventing it from realizing a return on its substantial investment in the development

17    of Optiswitch and ARMS.  Cedar's damages are not speculative and will be proven at trial.

18    **SEVENTH CLAIM FOR RELIEF**

19    **(Unfair Methods of Competition in Violation of WASH. REV. CODE § 19.86.020)**

20    162.    Cedar repeats and incorporates by reference all preceding paragraphs and

21    allegations.

22    163.    RMI engaged in unfair methods of competition and deceptive and unfair

23    practices and acts that were injurious to the public interest and did not constitute legitimate

24    business practices.

25    164.    RMI unfairly interfered with Cedar's existing and potential business relationships

26    with existing and potential Optiswitch customers.  After Cedar developed Optiswitch, RMI

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 71
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    expressed interest in a strategic business alignment with Cedar and provided TMS inventory

2    data for 15 railroads using RailConnect.  But RMI refused to link Optiswitch and RailConnect

3    through an API or other real-time data-sharing arrangement unless Wabtec acquired Cedar.

4    This prevented Cedar from entering into contractual relationships with those 15 railroads.  In

5    November 2020, RMI revoked Cedar's authorization to use TMS inventory data without notice

6    by unilaterally resetting the FTP login credentials for those railroads and thus preventing those

7    railroads from using Optiswitch.  RMI's actions were deceptive and unfair, and not justified by

8    any legitimate business purpose.

9          165.    RMI's deceptive and unfair practices prevented railroads from benefiting from

10   Optiswitch's groundbreaking rail yard optimization tool, causing injury to railroads and the

11   public.

12         166.    Cedar has been injured directly by RMI's deceptive and unfair practices with

13   respect to Optiswitch, including the loss of existing business relationships with 15 railroads and

14   potential business relationships with countless other railroads.

15         167.    In addition, RMI has acquired and willfully maintained a monopoly in the

16   Shortline Railroad TMS Market through unfair methods of competition.  For example, RMI

17   acquired its only existing competitor in the market, ShipXpress, and retired its competing

18   product.  Wabtec has similarly attempted to acquire Cedar in order to thwart its competitive

19   threat in the Shortline Railroad TMS Market.  RMI also threatened to terminate its existing

20   customers' TMS services unless they agreed to sign multi-year contracts with RMI, effectively

21   precluding them from switching to an alternative TMS supplier like Cedar.  RMI has also coerced

22   customers into signing long-term contracts with substantial early termination fees, which

23   prevents customers from switching to alternative suppliers, and has restricted customers'

24   access to their historical data, which deters customers from switching TMS providers.  RMI's

25   lawsuit against Cedar is yet another anticompetitive tactic designed to exclude competition in

26   the relevant market.  As alleged above, Cedar took substantial and reasonable steps to enter

27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 72
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1   the Shortline Railroad TMS Market and has been injured directly by RMI's unfair methods of

2   competition.

3       168.    Cedar is entitled to injunctive and monetary relief, including treble damages and

4   attorneys' fees, and civil penalties pursuant to WASH. REV. CODE §§ 19.86.090 and 19.86.140.

5   Cedar's damages are not speculative and will be proven at trial.

6                               **VI.    PRAYER FOR RELIEF**

7       WHEREFORE, Counterclaim Plaintiff Cedar respectfully requests that judgment be

8   entered in its favor on each of the foregoing claims for relief, and that this Court enter an

9   Order:

10      A.     Enjoining Counterclaim and Third-Party Defendants RMI and Wabtec from

11  engaging in further anticompetitive, tortious and unfair conduct;

12      B.     Awarding Cedar damages in an amount to be proven at trial, trebled pursuant to

13  15 U.S.C. § 15(a) and WASH. REV. CODE § 19.86.090;

14      C.     Awarding Cedar its attorneys' fees, pursuant to at least 15 U.S.C. §§ 15(a) and

15  1117(a), and WASH. REV. CODE § 19.186.150;

16      D.     Awarding Cedar its costs;

17      E.     Awarding Cedar pre- and post-judgment interest, to the extent allowable; and

18      F.     Awarding such other and further relief as equity and justice may require.

19  //

20  //

21  //

22  //

23  //

24  //

25  //

26  //

27

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington  98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com

1    RESPECTFULLY SUBMITTED AND DATED this 28th day of September, 2022.

2
                                    TERRELL MARSHALL LAW GROUP PLLC
3
                                    By: /s/ Adrienne D. McEntee, WSBA #34061
4                                        Beth E. Terrell, WSBA #26759
                                         Email: bterrell@terrellmarshall.com
5                                        Adrienne D. McEntee, WSBA #34061
                                         Email: amcentee@terrellmarshall.com
6                                        Eden B. Nordby, WSBA #58654
                                         Email: enordby@terrellmarshall.com
7                                        936 North 34th Street, Suite 300
                                         Seattle, Washington 98103-8869
8                                        Telephone: (206) 816-6603
                                         Facsimile: (206) 319-5450
9
10                                  MORRISON & FOERSTER LLP
11
                                    By: /s/ Bonnie Lau
12                                       Bonnie Lau (*admitted pro hac vice*)
                                         Email: blau@mofo.com
13                                       Margaret A. Webb (*admitted pro hac vice*)
                                         Email: mwebb@mofo.com
14                                       425 Market Street
                                         San Francisco, CA 94105
15                                       Telephone: (415) 268-7000
                                         Facsimile: (415) 268-7522
16
17                                       David D. Cross (*admitted pro hac vice*)
                                         Email: dcross@mofo.com
18                                       Mary G. Kaiser (*admitted pro hac vice*)
                                         Email: mkaiser@mofo.com
19                                       2100 L Street NW, Suite 900
                                         Washington, DC 20037
20                                       Telephone: (202) 887-1500
                                         Facsimile: (202) 887-0763
21
22
23                                  *Attorneys for Defendants and Counterclaim Plaintiff*
24
25
26
27

DEFENDANTS' ANSWER AND AFFIRMATIVE DEFENSES TO
RMI'S SECOND AMENDED COMPLAINT AND CEDAR'S
COUNTERCLAIM AND THIRD-PARTY COMPLAINT - 74
CASE NO. 2:21-cv-00437-TSZ

TERRELL MARSHALL LAW GROUP PLLC
936 North 34th Street, Suite 300
Seattle, Washington 98103-8869
TEL. 206.816.6603 • FAX 206.319.5450
www.terrellmarshall.com

MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA  94105-2482
TEL. 415.268.7000 • FAX 415.268.7522
www.mofo.com