1

2

3

4

5

6

7

8

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

9

RAILCAR MANAGEMENT, LLC,

Plaintiff,

vs.

CEDAR AI, INC., MARIO PONTICELLO, DARIL VILHENA, and YI CHEN,

Defendants.

Case No. 2:21-cv-00437-TSZ

THIRD AMENDED COMPLAINT

JURY DEMAND

10

11

12

13

14

15

CEDAR AI, INC.,

Counterclaim Plaintiff,

vs.

RAILCAR MANAGEMENT, LLC, GE TRANSPORTATION, and WABTEC CORPORATION,

Counterclaim and Third-Party Defendants.

16

17

18

19

20

21

22

23

24        Plaintiff Railcar Management, LLC ("RMI") alleges and complains against Defendants

25   Cedar AI, Inc. ("Cedar"), Mario Ponticello, Daril Vilhena, and Yi Chen (collectively, "individual

26

THIRD AMENDED COMPLAINT - 1

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Defendants" and, together with Cedar, "Defendants"), on knowledge as to itself and its actions and on information and belief as to all other matters as follows:

**NATURE OF THE ACTION[1]**

1. This case began as a "Doe" complaint to confirm the identity of the intruders who had accessed RMI's computer systems without authorization and caused a harmful spike in data downloaded from an RMI file transfer protocol ("FTP") site in November 2020. The preliminary information RMI obtained in this lawsuit confirmed that Cedar and the individual Defendants were responsible for that incident. Subsequently, discovery has revealed that Cedar and the individual Defendants' unlawful practices go much further than the November 2020 incident alone.

2. In addition to unlawfully obtaining data from the FTP site over the course of months, Cedar surreptitiously accessed RMI's proprietary transportation management system ("TMS"), RailConnect TMS ("RailConnect"), a password-protected, core operational software system for paying customers (railroads). RailConnect, among other things, processes, compiles, and formats electronic data that railroads use to manage day-to-day operations, including rail and intermodal processes, signal and communication assets, railcar repair billing and inventory, and multi-modal visibility, planning, and execution for industrial shippers and logistics services.

3. Cedar also offers railroads a TMS, Automated Rail Management System ("ARMS"). Since its inception, Cedar has hired multiple former employees of RMI's former and current parent company, General Electric Company ("GE") and Wabtec Corporation ("Wabtec"), respectively.

4. In March 2020, Wabtec sent a letter to Cedar's co-chief executive officers ("co-CEOs"), Pontiello and Vilhena, stating that it "has strong concerns about the potential misuse of

---

[1] On May 18, 2023, the Court dismissed RMI's CFAA § 1030(a)(5)(C) claim without prejudice and with leave to amend. The Court ordered that "[a]ny amended complaint … shall be electronically filed within seven (7) days of the date of this Minute Order." While leave to amend was not expressly limited to the CFAA § 1030(a)(5)(C) claim, RMI has, out of abundance of caution, limited this amended complaint to that CFAA § 1030(a)(5)(C) claim. RMI reserves the right to separately move for leave to file an amended complaint that includes new claims.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Wabtec confidential and proprietary data." Wabtec's letter specifically identified an "unauthorized data feed" (i.e., a snapshot data feed) utilized by Cedar that Wabtec discovered and disabled and noted that the "exfiltrated data was and remains Wabtec confidential and proprietary data." Wabtec demanded that any "Wabtec confidential and proprietary data ... whether in physical or electronic form, be immediately destroyed." Ponticello responded to Wabtec's letter in April 2020. He affirmed that "we do not have access to any of your confidential and proprietary data."

5.     But Cedar did, in fact, have access to RMI's confidential and proprietary data.

6.     As noted above, RMI brought this lawsuit after it detected highly unusual and significantly harmful activity on its RailConnect servers—i.e., more frequent logins to an FTP site that allows customers to download data from RailConnect and an abnormal spike in the frequency and volume of snapshot data downloaded from certain customer accounts. RMI's investigation of that activity identified Amazon Web Services ("AWS")-owned IP addresses for the devices connected to the suspicious logins and downloads that had been occurring for many months. With the Court's permission, RMI subpoenaed AWS to identify the owners of these IP addresses.

7.     A report AWS produced in response to the subpoena, **Exhibit 1** (Dkt. No. 99-1), revealed that Cedar owns the IP addresses in question, that the account for those IP addresses is registered to Vilhena, and that Ponticello is the billing contact for the account.

8.     The report from AWS conclusively proves that Cedar was accessing RMI's computer systems without RMI's authorization and downloading data many months before RMI detected it. Cedar has since confirmed that it used an AWS application to regularly access RMI's snapshot data feeds, download data, and upload them to a cloud storage application—and that Cedar did not stop even after receiving Wabtec's March 2020 letter. Cedar says that its chief technology officer, Chen, introduced a code in November 2020 that changed the download frequency for the snapshot data feeds (more than six months after receiving Wabtec's March 2020 letter).

THIRD AMENDED COMPLAINT - 3

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

9. Remarkably, Cedar has stated in its pleadings in this action that it never accessed RailConnect. Indeed, these statements are included in the pleadings on which the Court granted a partial motion for judgment on the pleadings.

10. RMI's investigation and discovery Cedar produced in this case has revealed that Cedar's statements are demonstrably false. Cedar employees have, in fact, accessed RailConnect thousands of times. In spring 2018, a member of Cedar's executive team, Steve Murray, created unique RailConnect login credentials for himself just before he left GE and started working for Cedar. After Murray joined Cedar, he and/or his Cedar colleagues used those credentials to repeatedly (and improperly) access RailConnect and collect, share, and utilize valuable and confidential information about RailConnect for Cedar's benefit.

11. To be sure, Cedar used confidential information and trade secrets that it stole through its unlawful access to RailConnect and RMI's FTP site to build, conduct demonstrations of, and onboard customers to its products, including its competitive TMS, ARMS. For example, Cedar used its unlawful access to RailConnect to improperly reverse-engineer RailConnect's features and functionality when building ARMS. Cedar also used its improper access to RailConnect to provide unauthorized customer service to RMI customers and used RMI's contract strategy, pricing information, and confidential customer information as a roadmap for its sales strategy.

12. Cedar used its illegal activity and the confidential information and trade secrets it stole from RMI to compete with RMI and poach its customers. The individual Defendants were personally engaged in, directed, or approved all of this unlawful activity.

13. Cedar and the individual Defendants' actions violate the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq*., which, in addition to providing the civil causes of action stated below, imposes criminal liability on intruders like Cedar and the individual defendants. RMI also brings claims under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq*., and the laws of Washington for misappropriation of trade secrets, tortious interference, trespass, and negligence.

THIRD AMENDED COMPLAINT - 4

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

14. RMI seeks damages for the multimillion-dollar losses it has sustained as a result Defendants' unlawful and improper conduct; Defendants' multimillion-dollar ill-gotten gains; punitive damages; preliminary and permanent relief barring Cedar from, among other things, accessing RailConnect and soliciting RMI's customers using stolen data; reasonable attorneys' fees and costs; and pre- and post-judgment interest.

## JURISDICTION AND VENUE

15. This Court has jurisdiction under 28 U.S.C. § 1331, because this action arises from Defendants' violation of the federal statutes identified in this Third Amended Complaint.

16. This action also arises under the laws of Washington. This Court has jurisdiction over those claims under 28 U.S.C. § 1367, because Defendants' conduct giving rise to the state law claims are the same as or related to the activities giving rise to the claims arising under federal law such that they form part of the same case or controversy.

17. Venue for RMI's claims is proper in this district under 28 U.S.C. § 1391(b), because Cedar's principal place of business is in Seattle, Washington, located in this district. The individual Defendants also reside or work for any employer located in Seattle, Washington. In addition, Defendants logged into RMI's systems without authorization from Seattle, Washington.

## PARTIES

18. RMI is a subsidiary of Wabtec, a leading global provider of equipment, systems, digital solutions, and other freight and transit rail services. RMI delivers software and related solutions to optimize its customers' railway operating and maintenance activities. RMI is and was at all times relevant to this action a limited liability company incorporated under the laws of Georgia with its principal place of business in Atlanta, Georgia.

19. Cedar, which offers service and technology to the rail industry, is incorporated under the laws of Delaware and has a principal place of business in Seattle, Washington.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

20.     Mario Ponticello is Cedar's co-CEO and chief financial officer. Ponticello resides in Seattle, Washington.

21.     Daril Vilhena is Cedar's co-CEO. Vilhena resides in Seattle, Washington.

22.     Yi Chen is Cedar's CTO. Chen, on information and belief, resides in or around Seattle, Washington.

## BACKGROUND

### *RailConnect and the FTP site*

23.     As a core operating and communications system, RailConnect automates and tracks the entry of railcar movements and switching operations for RMI's rail customers, allows them to send and receive electronic messages, and provides the railroads high visibility over all rail assets.

24.     RailConnect contains valuable, proprietary, and confidential data that comes into the system as raw electric data messages. RailConnect converts that raw data into data sets and files using RMI's proprietary algorithms and logic. The data in RailConnect relates to, among other things, customers' railcars, including content and location, routing and railroad information, and the origins and destinations of railcars. The data are stored in on-premises RailConnect servers near Atlanta, Georgia and in Ohio.

25.     RailConnect also contains business rules, tables and intelligence, and other proprietary and confidential business and technical information and know-how that RMI has developed.

26.     RailConnect is RMI's propriety, password-protected software, and access to the system is strictly limited to customers that expressly agree in written contracts to, among other things, keep their login credentials to RailConnect strictly confidential and not to provide their login credentials or access to any third parties. RMI's rail customers also pay a fee.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

27.     RMI customers with proper credentials can access RailConnect via desktop software or over the Internet. Despite how the system is accessed, RailConnect conspicuously and explicitly warns those logging into the system that they must have RMI's permission to use it:

> You have accessed the RMI computer system. Access or use of this system is strictly limited to persons having express authorization from RMI. Unauthorized access or use of this system is unlawful and strictly prohibited.

28.     As part of its RailConnect services, RMI provides customers with proper login credentials access to RMI's password-protected FTP site (ftp.railconnect.com). This FTP site allows customers to download data from various folders stored on RailConnect. For instance, RMI customers can program RailConnect to create snapshot data files extracted to the online inventory folder on RailConnect. The customers can then use their user IDs and passwords to log into the FTP site to download those data from the online inventory folder.

29.     The folders that customers may access through the FTP site contain RMI's propriety and confidential information. For instance, the snapshot data file is a compilation of data from RailConnect that RMI has processed, mapped, and organized from raw electronic messages, as well as proprietary data that RMI has created through its algorithms and logic to provide customers the ability to view and understand their data assets and for other reasons.

30.     Other folders in RailConnect contain different proprietary data and reports extracted from the system, such as "switchlist" track reports or "bad order" reports.

31.     RMI assigns each RailConnect user at a rail customer a unique user ID and password to access the system. And RMI provides each customer with a unique user ID and password to access the FTP site.

*The Suspicious and Harmful Activity in November 2020*

32.     While RMI's rail customers routinely access or download data from RailConnect via the FTP Site, on or about November 1, 2020, RMI identified an unusual spike in the frequency and volume of downloads. The incident caused significant and costly harm to RMI, including loss

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

of access to the FTP site and RailConnect. Access to the FTP site was blocked, and customer passwords were changed so that they could not access data from RailConnect through the FTP site.

33. After conducting a preliminary investigation, RMI observed that the unusual activity was triggered by devices oddly requesting simultaneous file downloads from multiple customer accounts, each with unique customer login credentials.

34. Several of RMI's rail customers said they had not logged onto the FTP site or downloaded data. Accordingly, RMI launched an investigation to verify that the downloads it observed were illegitimate and to determine whether an unauthorized person accessed the FTP site and RailConnect, either through the FTP site or separately.

*Forensic Investigation*

35. On or about November 6, 2020, RMI's counsel retained an outside vendor to conduct a forensic investigation to assess the activity on the FTP site further. As part of the investigation, the vendor analyzed RMI's logs and forensic images and deployed endpoint software to capture IP addresses and other pertinent information.

36. RMI discovered through this investigation that there were logins to the FTP site from more than 200 IP addresses owned by AWS from November 1, 2020 to November 3, 2020.

37. RMI also discovered that another series of unexplained logins to the FTP site and data downloads occurred from other AWS-owned IP addresses and at least 23 IP addresses owned by conventional Internet service providers well before it detected the unusual activity in November 2020. IP addresses that logged into the FTP site from locations in Washington were responsible for much of the suspicious activity.

*AWS Subpoena and Confidential Information on Cedar's Website*

38. RMI moved for expedited discovery at the same time it filed the original complaint. After the Court granted that motion, RMI served AWS with a subpoena requesting information to identify the individuals responsible for the suspicious logins and downloads. In particular, RMI

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

asked that AWS identify the persons associated with the 20 unique IP addresses that were most active during the peak of the suspicious activity and data downloads.

39.  AWS responded to the subpoena on June 10, 2021, providing the account registration information associated with the 20 IP addresses RMI identified.

40.  AWS's response confirms, as many at RMI had suspected, that Cedar owns the IP addresses that accessed the FTP site and downloaded data during the suspicious activity RMI detected. The response also indicated that the related account is registered to Vilhena, and Ponticello is listed as the billing contact for the account. *See* **Exhibit 1** (Dkt. No. 99-1).

*RMI's Cease and Desist Letter*

41.  As noted above, on March 31, 2020, Wabtec sent a letter to Ponticello and Vilhena, putting them personally, along with Cedar, on notice of RMI's "strong concerns about the potential misuse of Wabtec confidential and proprietary data." Wabtec's letter specifically identified an "unauthorized data feed" utilized by Cedar that Wabtec had discovered and disabled and noted that the "exfiltrated data was and remains Wabtec confidential and proprietary data." Thus, Cedar knew that Wabtec considered data downloaded via the FTP site "confidential and proprietary." The March 31, 2020 letter is **Exhibit 2** (Dkt. No. 99-2).

42.  Wabtec further demanded in the letter that any "Wabtec confidential and proprietary data … whether in physical or electronic form, be immediately destroyed." Ponticello denied any wrongdoing by Cedar. In an April 14, 2020 letter, **Exhibit 3** (Dkt. No. 99-3), he stated that, "to our knowledge," Cedar did not have "access to any of [RMI's] confidential and proprietary data."

43.  Despite Ponticello's claim, Defendants had been accessing the FTP site to download data and accessing RailConnect by other means when Ponticello told RMI that Cedar did not have access to RMI's proprietary data. Ponticello's statement contradicts the report AWS provided, showing that it assigned Cedar the IP addresses for the devices used to access the FTP and download data during the unusual activity RMI detected. *See* **Exhibit 1** (Dkt. No. 99-1).

THIRD AMENDED COMPLAINT - 9

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Ponticello's statement is also contradicted by the information RMI has learned about Cedar's access to RailConnect.

44. Cedar has since confirmed using an AWS application to access and download snapshot data feeds and upload the files to an AWS cloud storage application regularly. Starting in at least 2018 and 2019, Cedar set up a program to access and upload data from the FTP site for at least 15 railroads. Even after receiving Wabtec's March 2020 letter, *see* **Exhibit 2** (Dkt. No. 99-2), Cedar did not stop logging into the FTP site and downloading data. Accordingly, until November 2020, Cedar continued to access and upload data from the FTP site.

45. Cedar has since said Chen changed the "pull frequency" on the program Cedar set up to download data in December 2019 and introduced a code on November 1, 2020, resulting in Cedar's program downloading data much more frequently. Chen purportedly introduced the code more than six months after receiving Wabtec's March 2020 letter.

46. Chen's actions triggered the highly unusual and significantly harmful spike in activity in November 2020.

47. Cedar has tried to downplay its access to the FTP site throughout this litigation.

48. For instance, Cedar admitted in its operative answer (the "Answer"), "only that Cedar accessed snapshot data feeds for certain railroads from an external FTP server."

49. This statement in the Answer is false.

50. In fact, Cedar employees downloaded other files through the FTP site, including switch lists and bad order reports.

*Cedar's Access to RailConnect*

51. After the November 2020 incident, RMI began investigating whether Cedar accessed RailConnect directly, in addition to via the FTP site.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

52.     During this period, RMI learned that Cedar posted a graphic to its website depicting a RailConnect database. As shown below, the "User" Cedar identified in the picture is "RMIJET," an authentic and unique RailConnect user ID for one of RMI's current employees.



| Station | Zone | Name | Type | User |  |
| --- | --- | --- | --- | --- | --- |
| ABERDMS | YD | YARD | Y | RMIJET | |
| ALPINTX | YARD | ALPIN TEXAS | Y | RMIJET | |
| AMSTEMD | YARD | AMSTERDAM RO. | Y | RMIJET | |
| ANDRES | CLASIF | CLASSIFICATION | C | RMIJET | |
| ANDRES | INTERC | SWITCHING DISTRIC | S | RMIJET | |
| ANDRES | PATIO | YARD | Y | RMIJET | |
| ANT | 001 | ZORA 001 | Y | RMIJET | |
| ATHENS | BBFX | ZORA 002 | Y | RMIJET | |
| AUSTIN | YD | ATHENS | Y | RMIJET | |
| AUSTIN | CALSSI | CLASSIFICATION | C | RMIJET | |
| A0007 | GRALYD | PATIO | C | RMIJET | |
| A0047 | PUBLIC | VIAS PUBLICO | Y | RMIJET | |
| A0333 | YD | YARD | Y | RMIJET | |

53.     But Cedar has been adamant that its employees never accessed RailConnect.

54.     In responding to paragraph 36 of RMI's Second Amended Complaint ("SAC") in the Answer, Defendants "deny they ever accessed RailConnect TMS."

55.     The response to paragraph 36 in the Answer is false.

56.     In the Answer, Cedar also denied paragraph 49 in RMI's SAC, "Cedar and/or other Defendants also accessed [RailConnect] without authorization."

57.     The denial of paragraph 49 in the Answer is also false.

58.     RMI's investigation revealed that Cedar's employees accessed RailConnect without RMI's authorization as early as 2018.

59.     Steve Murray, a former RMI employee and current Cedar executive, created unique user IDs and passwords for himself as he was leaving RMI and starting at Cedar. Murray and/or

THIRD AMENDED COMPLAINT - 11

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  his Cedar colleagues then used those credentials to access RailConnect and log into menu options

2  thousands of times.

3     60.   As discussed below, Cedar employees accessed RailConnect to help Cedar solicit

4  customers and demonstrate and develop its products.

5     61.   Cedar knew it needed RMI's permission to access RailConnect.

6     62.    In an email attached to and incorporated into the Answer, Murray conceded that he

7  needed RMI's "express approval" to access RailConnect.

8     63.   Cedar's employees also saw the text when they accessed RailConnect: "Access or

9  use of this system is strictly limited to persons having express authorization from RMI."

10     *Defendants' Improper Use of RMI's Confidential Information and Trade Secrets*

11     64.   In responding to paragraph 62 of RMI's SAC in the Answer, "Defendants deny that

12  Cedar, or any of its employees or consultants, ever used any data taken from RMI, RailConnect

13  TMS and/or the RailConnect FTP Site to solicit RMI's customers or develop Cedar's client base."

14     65.   This response to paragraph 62 of RMI's SAC in the Answer is false.

15     66.   For example, Murray used his unauthorized access to RailConnect to support multiple

16  RMI customers on RailConnect while working at Cedar. Murray's goal in providing these support

17  services was to drive RMI's customers to Cedar's products.

18     67.   In addition, Cedar developed ARMS using RMI's proprietary, confidential, and trade

19  secret information. For instance, while Cedar claims that RMI authorized Cedar to download

20  snapshot data feeds to complement its rail optimizer software, Optiswitch (which is not true),

21  Cedar, in fact, used the snapshot data feeds to help develop its competing TMS, ARMS. Cedar did

22  so even though it represented to RMI that Cedar had no intention of building a competitive TMS.

23     68.   Significantly, Cedar also used its unlawful access to RailConnect to develop ARMS.

24  Discovery has revealed many examples of Cedar employees accessing RailConnect and using the

25  functionality, algorithms, business rules, and logic within RailConnect to replicate RailConnect's

26

THIRD AMENDED COMPLAINT - 12

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

features in ARMS. And Cedar employees are not merely guessing about or trying to recall how RailConnect works. They accessed RailConnect to gather information. Indeed, exchanges between Cedar employees often include screenshots and confidential information from RailConnect that can only be obtained by logging into RMI's system.

69. As a result of Cedar's wrongful conduct, RMI has lost TMS customer accounts because of Cedar's unlawful and dishonest conduct, resulting in multimillion-dollar losses to RMI, and Cedar has been unjustly enriched by multimillion-dollar ill-gotten gains and avoided various costs, such as any licensing fee for the RMI data and information it instead stole.

**FIRST CAUSE OF ACTION**
**Violation of Computer Fraud and Abuse Act (18 U.S.C. § 1030)**
**(Against Cedar)**

70. RMI realleges and incorporates by reference paragraphs 1 through 69 above.

71. RailConnect and its servers are "protected computer[s]" within the meaning of 18 U.S.C. § 1030(e) as RMI and its customers use the computers in effecting domestic or foreign commerce or communication.

72. Cedar violated 18 U.S.C. §§ 1030(a)(2) and 1030(a)(5) by intentionally accessing RailConnect via the FTP Site without RMI's authorization, or, alternatively, exceeding any access RMI authorized, and downloading data from RailConnect. As noted above, in or around November 2020, RMI discovered highly unusual and harmful activity on the FTP Site. RMI promptly launched an investigation into the activity and identified the IP addresses connected to the unusual activity. RMI learned that AWS owned those IP addresses, so RMI sought expedited discovery from AWS to obtain information about the persons assigned to the IP addresses in question.

73. AWS's subpoena response conclusively demonstrated that the IP addresses for the devices used to access the FTP Site and download data without authorization, or in excess of any authorized access, were assigned to Cedar, registered to Vilhena, and billed to Ponticello.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

74.     Cedar has since admitted that it accessed and downloaded data from RailConnect through the FTP Site and continued to do so until November 2020, even after Wabtec asked Cedar to "immediately destroy[]" any "Wabtec confidential and proprietary data … whether in physical or electronic form." Cedar further admitted that Chen increased the pull frequency for data Cedar was downloading via the FTP Site. While Cedar falsely claims that RMI authorized it to access RailConnect via the FTP site to snapshot data feeds, RMI's investigation has revealed that Cedar, in fact, downloaded other data files through the FTP site.

75.     Cedar also violated 18 U.S.C. §§ 1030(a)(2) and 1030(a)(5) by intentionally accessing RailConnect to obtain data and RMI's proprietary and confidential information via a desktop application or over the Internet without RMI's authorization or, alternatively, exceeding any access RMI authorized. As noted above, RMI investigation of Cedar's access to RailConnect by means other than the FTP site showed that Cedar accessed RailConnect with RMI's permission.

76.     In the action, Cedar has claimed that it never accessed RailConnect.

77.     In truth, Cedar's employees have accessed RailConnect without RMI's authorization since at least 2018.

78.     Cedar employees have accessed menu options in RailConnect without RMI's authorization thousands of times since at least 2018.

79.     Cedar employees have obtained information from RailConnect when accessing the computer without RMI's authorization.

80.     RMI has suffered "damage" and/or "loss" within the meaning of 18 U.S.C. § 1030(e) due to Cedar's unlawfully downloading data through the FTP site. As for damage, for example, the FTP site and RailConnect, and the data contained in RailConnect, were unavailable, because access to the systems were blocked and passwords were reset. Also, the integrity of the data within RailConnect was impaired, because Cedar collected and disseminated that data. RMI has had to take corrective measures to provide the infiltration and gathering of its confidential information.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

81.    Defendants' actions caused RMI loss during a one-year period aggregating at least $5,000.00, such as the cost RMI incurred for its forensic investigation and to restore its systems following the unusual and harmful spike in activity Cedar caused in November 2020, attorneys' fees, the costs of employees who had to devote time from their normal day-to-day activities to investigate and remediate the incident, lost revenues, and other consequential damages.

82.    RMI has suffered "damage" and/or "loss" within the meaning of 18 U.S.C. § 1030(e) due to Cedar's unlawful access to RailConnect by other means. For example, the integrity of the data within RailConnect was impaired, because Cedar collected and disseminated proprietary, confidential, and trade secret information from the system. RMI had to take corrective measures to prevent the infiltration and gathering of its confidential information.

83.    Defendants' actions caused RMI loss during a one-year period aggregating at least $5,000.00, such as the costs of employees who had to devote time from their normal day-to-day activities to investigate and remediate Cedar's unlawful access to RailConnect, attorneys' fees, lost revenue, and other consequential damages.

**SECOND CAUSE OF ACTION**
**Violation of Trade Secret Misappropriation Under**
**Defend Trade Secrets Act (18 U.S.C. § 1836)**
**(Against All Defendants)**

84.    RMI realleges and incorporates by reference paragraphs 1 through 83 above.

85.    RMI has developed and owns confidential, proprietary, and trade secret information contained in RailConnect, including business and technical information, such as compilations of data, business intelligence, algorithms, logic, features, know-how, source, and the login credentials that provide access this information, as well as pricing information, customer lists, and information regarding customer contracts. All this information relates to products or services used in, or intended for use in, interstate commerce by RMI customers across the country.

86.    RMI's confidential, proprietary, and trade secret information is valuable. RMI has implemented access restrictions to protect the information, including contractual restrictions,

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

requiring users to register on RailConnect, providing unique login credentials for each customer, and notifying anyone entering RailConnect that "[a]ccess or use of this system is strictly limited to persons having express authorization from RMI." RMI has expended significant resources and effort to develop RailConnect, the confidential, proprietary, and trade secrets contained in RailConnect, and the access control systems that protect RailConnect from unauthorized intrusion.

87.     RMI's confidential, proprietary, and trade secret information derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, potential competitors or other persons to whom the information would have some economic value. The information at hand had tremendous value to Defendants in their effort to develop a competing TMS and to solicit RMI's customers and develop a client base.

88.     RMI's rail customers that use RailConnect are contractually obligated to maintain the secrecy of their login credentials and other confidential and trade secret information that is contained in or provides access to RailConnect. They are contractually proscribed from sharing RMI's business information, such as pricing information. In addition, RMI's employees are required to keep the company's proprietary and trade secret information confidential.

89.     In violation of RMI's rights under the Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*, Defendants misappropriated RMI's confidential, proprietary, and trade secret information.

90.     Defendants misappropriated RMI's confidential, proprietary, and trade secret information knowing or having reason to know that it was acquired by improper means. Also, when they obtained and used the information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use. That Defendants continued to misappropriate the information after Ponticello claimed Cedar did not have "access to any of [RMI's] confidential and proprietary data" shows

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  that Defendants' acts are willful and rise to the level of maliciousness appropriate for exemplary

2  and punitive damages, including attorneys' fees.

3      91.     As a result of Defendants' misappropriation of RMI's confidential, proprietary, and

4  trade secret information, RMI has suffered actual damages in an amount to be proven at trial. At a

5  minimum, Defendants have gained an improper competitive advantage over RMI, because they

6  have accessed and used RMI's proprietary information to build their competing TMS and to solicit

7  RMI's customers, all without having invested the time, funds, and resources (or, at the very least,

8  not paying RMI a licensing fee) to develop the information.

9      92.     Defendants' ongoing and continuing use of RMI's trade secrets and proprietary and

10 confidential information has caused, and will cause, RMI repeated and irreparable injury. RMI's

11 remedy at law is not, by itself, adequate to compensate for the injuries already inflicted and further

12 threatened. RMI is also entitled to damages for unjust enrichment resulting from Defendants'

13 misappropriation of the trade secrets that are not addressed in computing damages for actual loss.

14 Defendants have unjustly enriched themselves from RMI's information, because they have not

15 invested anything in acquiring or curating the information.

16                              **THIRD CAUSE OF ACTION**
                  **Violation of Trade Secret Misappropriation under Wash. Rev. Stat. § 19.108.010**
17                              **(Against All Defendants)**

18     93.     RMI realleges and incorporates by reference paragraphs 1 through 92 above.

19     94.     As explained above, *supra* at 85-87, RMI has developed and owns confidential,

20 proprietary, and trade secret information that is novel.

21     95.     As explained above, *supra* at 88, RMI has taken reasonable measures to keep such

22 information secret. Also, RMI's trade secret information derives independent economic value by

23 not being generally known to, and not being readily ascertainable through proper means by,

24 another person who could obtain economic value from disclosing or using the information.

25

26

THIRD AMENDED COMPLAINT - 17

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

96. In violation of RMI's rights under the Washington Uniform Trade Secrets Act, Wash. Rev. Code § 19.108.010 *et seq.*, Defendants misappropriated the confidential, proprietary, and trade secret information described above. *Supra* at 90.

97. Defendants' unlawful conduct involved the misappropriation of RMI's trade secret information knowing or having reason to know that it was acquired by improper means. Furthermore, at the time they obtained and used RMI's trade secret information, Defendants knew or had reason to know their knowledge of RMI's trade secrets was derived from or through a person who had utilized improper means to acquire it, acquired it under circumstances giving rise to a duty to maintain its secrecy or limit its use, or derived it from or through a person who owed a duty to RMI to maintain its secrecy or limit its use.

98. Defendants' conduct was intentional, knowing, willful, malicious, fraudulent, and oppressive. As a direct and proximate result of their conduct, RMI has suffered and will continue to suffer irreparable financial loss, loss of goodwill, and irreparable loss of the confidentiality of its proprietary and trade secret information, for which there is no adequate remedy at law.

99. RMI has suffered substantial damages as a direct and proximate result of Defendants' conduct in an amount to be proven at trial. Defendants have also been unjustly enriched by their misappropriation of RMI's trade secrets in an amount to be proven at trial.

### FOURTH CAUSE OF ACTION
#### Conversion
#### (Against All Defendants)

100. RMI realleges and incorporates by reference paragraphs 1 through 99 above.

101. As explained above, *supra* at 85-87, RMI has developed and owns confidential, proprietary, and trade secret information.

102. Defendants misappropriated RMI's confidential, proprietary, and trade secret information described above. *Supra* at 90.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

103.  Defendants willfully interfered with RMI's confidential, proprietary, and trade secret information by intentionally taking and retaining that information without authorization, thereby depriving RMI of exclusive possession of that information.

104.  As a result of Defendants' taking and retaining RMI's confidential, proprietary, and trade secret information from RailConnect via the FTP site and otherwise, RMI has suffered multimillion-dollar business losses and lost profits, as well as losses and costs associated with the unusual and harmful spike caused by Defendants in November 2020.

**FIFTH CAUSE OF ACTION**
**Tortious Interference with Business Relationships**
**(Against All Defendants)**

105.  RMI realleges and incorporates by reference paragraphs 1 through 104 above.

106.  RMI had a legitimate business relationship with its customers and reasonable business expectations derived from those relationships.

107.  Defendants knew about RMI's business relationships, because, among other things, Cedar hired numerous former GE, Wabtec, and RMI employees familiar with RMI's RailConnect customer base. Certain of these employees took confidential information when leaving, including credentials giving them access to RailConnect and information showing when RMI's customer contracts ended.

108.  Defendants intentionally interfered with numerous RMI business relationships for an improper purpose or using improper means, thereby causing a breach or termination of those relationships. Defendants used access to RailConnect via the FTP site and other means to obtain and download data and other confidential and proprietary information they use to do demonstrations for Cedar's products and provide unauthorized customer service to RMI's customers in an attempt to solicit RMI's customers for Cedar's products.

109.  As another example, David McCrory formerly worked at Port Terminal Railroad Association ("PTRA"), an RMI customer. As he neared retirement, McCrory started working with

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Cedar to develop ARMS. During this period, McCrory, acting as a neutral industry professional, interloped in an RFP process for the Terminal Railroad Association of St. Louis ("TRRA") to replace its then-current TMS, RMI's RailSync Command ("Command"). He was, in fact, working for Cedar and received stock options for his assistance with the RFP process. In the RFP process, McCrory provided TRRA false information about RMI to discourage the railroad from selecting RailConnect to replace Command. On the other hand, McCrory did everything he could to encourage TRRA to select Cedar's product, ARMS.

110. Defendants engaged in the conduct described above for an improper purpose and/or with improper means. Defendants' wrongful conduct has significantly harmed RMI. To date, RMI has lost at least 15 customer accounts, representing multimillion-dollar losses in business.

## SIXTH CAUSE OF ACTION
### Trespass to Chattels
### (Against Cedar)

111. RMI realleges and incorporates by reference paragraphs 1 through 110 above.

112. Defendants intentionally accessed RMI's personal property (*i.e.*, RailConnect) without RMI's authorization and improperly obtained data and other confidential and proprietary information in a manner that deprived RMI of its possession and use of the RailConnect servers.

113. In particular, when Chen, acting for Cedar, introduced a malicious code in November 2020 causing the increased frequency of data downloaded from RailConnect through the FTP site, RMI experienced an unusual and harmful spike in activity on the RailConnect servers. This activity deprived RMI of its (and its customers') use of the FTP site to access RailConnect and also required significant and costly remediation efforts.

## SEVENTH CAUSE OF ACTION
### Negligence
### (Against Cedar)

114. RMI realleges and incorporates by reference paragraphs 1 through 114 above.

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

1  115. Cedar owed a duty of reasonable care to RMI when accessing RailConnect via the

2  FTP site and downloading data.

3  116. Cedar breached that duty of reasonable care when Chen, acting for Cedar, increased

4  the download frequency for the data Defendants were accessing through the FTP site in a manner

5  that caused significant and costly harm to RMI's RailConnect servers and required RMI to engage

6  in significant and costly remediation efforts.

7  117. Cedar's breach of its duty of reasonable care resulted in and was the proximate cause

8  of RMI's injury—namely, losses and costs associated with the unusual and harmful spike in

9  activity on the FTP site.

10  **PRAYER FOR RELIEF**

11  **WHEREFORE**, RMI prays for:

12  118. Compensatory damages for losses sustained due to Defendants' improper conduct;

13  119. Exemplary and punitive damages per 18 U.S.C. §§ 1836(b)(3)(C), 2707(c), or any

14  other cause of action stated here that permits the recovery of such damages;

15  120. Preliminary and permanent relief enjoining Defendants from accessing, using,

16  disclosing, or benefitting directly or indirectly from RailConnect, including information obtained

17  from the system, and from soliciting, attempting to solicit, or doing business with any of RMI's

18  rail customers;

19  121. An order that directs Defendants to (a) return to all RMI confidential information in

20  its possession, (b) disclose all persons or entities to which it disclosed confidential information and

21  who disclosed it, and (c) destroy all data and other information obtained from RailConnect and/or

22  by other means;

23  122. A judgment that Cedar and/or the individual Defendants violated the Computer Fraud

24  and Abuse Act, Defend Trade Secrets Act, and Washington Trade Secret Misappropriation Act,

25

26

THIRD AMENDED COMPLAINT - 21

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

and that Defendants converted RMI's property, tortiously interfered with RMI's business relationships, trespassed, and acted negligently;

123. Reasonable attorneys' fees and costs under 18 U.S.C. §§ 1836(b)(3)(D), 2707(b)(3), or any other cause of action stated here that requires or permits the recovery of these attorneys' fees, costs, and other expenses;

124. Pre- and post-judgment interest; and

125. Such other and further relief as the Court deems just and proper.

## JURY DEMAND

126. RMI demands a jury trial in this action.

DATED this 25th day of May, 2023.

K&L GATES LLP

By: _s/_ _Christopher M. Wyant_
  Jeffrey C. Johnson, WSBA No. 23066
  Christopher M. Wyant, WSBA No. 35561
  Ashley E.M. Gammell, WSBA No. 50123
925 Fourth Avenue, Suite 2900
Seattle, Washington 98104-1158
Tel: (206) 623-7580
Email: jeff.johnson@klgates.com
Email: christopher.Wyant@klgates.com
Email: ashley.gammell@klgates.com

MAYER BROWN LLP

Charles E. Harris, II, *Admitted Pro Hac Vice*
71 South Wacker Drive
Chicago, Illinois 60606-4637
Tel: (312) 782-0600
Email: charris@mayerbrown.com

/ / /

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON 98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022

Kristin W. Silverman, WSBA No. 49420
Two Palo Alto Square
3000 El Camino Real
Palo Alto, California 94306-2112
Tel: (650) 331-2000
Email: ksilverman@mayerbrown.com

*Attorneys for Plaintiff and Counterclaim and Third-Party
Defendants Railcar Management, LLC and Wabtec
Corporation*

MAYER BROWN LLP
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS  60606-4637
TELEPHONE: (312) 701-8934
FACSIMILE: (312) 701-7711

K&L GATES LLP
925 FOURTH AVENUE
SUITE 2900
SEATTLE, WASHINGTON  98104-1158
TELEPHONE: (206) 623-7580
FACSIMILE: (206) 623-7022