UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RAILCAR MANAGEMENT, LLC,

        Plaintiff,

  v.

CEDAR AI, INC.; MARIO PONTICELLO; DARIL VILHENA; and YI CHEN,

        Defendants,

  v.

WABTEC CORPORATION,

        Third-Party Defendant.

C21-0437 TSZ

MINUTE ORDER

The following Minute Order is made by direction of the Court, the Honorable Thomas S. Zilly, United States District Judge:

(1)    The motion to compel, docket no. 190, brought by defendant Cedar AI, Inc. ("Cedar"), is STRICKEN in part, GRANTED in part, DENIED in part, DEFERRED in part, and RENOTED to August 18, 2023, as explained further below. By Minute Order entered May 18, 2023, docket no. 207, the Court deferred ruling on Cedar's motion to compel, in which Cedar asked the Court to require plaintiff Railcar Management, LLC ("Railcar") to produce the communications or documents relating to 103 entries on Railcar's privilege log. _See_ Kaiser Decl. at ¶ 9 & Ex. G (docket nos. 191 & 195). The Court allowed Cedar to designate up to twenty (20) privilege log entries that it believed related to materials not protected by the attorney-client privilege or the work-product doctrine, and directed Railcar to provide to the Court for _in camera_ review the documents associated with the designated log entries. Of the twenty (20) entries identified by Cedar, _see_ Notice (docket no. 209), Railcar conceded that eight (8) involved items as to which the attorney-client privilege and/or the work-product doctrine were/was not appropriately invoked, and those eight (8) items were produced to Cedar. _See_ Exs. B, D, & F–K to Kaiser Decl. (docket no. 241). Railcar also disclosed in redacted form the materials

MINUTE ORDER - 1

associated with four (4) other privilege log entries, but it has not explained why those redacted versions could not have been provided before Cedar filed its motion to compel. *See* Pl.'s Supp. Br. at 7–8 (docket no. 223) (indicating merely that redacted versions of RMI_PLOG_0038, RMI_PLOG_133, RMI_PLOG_182, and RMI_PLOG_204 have been produced). The Court has conducted an *in camera* review of the unredacted versions of these four (4) items, as well as of the remaining eight (8) documents on Cedar's original list, and hereby ORDERS as follows.

    (a) Cedar's motion to compel, docket no. 190, is STRICKEN as moot with regard to the following eight (8) privilege log entries:

- RMI_PLOG_0001 (Ex. F to Kaiser Decl. (docket no. 241-4))
- RMI_PLOG_0003 (Ex. G to Kaiser Decl. (docket no. 241-5))
- RMI_PLOG_0095 (Ex. H to Kaiser Decl. (docket no. 241-6))
- RMI_PLOG_0108 (Ex. D to Kaiser Decl. (docket no. 241-2))
- RMI_PLOG_0123 (Ex. I to Kaiser Decl. (docket no. 241-7))
- RMI_PLOG_0125 (Ex. B to Kaiser Decl. (docket no. 241-1))
- RMI_PLOG_0137 (Ex. J to Kaiser Decl. (docket no. 241-8))
- RMI_PLOG_0142 (Ex. K to Kaiser Decl. (docket no. 241-9))

Although Railcar should have produced these materials before Cedar filed its motion to compel, the Court will not, for purposes of awarding attorney's fees and/or costs, treat Cedar as having prevailed on its motion with respect to the above-enumerated items.

    (b) Cedar's motion to compel, docket no. 190, is GRANTED as to the following privilege log entries:

    (i) Pages 1–9 of RMI_PLOG_0026[1];

    (ii) RMI_PLOG_0038;

---

[1] In addition to the first nine pages, which are printouts of an email between two employees of third-party defendant Wabtec Corporation ("Wabtec"), namely Andrew G. Parker, Senior Director of Rail Product Solutions, and Quincy Castro, former chief security officer, Item (i) (RMI_PLOG_0026) contains a 250-page spreadsheet with unlabeled columns that appear to contain times ranging from 5:23 a.m. through 2:39 p.m. on January 9, 2019, Internet Protocol addresses, and computer activities. The spreadsheet appears to be the "extract on the CIC TMS system called 'CEDAR AI ONLINE'" that is referenced in Parker's email to Castro, but absent further information about this spreadsheet, the Court will not require that it be disclosed to Cedar in unredacted form. The parties shall meet and confer concerning whether the spreadsheet contains data that is proprietary to a third party or to Railcar or Wabtec, and if so, whether it may be produced in unredacted or redacted form subject to the terms of the Stipulated Protective Order, docket no. 79.

MINUTE ORDER - 2

  (iii) RMI_PLOG_0074 and RMI_PLOG_0196,[2] which appear to be the same document;

  (iv) RMI_PLOG_0167;

  (v) RMI_PLOG_0168;

  (vi) RMI_PLOG_0171; and

  (vii) RMI_PLOG_0172.

All of these entries relate to items containing purely factual matter, which is not shielded by the attorney-client privilege even when transmitted between an attorney and his or her client. See In re Premera Blue Cross Customer Data Sec. Breach Litig., 329 F.R.D. 656, 661 (D. Or. 2019) (applying Washington law and quoting Newman v. Highland Sch. Dist. No. 203, 186 Wn.2d 769, 777–78, 381 P.3d 1188 (2016)); see also Evans v. Raines, 800 F.2d 884, 887 n.4 (9th Cir. 1986) ("Because the attorney-client relationship is created and controlled by state law, the nature and extent of the attorney-client privilege is defined by state law." (citing inter alia Baird v. Koerner, 279 F.2d 623, 632 (9th Cir. 1960))). Although the emails contained in Items (i) and (ii) are marked "Privileged and Confidential / Attorney-Client Communication," no lawyer was copied on the emails. Items (iii), (v), (vi), and (vii) do not identify an author or include a recipient list, and Railcar's post hoc representations that the materials were prepared at Wabtec's attorney's direction and/or were presented to in-house or outside legal counsel do not show that the communications were "made in confidence and in the context of an attorney-client relationship." Newman, 186 Wn.2d at 777; see also Youngs v. PeaceHealth, 179 Wn.2d 645, 653, 316 P.3d 1035 (2014) ("[T]he attorney-client privilege protects the privileged communications only–not the facts transmitted in those communications. Facts are proper subjects of investigation and discovery, even if they are also the subject of privileged communications."). Item (iv) is a contract between Wabtec and CrowdStrike Services, Inc. ("CrowdStrike") titled "Statement of Work." Although Wabtec's lawyer signed the document, the subject matter of the agreement did not relate to the giving or obtaining of legal advice. The Statement of Work was prepared for a purpose entirely separate from Wabtec or Railcar consulting with their attorneys; it operates to bind Wabtec and CrowdStrike to their respective duties in a business transaction, and the contract was intended to be seen by persons other than Wabtec and its attorneys, namely,

---

[2] Although Appendix A in RMI_PLOG_0074 and RMI_PLOG_0196 is titled "Legal FAQs," the information set forth therein is of a factual nature and therefore not protected by attorney-client privilege. Moreover, the document contains certain "security recommendations," which indicates it was prepared for at least one purpose other than litigation. Because the report discusses certain Railcar and/or Wabtec clients, Railcar may elect to designate the material as "Attorney's Eyes Only" pursuant to the Stipulated Protective Order, docket no. 79.

MINUTE ORDER - 3

employees or independent contractors of CrowdStrike who would or did conduct the investigation and needed to understand the scope of their responsibilities. *See In re Premera Blue Cross*, 329 F.R.D. at 661 (citing *Mechling v. City of Monroe*, 152 Wn. App. 830, 853, 222 P.3d 808 (2009)). Railcar also cannot shield these materials from disclosure by invoking the work-product doctrine; nothing in the various emails, PowerPoint slides, and formal or informal reports relates to litigation strategy or the legal theories underlying potential claims or liabilities. As to Items (iii), (v), (vi), and (vii), which are essentially anonymous and undated, Railcar cannot establish, for purposes of the work-product doctrine, that, at the time the items were generated, Railcar unilaterally believed litigation would result. *See In re Rutter's Data Sec. Breach Litig.*, No. 20-CV-382, 2021 WL 3733137, at *1–3 (M.D. Pa. July 22, 2021) (ruling that a cybersecurity consultant's investigative report was not protected by the work-product doctrine); *see also In re Premera Blue Cross*, 329 F.R.D. at 664 ("When materials are prepared for a 'dual purpose,' meaning they are not prepared *exclusively* for litigation, then the 'because of' test applies." (emphasis added)).[3] Railcar's contention that everything created during the course of its and CrowdStrike's investigation is protected by the work-product doctrine suggests that, before launching the investigation, Railcar had already decided that it had been injured or damaged and that Cedar was the culprit, and thus, Railcar's argument both undermines the credibility of the materials, which could be viewed as merely reaching a foregone conclusion, and raises the question of why the reports at issue would not be subject to disclosure pursuant to Federal Rules of Civil Procedure 26(a)(1), (a)(2), and/or (a)(3)(A).

(c) The Court AWARDS to Cedar as the prevailing party on its motion to compel $7,500 in attorney's fees and costs incurred to date. Railcar shall pay this amount to Cedar within seven (7) days of the date of this Minute Order.

---

[3] Railcar's reliance on *In re Experian Data Breach Litigation*, No. SACV 15-01592, 2017 WL 4325583 (C.D. Cal. May 18, 2017), is misplaced. In that matter, the *defendants* sought to shield a forensics consultant's report from discovery, whereas in this case, the *plaintiff*, which bears the burden of proving that its system was breached and that it suffered injury, is attempting to withhold evidence on which it will presumably rely at trial (and/or related materials generated for or by the same consultant in connection with the investigation at issue). In addition, unlike in *In re Experian*, Railcar has not established that CrowdStrike's reports were not used for internal investigation or remediation efforts, as opposed to for the defense of anticipated litigation (as in *In re Experian*), and thus, Railcar has not met the "because of" test for work-product doctrine protection. *See id.* at *1 (the "because of" test "considers the totality of the circumstances and affords protection when it can be fairly said that the document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of that litigation").

MINUTE ORDER - 4

     (d)    Cedar's motion to compel, docket no. 190, is DENIED as to the following materials:

- RMI_PLOG_0133[4];
- RMI_PLOG_0182[4];
- RMI_PLOG_0188[5]; and
- RMI_PLOG_0204.[4]

     (e)    Cedar's motion to compel, docket no. 190, is otherwise DEFERRED and RENOTED to August 18, 2023. Based on the Court's *in camera* review, and Railcar's voluntary disclosures of unredacted and redacted documents associated with privilege log entries, the Court has reason to believe that additional materials withheld by Railcar are not protected by the attorney-client privilege or the work-product doctrine. The Court is not, however, persuaded that either the "special master" solution applied in *Entrata, Inc. v. Yardi Sys., Inc.*, No. 15-cv-102, 2018 WL 4146605 (D. Utah Aug. 30, 2018), or an order requiring Railcar to disclose the remaining items sought by Cedar, both of which Cedar advocates in the alternative, are warranted at this time. Instead, the Court DIRECTS as follows:

     (i)    On or before 8:00 a.m. on July 14, 2023, Cedar shall file a list designating up to fifteen (15) more privilege log entries that it believes relate to communications or documents not protected by attorney-client privilege or the work-product doctrine;

     (ii)    On or before 5:00 p.m. on July 21, 2023, Railcar shall indicate whether it will voluntarily disclose any of the designated materials to Cedar, and it shall produce the documents to Cedar in unredacted form;

     (iii)    For each privilege log entry that Railcar withdraws by providing the document in unredacted form, Cedar may, within two (2) business days, add another log entry to its list, and Railcar shall indicate

---

[4] These documents have already been provided in redacted form. A particular phrase was redacted from RMI_PLOG_0133 eight (8) separate times. The Court concludes that deletion of the phrase did not alter the substance of the communication, and that no purpose would be served by requiring Railcar to provide RMI_PLOG_0133 in unredacted form. The omitted portions of RMI_PLOG_0182 and RMI_PLOG_0204 contain emails circulated to Wabtec's in-house counsel Michael Watson.

[5] RMI_PLOG_0188 includes drafts of customer communications, within emails copied to Watson, and on which Watson commented. Although the final customer communication is not subject to attorney-client privilege, the drafts are protected by attorney-client privilege. *See In re Premera Blue Cross*, 329 F.R.D. at 665–66.

MINUTE ORDER - 5

within three (3) business days thereafter whether it will voluntarily disclose the designated item in unredacted form; this process shall be repeated until either (A) Cedar's list contains fifteen (15) log entries, or (B) less than fifteen (15) of the original 103 entries remain in dispute;

   (iv)   On or before August 14, 2023, Railcar shall provide to the Court for *in camera* review all materials designated on Cedar's list, and it shall disclose to Cedar all documents that it agreed to voluntarily produce pursuant to Paragraph 1(e)(iii);

   (v)   Contemporaneously with its submission of any documents for *in camera* review, Railcar shall file a supplemental brief, not to exceed ten (10) pages in length, explaining why it believes the *in camera* review items are protected from discovery;

   (vi)   Cedar may file a supplemental reply, not to exceed five (5) pages in length, on or before August 18, 2023;

   (vii)   In light of the guidance provided in this Minute Order, if any documents submitted by August 14, 2023, for *in camera* review, are deemed unprotected and inappropriately withheld, the Court will award the following amounts to Cedar, which will be cumulative:

| | |
|---|---|
| $500 | for the first item |
| $1,000 | for the second item |
| $1,500 | for the third item |
| $2,500 | for the fourth item |
| $5,000 | for the fifth or subsequent item |

   (viii)   In addition, if more than five documents are found to be improperly withheld, the Court might (A) award additional attorney's fees and costs to Cedar, and (B) direct that all materials, which are associated with the privilege log entries at issue and which have not already been reviewed *in camera*, be produced to Cedar in unredacted form.

(2)   The Clerk is directed to send a copy of this Minute Order to all counsel of record.

Dated this 10th day of July, 2023.

Ravi Subramanian
Clerk

s/Laurie Cuaresma
Deputy Clerk

MINUTE ORDER - 6